Debra E. Pole (SBN 97816)
dpole@sidley.com
Alycia Degen (SBN 211350)
adegen@sidley.com
Joshua Anderson (SBN 211320)
janderson@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone:  213.896.6000

Daniel A. Spira (*admitted pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  312.853.7000

Inn-Young Park (SBN 324129)
ipark@sidley.com
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200

*Attorneys for Defendant Gilead Sciences, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADRIAN HOLLEY, et al., | Case No. No. 3:18-cv-06972-JST |
| *Plaintiffs,*<br>vs. | **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |
| GILEAD SCIENCES, INC., | Assigned to: Hon. Jon S. Tigar<br>Hearing Date: May 9, 2019 |
| *Defendant.* | Hearing Time:  2:00 p.m.<br>Location:  Courtroom 9 |
| CHARANDA DOWDY, et al., | Case No. No. 3:19-cv-00481-JST |
| *Plaintiffs,*<br>vs. | **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |
| GILEAD SCIENCES, INC., | Assigned to: Hon. Jon S. Tigar<br>Hearing Date: May 9, 2019 |
| *Defendant.* | Hearing Time:  2:00 p.m.<br>Location:  Courtroom 9 |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

I.    FEDERAL LAW PREEMPTS PLAINTIFFS' DESIGN DEFECT CLAIMS............ 2

II.    FEDERAL LAW PREEMPTS PLAINTIFFS' FAILURE TO WARN
CLAIMS ..................................................................................................... 7

III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE CAUSATION TO
SUSTAIN THEIR FAILURE-TO-WARN THEORY............................................. 10

IV.    GILEAD HAD NO DUTY TO INTRODUCE TAF MEDICATIONS
EARLIER.................................................................................................... 11

V.    PLAINTIFFS' FRAUD AND CONSUMER PROTECTION LAW CLAIMS
DO NOT MEET FEDERAL PLEADING REQUIREMENTS................................ 12

CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIDS Healthcare Foundation, Inc. v. Gilead Sciences, Inc.*,
No. 16-cv-443, 2016 WL 3648623 (N.D. Cal. July 6, 2016), *aff'd*,
890 F.3d 986 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 415 (2018) ............................. 1, 2, 11, 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ........................................................................................................... 9

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ........................................................................................... 14

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
779 F.3d 34 (1st Cir. 2015) ............................................................................................... 9

*DiBartolo v. Abbott Labs.*,
914 F. Supp. 2d 601 (S.D.N.Y. 2012) ............................................................................. 11

*Fleming v. Janssen Pharm., Inc.*
186 F. Supp. 3d 826 (W.D. Tenn. 2016) ........................................................................... 4

*Georges v. Novartis Pharms. Corp.*,
06-5207, 2012 WL 9083365 (C.D. Cal. Nov. 2, 2012) ................................................... 11

*Gibbons v. Bristol-Myers Squibb Co.*,
919 F.3d 699, 2019 WL 1339013 (2d Cir. Mar. 26, 2019) ........................................... 7, 8

*Guidry v. Janssen Pharms., Inc.*,
206 F. Supp. 3d 1187 (E.D. La. 2016) ............................................................................. 6

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................................................... 13

*Harpaz v. Belkin Int'l, Inc.*,
No. 09-cv-5897, 2010 WL 11519319 (C.D. Cal. Mar. 19, 2010)................................... 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................................................... 13

*Lynch v. Olympus Am., Inc.*,
No. 18-cv-512, 2018 WL 5619327 (D. Colo. Oct. 30, 2018) ......................................... 10

*Markowitz v. Davol Inc.*,
No. 15-cv-2418, 2015 WL 12696031 (C.D. Cal. June 19, 2015)................................... 10

*Maze v. Bayer Healthcare Pharms., Inc.*,
   No. 4:18-cv-21, 2019 WL 1062387 (E.D. Tenn. Mar. 6, 2019) ..................................... 9

*McClellan v. I-Flow Corp.*,
   776 F.3d 1035 (9th Cir. 2015) ........................................................................................ 9

*McGee v. Boehringer Ingelheim Pharms., Inc.*,
   No. 4:16-cv-2082, 2018 WL 1399237 (N.D. Ala. Mar. 20, 2018) .................................. 9

*Mut. Pharm. Co., Inc. v. Bartlett*,
   570 U.S. 472 (2013) ............................................................................................... 3, 4, 6

*In re NJOY Consumer Class Action Litig.*,
   14-cv-428, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ......................................... 14

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................................ 13

*Osorio v. Tran*,
   No. 08-cv-4007, 2008 WL 4963064 (N.D. Cal. Nov. 19, 2008) .................................. 15

*Pierot v. Gilead Sciences, Inc.*
   No. 18-0975, 2019 WL 1123148 (W.D. La. Mar. 11, 2019) ....................................... 14

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ............................................................................................. *passim*

*Robinson v. Eli Lilly & Co.*,
   5:17-cv-338, 2018 WL 4039703 (E.D. Ky. Aug. 23, 2018) .......................................... 4

*Small v. Amgen, Inc.*,
   No. 2:12-cv-476, 2016 WL 4942078 (M.D. Fla. Jan. 25, 2016) ................................... 4

*Tapia v. Davol, Inc.*,
   116 F. Supp. 3d 1149 (S.D. Cal. 2015) ...................................................................... 10

*Utts v. Bristol-Myers Squibb Co.*,
   226 F. Supp. 3d 166 (S.D.N.Y. 2016) ....................................................................... 4, 8

*Utts v. Bristol-Myers Squibb Co.*,
   251 F. Supp. 3d 644 (S.D.N.Y. 2017) ........................................................................... 8

*Willett v. Baxter Int'l., Inc.*,
   929 F.2d 1094 (5th Cir. 1991) ............................................................................... 10, 11

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ............................................................................................. 3, 7, 9

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
    MDL No. 2592, 2017 WL 1393480 (E.D. La. Apr. 17, 2017) ...................................................11

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*,
    808 F.3d 281 (6th Cir. 2015) .................................................................................................4, 5, 6

*Young v. Bristol-Myers Squibb Co.*,
    No. 4:16-cv-108, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017).........................................5, 6, 12

**Statutes**

21 C.F.R. § 314.3 ..............................................................................................................................7

21 U.S.C. § 355(a) ............................................................................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 8 ................................................................................................2, 14

Federal Rule of Civil Procedure 9(b)................................................................................2, 12, 13, 14

Federal Rule of Civil Procedure 12(e) ...........................................................................................14

**INTRODUCTION**

As set forth in Gilead's Consolidated Motion to Dismiss [D.E. 45], all of Plaintiffs' claims are preempted by federal law and otherwise fatally flawed.

Plaintiffs' Revised Opposition [D.E. 54] ("Opposition" or "Opp.") does not dispute that federal law preempts their design defect claims challenging the design of Gilead's TDF medications *after* FDA approval.[1]  As a result, Plaintiffs' design defect theory is limited to their argument that Gilead should have designed its TDF medications with TAF *before* seeking initial FDA approval. But because Gilead indisputably could not have marketed TAF medications without first obtaining FDA approval, Plaintiffs' lone remaining design defect theory also is preempted.  In other words, as Gilead has shown, it would have been impossible to "independently do under federal law what state law requires."  *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011); Mem. at 8-13.

Plaintiffs' failure-to-warn theory is likewise preempted.  Plaintiffs have not sufficiently alleged that *after* FDA approved the TDF medications, Gilead obtained any "newly acquired information" that would have allowed it to unilaterally change its labeling; nor can Plaintiffs base their failure to warn claims on assertions that *before* approval, Gilead failed to provide safety data to FDA, or that FDA made a mistake in approving the initial TDF medication labeling.  Mem. at 13-15.

Additionally, Plaintiffs do not sufficiently allege causation to support their failure-to-warn claims.  Mem. at 17-19.  Instead, they continue to vaguely argue that different warnings would have resulted in "better" patient monitoring, *see* Opp. at 19, failing to explain what that means, let alone how it would have changed their physicians' prescribing decisions or prevented their injuries.

Plaintiffs' claims premised on their argument that Gilead should have introduced TAF medications earlier should also be dismissed because the Court has already held that Gilead "had no obligation to introduce the improved [TAF] product at an earlier date."  *AIDS Healthcare Foundation, Inc. v. Gilead Sciences, Inc.*, No. 16-cv-443, 2016 WL 3648623, at *9 (N.D. Cal. July 6, 2016) ("*AHF*"), *aff'd*, 890 F.3d 986 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 415 (2018).

---

[1] Unless otherwise specified, (a) all capitalized terms have the same meanings given to them in Gilead's Memorandum of Points and Authorities [D.E. 45] ("Memorandum" or "Mem."), and (b) all docket entry references are to *Holley, et al. v. Gilead Sciences, Inc.*, No. 3:18-cv-06972 (N.D. Cal.).

Contrary to Plaintiffs argument (Opp. at 1, 17), *AHF* is not limited to cases alleging "anticompetitive conduct" or Sherman Act violations.  *AHF*, 2016 WL 3648623, at *9 (dismissing consumer fraud claim based on alleged injuries to patients from delayed market entry of TAF medications).

Finally, Plaintiffs' claims for Fraud by Omission and alleged violations of state consumer protection statutes fail to satisfy federal pleading requirements.  Mem. at 21-24.  Plaintiffs do not, and cannot, dispute that none of them allege, *inter alia*, what, if any, labeling or marketing materials they or their doctors were exposed to, when they were exposed, how their conduct was affected, or whether they relied on any of those unspecified materials.  Plaintiffs' group pleading glosses over each of these details and does not satisfy the plausibility requirement of Federal Rule of Civil Procedure 8, let alone the heightened specificity required by Federal Rule of Civil Procedure 9(b).

## I.    FEDERAL LAW PREEMPTS PLAINTIFFS' DESIGN DEFECT CLAIMS.

As set forth in Gilead's Memorandum, Plaintiffs' design-defect theories—that Gilead should have replaced TDF with TAF, and should have reduced the quantity of TDF in Stribild—are preempted, because Gilead could not unilaterally market medications containing these design changes without first obtaining FDA approval.  Mem. at 8-13.

In response, Plaintiffs do not dispute that their design defect claims are preempted to the extent they seek to impose a duty to make these design changes *after* FDA first approved the TDF medications.  Instead, they argue that "here, the plaintiff[s] allege[] that [Gilead] should have designed a safer drug *before* FDA approval."  Opp. at 9 (emphasis added).[2]  But this *pre*-approval theory fares no better than the abandoned *post*-approval design theory.  Plaintiffs' design defect claims are all preempted because it would have been impossible for Gilead to "independently," *i.e.*, without FDA approval, "do under federal law what state law requires."  *Mensing*, 564 U.S. at 620.

Contrary to Plaintiffs' argument, *Mensing* did not turn solely on the fact that "federal law requires generic manufacturers to match the labeling of the brand name drug."  Opp. at 8.  The Court reasoned instead that "[b]efore the Manufacturers could satisfy state law, the FDA—a federal

---

[2] *See also id.* at 1 (arguing that Gilead should have "design[ed] its TDF Drugs to be safer before [FDA] approval"), 3 ("Gilead could have adopted the safer alternative designs before the FDA approved the TDF Drugs"), 13 (attempting to distinguish case law on the basis that it "did not address the allegations that the manufacturer should have changed the drug design before approval").

agency—had to undertake special effort permitting them to do so. . . . *[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes.*" *Mensing*, 564 U.S. at 623-24 (emphasis added).  Here too, there is no dispute that Gilead could not "independently satisfy" Plaintiffs' demand that it should have introduced its TAF medications earlier, because it could only have done so with "special permission and assistance" from FDA based on the agency's "exercise of judgment."  *Id.*  *See* 21 U.S.C. § 355(a) (providing that a drug may not be marketed without FDA approval of an NDA).

Plaintiffs highlight the *Mensing* Court's recognition that different "federal statutes and regulations" apply to generic and brand-name manufacturers, but this distinction drawn in *Mensing* pertains to *failure to warn* claims—*i.e.*, only brand-name manufacturers can use "newly acquired information" to invoke the "changes-being-effected" ("CBE") process to unilaterally change drug label warnings, *id*. at 624-26; Opp. at 8.  *Mensing* provides no support for Plaintiffs' *design defect* claims, because there is no CBE process or other mechanism by which Gilead could "independently satisfy" its purported state law duty without "the exercise of judgment by a federal agency." *Mensing*, 564 U.S. at 623-24.  Similarly, Plaintiffs cannot rely on *Wyeth v. Levine*, 555 U.S. 555 (2009) (Opp. at 7)—where *failure to warn claims* were not preempted because the manufacturer could invoke the CBE process to unilaterally change its labeling—to support their pre-approval *design defect claims*.

Plaintiffs' attempt to narrow the holding in *Bartlett* is similarly unavailing.  *See* Opp. at 8 (citing *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 484 (2013)).  In *Bartlett*, the Supreme Court found design defect claims to be preempted because changing the medication's ingredients— precisely what Plaintiffs demand here—would create "a new drug that would require its own NDA to be marketed in interstate commerce." *Bartlett*, 570 U.S. at 484.  This, of course, would require FDA approval, and "state-law design defect claims . . . that place a duty on manufacturers to render a drug safer by . . . altering its composition . . . are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition." *Id*. at 490.  Plaintiffs' design defect claims fail for the same reason.  At bottom, they argue that Gilead should be held liable for failing to

-3-

1   introduce an entirely different drug that would have required a separate NDA and FDA approval.

2   Following this reasoning, the court in *Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d

3   281 (6th Cir. 2015) held that pre-approval design defect claims that, as here, seek to demand a

4   different composition of a brand name manufacturer's medication are preempted:

> In [*Mensing*], the Supreme Court ultimately found that '[t]he only action the
> Manufacturers could independently take—asking for the FDA's help—is not a
> matter of state-law concern.'  So too in this case.  Defendants could not have
> complied with whatever pre-approval duty might exist without ultimately seeking
> the FDA's approval prior to marketing [the drug], and certainly prior to [plaintiff's]
> use of the drug. . . .  In contending that the defendants' pre-approval duty would
> have resulted in a birth control patch with a different formulation, [plaintiff]
> essentially argues that defendants should never have sold the FDA-approved
> formulation of [the drug] in the first place.  We reject this never-start selling
> rationale for the same reasons the Supreme Court in *Bartlett* rejected the stop-
> selling rationale . . . .

11   *Id.* at 299-300 (citation omitted); *see also* Mem. at 10 (citing cases); *Utts v. Bristol-Myers Squibb*

12   *Co.*, 226 F. Supp. 3d 166, 185-86 (S.D.N.Y. 2016); *Fleming v. Janssen Pharm., Inc.* 186 F. Supp. 3d

13   826, 832-33 (W.D. Tenn. 2016); *Small v. Amgen, Inc.*, No. 2:12-cv-476, 2016 WL 4942078, at *2

14   (M.D. Fla. Jan. 25, 2016); *Robinson v. Eli Lilly & Co.*, 5:17-cv-338, 2018 WL 4039703, at *6 (E.D.

15   Ky. Aug. 23, 2018) (pre- and post-approval design defect claims preempted because defendant

16   "could not have independently made such fundamental changes to Prozac's formula").

17   Plaintiffs' attempts to distinguish *Yates* are misguided.  *Yates* did not "substitute[] its own

18   standard for the impossibility standard."  Opp. at 11.  Its holding flows directly from the Supreme

19   Court's holdings that preemption applies where, as here, Plaintiffs seek to require actions under state

20   law that a drug manufacturer cannot "independently do under federal law," *Mensing*, 564 U.S. at

21   620, including altering a drug's composition, *Bartlett*, 570 U.S. at 490.  By arguing, like the plaintiff

22   in *Yates*, that Gilead should have replaced the TDF in its TDF medications with TAF or reduced the

23   amount of TDF in Stribild, Plaintiffs do not merely seek to force Gilead to unilaterally "act[]

24   differently" or "design its drugs to be safer without any involvement of the FDA," Opp. at 11, 13,

25   but rather to "alter[] [the TDF medications'] composition" in a manner that would create "a new

26   drug" altogether, requiring "its own [FDA-approved] NDA to be marketed in interstate commerce."

27   *Bartlett*, 570 U.S. at 484, 490.  Because Gilead indisputably could not unilaterally do so, Plaintiffs'

28   design defect claims, like those in *Yates*, are preempted.

-4-

Plaintiffs remaining effort to distinguish *Yates* is based solely on its separate and independent holding that plaintiff's pre-approval design defect theory was "too attenuated" to create a state law duty.  Opp. at 11-12.  As an initial matter, *Yates'* preemption holding turns on the fact that, as here, "Defendants could not have complied with whatever pre-approval duty might exist without ultimately seeking the FDA's approval prior to marketing [the drug] . . ." *Yates*, 808 F.3d at 300.  While the Sixth Circuit *also* found that plaintiff's pre-approval design defect claim was "too attenuated" to support a viable state law duty, *id*. at 299, the Court need not address that issue in order to find Plaintiffs' design claims preempted.  In any event, the fact that certain TAF medications were eventually approved 14 years later (Opp. at 12) does not save Plaintiffs' claims from being "too attenuated," *see* Compl. [D.E. 1] ¶¶ 4, 196.  In fact, FDA has *never* approved a TAF medication "counterpart" to Viread or Atripla, *see* Compl. ¶¶ 196-98, TDF medications taken by dozens of Plaintiffs, *e.g., id*. ¶¶ 24-163.  Even for TAF medications FDA has approved, Plaintiffs' bald assertion that it is "plausible" they would have taken them if they were introduced earlier (Opp. at 12) is belied by the fact that most of them *did not do so* even after medications "identical . . . except for the substitution of TAF for TDF" entered the market.  Compl. ¶¶ 196 (FDA approved Genvoya in November 2015), 24-163 (most Plaintiffs took TDF medications after this date).[3]

Case law on which Plaintiffs rely does not support a different result.  In *Young v. Bristol-Myers Squibb Co.*, No. 4:16-cv-108, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017) (Opp. at 8, 9, 13), for instance, the court failed to sufficiently address how plaintiff's pre-approval design theory could avoid preemption despite the fact that defendant could not independently market the drug at issue with the different composition that plaintiff sought to demand.  But, in any case, *Young* ultimately *dismissed* plaintiff's pre-approval design defect claim as a matter of state law, because "courts throughout the country have held that a party may not show a reasonable alternative design *by*

---

[3] It would be nonsensical for FDA's eventual approval of TAF medications (Opp. at 12) to defeat preemption.  Under that logic, a defendant could have a viable preemption defense the day before an allegedly safer medication is approved, and then would lose its preemption defense on the day of approval.  Not only would that create perverse incentives, it is irrelevant to the central premise on which impossibility preemption law turns:  whether a defendant can "independently do under federal law what state law requires." *Mensing*, 564 U.S. at 620.

*pointing to the availability of a different drug available for the same purpose*." *Id.* at *10 (collecting cases; emphasis added). That is precisely what Plaintiffs attempt to do here by insisting that Gilead should have developed, obtained approval for, and marketed "different drug[s]" containing TAF instead of its TDF medications. Whether framed as an issue of federal preemption or an unrecognized state law duty, Plaintiffs' design defect claims should be dismissed.

In *Guidry v. Janssen Pharms., Inc.*, 206 F. Supp. 3d 1187 (E.D. La. 2016) (Opp. at 8-13), the court asks the too-narrow question of whether a manufacturer could theoretically develop a different drug composition prior to FDA approval, ignoring that a manufacturer cannot unilaterally *introduce and market* a different drug design—and the differently designed drug, therefore, cannot reach plaintiffs—without FDA's "exercise of judgment" and "special permission and assistance." *Mensing*, 564 U.S. at 623-24. *Compare Guidry*, 206 F. Supp. 3d at 1207 (acknowledging but declining to rule based upon the fact "that prescription drugs cannot be sold to the public until after FDA approval"), *with Bartlett*, 570 U.S. at 484 (design defect claims preempted where they would require an "NDA *to be marketed* in interstate commerce") (emphasis added).[4]

Finally, Plaintiffs' reliance on case law for the assertion that preemption of their design claims would "free pharmaceutical companies from state common law liability . . . so long as manufacturers are selling a federally approved drug" is also misplaced. Opp. at 10. As the court in *Yates* made clear, certain design defect theories, such as those based on "moderate" or "minor" changes, are not preempted because such changes do not require FDA approval. 808 F.3d at 298 (citing 21 C.F.R. § 314.70(d)(2)(ii), (iv)). But that is not the case here, where Plaintiffs seek to impose an obligation on Gilead under state law to introduce an entirely different drug requiring separate FDA approval. Thus, their design defect claims are preempted and should be dismissed.

---

[4] The additional cases that Plaintiffs rely upon (Opp. at 8-13) are flawed for the same reason. Additionally, to the extent Plaintiffs argue, notwithstanding their Opposition, that they have not abandoned their *post*-approval design defect claims, both *Young* and *Guidry* rejected these claims as preempted. *Guidry*, 206 F. Supp. 3d 1187 at 1206; *Young*, 2017 WL 706320, at *6.

## II.   FEDERAL LAW PREEMPTS PLAINTIFFS' FAILURE TO WARN CLAIMS.

Plaintiffs' failure to warn claims are also preempted by federal law, because Plaintiffs (i) have not sufficiently alleged any "newly acquired information" that would have permitted Gilead unilaterally to change its labeling *after* FDA approval; and (ii) cannot second-guess FDA's decision to approve TDF medication labeling or base their claims on allegations that Gilead failed to communicate safety information to the FDA *before* approval.  Mem. at 13-15.

Plaintiffs argue that they have identified "newly acquired information" that permitted Gilead to invoke the CBE process to change its labeling, but contrary to their conclusory assertions, they plainly do not allege Gilead's knowledge of *post-approval* information regarding "risks of TDF toxicity and the incidence of adverse events, including risks of a different type . . . , and risks of a different severity or frequency . . . ."  Opp. at 14.  Instead, their Complaints are littered with allegations that Gilead was fully aware of the risks associated with TDF medications *before* FDA approval.  Mem. at 13-14 (collecting cites); *see also* Opp. at 2 ("*Before Gilead began selling is first TDF Drug, Viread, in 2001*, it knew that TDF could damage patients' kidneys and bones.") (emphasis added).  Unlike the cases on which they rely,[5] Plaintiffs fail to explain how any information Gilead obtained *after* FDA approval constitutes "information not previously submitted to" FDA; namely, whether any purported "studies, events, or analyses reveal risks of a different type or greater severity than previously included in submissions to the FDA."  21 C.F.R. § 314.3 (defining newly acquired information).  Instead, Plaintiffs' allegations refer to the same post-approval risks about which Gilead was allegedly aware before FDA approved the TDF medications.  *See* Opp. at 4-5, 14 (citing Complaints).

Courts have rejected similar claims on this same basis.  Mem. at 13, 15 (collecting cases).  In *Gibbons v. Bristol-Myers Squibb Co.*, for instance, the Second Circuit recently affirmed dismissal of failure to warn claims as preempted, where plaintiffs did not adequately identify any "newly acquired information."  919 F.3d 699, 2019 WL 1339013, at *6 (2d Cir. Mar. 26, 2019).

---

[5] *See* Opp. at 14 (citing *Wyeth v. Levine*, 555 U.S. 555 (2009); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2017 WL 3188456 (E.D. La. July 21, 2017); *Newman v. McNeil*, No. 10-cv-01541, 2012 WL 39793 (N.D. Ill. Jan. 9, 2012)).

Specifically, despite plaintiffs' allegations that "Defendants became aware of many reports of serious hemorrhaging" and that "numerous . . . studies published after [the drug's] approval in 2012 confirm the problematic bleeding events associated with [the drug]," the court held that plaintiffs "provide[d] no basis upon which the court could conclude that the bleeding events covered by the alleged 'reports' and 'studies' presented a different type of risk than those the company had discussed with the FDA, or were more severe or more frequent that the bleeding events that the government already knew about." *Id.*[6]  Here, Plaintiffs' failure to warn claims fail for the same reason.

Plaintiffs also argue that they do not need to identify any "newly acquired information," because that requirement became effective in 2008, after FDA approval of certain TDF medications. Opp. at 13-14.  All 165 Plaintiffs, however, allegedly suffered injuries from taking Stribild, which was not approved by the FDA until 2012. Compl. ¶¶ 1, 4.  Accordingly, for Plaintiffs to maintain their post-approval failure to warn claims based on injuries purportedly caused by Stribild's labeling, they indisputably were required to identify "newly acquired information" that would have permitted Gilead to invoke the CBE process.  Their failure to do so warrants dismissal.[7]

Plaintiffs' failure to warn claims should also be dismissed to the extent they are based on an alleged failure to change Gilead's labeling *before* FDA approval.  *See* Opp. at 15 ("Plaintiffs also allege that Gilead should have strengthened its labels each time it submitted a new TDF Drug for approval.").  As Gilead has shown, this necessarily amounts to a claim that Gilead failed to communicate safety information to the FDA, and/or that FDA erred in approving the TDF medications' initial labeling. Mem. at 14-15.  Both theories are preempted by federal law.  *Id.*; *Utts*, 226 F. Supp. 3d at 184-85 ("[t]o the extent that the failure to warn claims are premised on the adequacy of the label as approved by the FDA when the drug was first marketed in the United

---

[6] *Gibbons* affirmed *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166 (S.D.N.Y. 2016), and *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644 (S.D.N.Y. 2017), cited herein and in Gilead's Memorandum. Mem. at 6-10, 13-16.

[7] The same is true regarding Plaintiffs who took Complera, which was not FDA approved until 2011. Compl. ¶ 4.  Indeed, many Plaintiffs did not take *any* TDF medications before 2008.  *Id.* ¶¶ 24-163.

States, they are preempted"); *McGee v. Boehringer Ingelheim Pharms., Inc.*, No. 4:16-cv-2082, 2018 WL 1399237, at *4 (N.D. Ala. Mar. 20, 2018) ("To the extent [plaintiff] asserts that [defendant] should have alerted the FDA about [the drug's] DKA risk *before* [the drug's] approval, the claim is preempted because the claim is essentially one of failure to communicate with the FDA.").

Plaintiffs cannot use state law to "second guess . . . an FDA judgment," and FDA is "the exclusive judge of safety and efficacy based on information available at the commencement of marketing . . . ." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 779 F.3d 34, 41 (1st Cir. 2015); *see also Maze v. Bayer Healthcare Pharms., Inc.*, No. 4:18-cv-21, 2019 WL 1062387, at *3 (E.D. Tenn. Mar. 6, 2019) ("any claim asserted by Maze and based on information known to the FDA as of April 2012—when the label at issue here was approved—is plainly preempted by federal law"). Plaintiffs' reliance on *Wyeth v. Levine* is erroneous. Opp. at 15. Indeed, "*Wyeth* effectively reserves the launch of new drugs to the expertise of the FDA . . . ." *Celexa*, 779 F.3d at 41.

Similarly, Plaintiffs cannot avoid implied preemption simply by characterizing their claim as ones "based on state tort law" or narrowly interpreting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Opp. at 16. A failure to warn claim is preempted where it "is essentially one of failure to communicate with the FDA," *McGee*, 2018 WL 1399237, at *4, and as shown, Plaintiffs' pre-approval failure to warn theory is necessarily dependent on the underlying premise that Gilead failed to communicate safety information to the FDA prior to its approval of TDF medication labeling. Indeed, while the court in *McClellan v. I-Flow Corp.*, 776 F.3d 1035 (9th Cir. 2015) (Opp. at 17), held that plaintiff's failure to warn claims did not amount to an alleged fraud-on-the-FDA, the court distinguished *Buckman* based, in part, on the fact that "[t]he allegations at issue occur outside the context of the regulatory process, unlike *Buckman*. Where the plaintiff in *Buckman* alleged that the defendant made fraudulent representations *during* the market approval process, *to the FDA*, McClellan's requested instructions here have little to do with direct regulatory interaction with the FDA." *Id*. at 1041 (emphasis in original). Here, as in *Buckman* and unlike in *McClellan*, Plaintiffs' pre-approval failure to warn claims are necessarily premised on alleged misrepresentations "during

1   the market approval process, to the FDA." *Id*.  They are therefore preempted by federal law.[8]

2   **III.   PLAINTIFFS FAIL TO ADEQUATELY ALLEGE CAUSATION TO SUSTAIN**
3           **THEIR FAILURE-TO-WARN THEORY.**

4           As set forth in Gilead's Memorandum, Plaintiffs' allegations that different or additional

5   warnings on TDF medication labeling would have led to them to being monitored "differently," or

6   "more frequently and more effectively," do not suffice to plead a causal link between the allegedly

7   insufficient warnings and their injuries.  Mem. at 17-19.  Specifically, Plaintiffs inability to allege

8   that additional warnings would have prevented their doctors from actually prescribing the TDF

9   medications is dispositive.  *Id.*; *see also, e.g., Willett v. Baxter Int'l., Inc.*, 929 F.2d 1094, 1098–99

10  (5th Cir. 1991) ("the plaintiff must show that a proper warning would have changed the decision of

11  the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have

12  used or prescribed the product").[9]

13          Notably, Plaintiffs do not, and cannot, allege that this is a situation where they could have

14  taken *nothing* in place of life-saving TDF medications if their doctors received different warnings,

15  and many Plaintiffs took TDF medications **before** there were any FDA-approved TAF medication

16  alternatives.  Mem. at 19.  Instead, Plaintiffs argue that they do not need to show that different

17  warnings would have prevented their physicians from *prescribing* the TDF medications, as long as

18  they allege that their physicians would have changed their "prescribing or treatment practices" in

19  some other way.  Opp. at 19.  The problem is that Plaintiffs have not alleged or explained how any

20  other change in their physicians "practices," including increased or "better" monitoring (*id*.), could

---

[8] Plaintiffs do not dispute that if their design defect and failure to warn claims are preempted, so too are all of their remaining causes of action.  Mem. at 15-17.

[9] *See also Lynch v. Olympus Am., Inc.*, No. 18-cv-512, 2018 WL 5619327, at *12 (D. Colo. Oct. 30, 2018) (dismissing warning claims "because Plaintiff does not argue that adequate warnings would have lead a reasonable doctor not to use the device in her case"); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1158-59 (S.D. Cal. 2015) (dismissing warning claim because plaintiff "failed to allege that if his prescribing physician had been warned, then he would not have prescribed the Patch to Plaintiff"); *Markowitz v. Davol Inc.*, No. 15-cv-2418, 2015 WL 12696031, *4 (C.D. Cal. June 19, 2015) (dismissing warning claim because "Plaintiff fails to sufficiently allege that his physicians would have altered their use of the Kugel Patch had [an] adequate warning been provided").

-10-

1    have actually prevented any of their alleged injuries.  Accordingly, Plaintiffs' conclusory statements

2    that different warnings would have led to "better" monitoring—in support of which they fail even to

3    explain what "better" monitoring they would have been provided—cannot support a causal

4    connection to Plaintiffs' injuries, particularly where, as here, Plaintiffs fail to allege any equally

5    effective, safer, and available treatment options during most of the relevant period.  *See* Compl. ¶¶

6    24-163, 196 (alleging most Plaintiffs took TDF medications before November 2015, when Genvoya,

7    the first TAF medication, was approved); Mem. at 17-19 (citing cases); *Willett*, 929 F.2d at 1098–99.

8          The cases Plaintiffs rely upon—where, unlike here, there was an actual alleged causal link

9    between a proposed change in treatment and plaintiffs' injuries—are inapposite.  *See* Opp. at 19-20.

10   In *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2017 WL 1393480, at *2 (E.D.

11   La. Apr. 17, 2017) (Opp. at 19), for instance, plaintiffs argued that instructions to physicians about

12   specific safety testing for use in conjunction with the drug at issue would have caused their doctors

13   to use those tests, and they would have known to "proceed[] with [plaintiff's] surgery much sooner,"

14   thereby preventing "significant medical issues."  In *Georges v. Novartis Pharms. Corp.*, 06-5207,

15   2012 WL 9083365, at *6 (C.D. Cal. Nov. 2, 2012) (Opp. at 19-20), additional warnings would have

16   led to "targeted dental care" that could have "allowed for a swifter and less painful resolution" of

17   plaintiff's condition.  And Plaintiffs ignores that *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601,

18   619 (S.D.N.Y. 2012) (Opp. at 20) involved alternative allegations that if plaintiff's doctor received

19   an adequate warning he "would not have prescribed [plaintiff] Humira at all . . . ."

20         Plaintiffs have not adequately alleged causation as to their failure to warn claims.

21   **IV.    GILEAD HAD NO DUTY TO INTRODUCE TAF MEDICATIONS EARLIER.**

22         Contrary to Plaintiffs' argument, the Court's holding in *AHF* that Gilead "had no obligation

23   to introduce" TAF medications "at an earlier date" is not limited to cases alleging "antitrust claims"

24   and "injury to competition."  *See AHF*, 2016 WL 3648623, at *9; Opp. at 17-19.

25         Rather, in *AHF*, the Court also addressed a consumer protection claim, pursuant to which

26   plaintiff alleged that *patients* were harmed by Gilead's purported decision to delay introduction of

27   TAF medications.  Despite Plaintiffs' baseless conclusion to the contrary, the Court did "address

28   plaintiff's argument that Gilead also 'left consumers to bear the higher bone and kidney toxicity of

TDF longer than necessary,'" Opp. at 18 n.13 (quoting *AHF*, 2016 WL 3648623, at *9), the same

argument that Plaintiffs now assert.  Rejecting that argument, the Court held that Gilead "had no

obligation to introduce the improved product at an earlier date."  *AHF*, 2016 WL 3648623, at *9.

Case law that Plaintiffs rely upon is counter to their untenable argument.  As discussed *supra* at 5-6,

the court in *Young* (Opp. at 18) recognized, consistent with *AHF*, that there is no state law duty to

introduce "a different drug available for the same purpose."  2017 WL 706320, at *10 (collecting

cases).  Plaintiffs nevertheless argue that Gilead should be liable for failing to introduce TAF

medications, entirely different products from Gilead's TDF medications, at an earlier date.  In

accordance with the Court's prior decision in *AHF*, Plaintiffs' claims premised on a purported duty

to obtain FDA approval and market TAF medications on an earlier date should be dismissed.

## V.   PLAINTIFFS' FRAUD AND CONSUMER PROTECTION LAW CLAIMS DO NOT MEET FEDERAL PLEADING REQUIREMENTS.

Plaintiffs do not, and cannot, dispute that none of them allege in support of their fraud and

consumer protection law claims—beyond their boilerplate, group pleading—what Gilead

promotional, marketing, or labeling materials they or their particular physicians were exposed to,

when any such exposure occurred, how their conduct was affected, or whether or how they relied

upon any supposed representations in or omissions from those materials.  Mem. at 21-24.[10]

Instead, they argue that they are not required to meet Rule 9(b) pleading requirements, and

that certain claims are not subject to the same level of required specificity, because some of their

claims do not sound in fraud and others are "omission-based."  Opp. at 21-24.  But this is belied by

their Complaints, which repeatedly assert in support of these claims that Gilead "intentionally

misrepresented material facts" and made "deceptive and misleading" representations.  Mem. at 21-

22 (collecting cites); *see also, e.g.,* Compl. ¶¶ 511 (alleging in support of fraud by omission claim

---

[10] Plaintiffs criticism that Gilead addresses these issues "in only three pages" (Opp. at 20) is ironic, given that (a) Plaintiffs' Complaints are devoid of any allegations identifying any representation or omission ever made to any particular Plaintiff or his or her physicians, and (b) Plaintiffs' allegations regarding exposure, materiality, and the manner in which their physicians' conduct was affected by Gilead's representations amount to single sentence conclusory statements.

that Gilead "actively concealed" information by making "misrepresent[ations]"), 536 (alleging in support of all consumer protection law claims that "Gilead intentionally misrepresented material facts"). In fact, Plaintiffs allege in support of their claims under each state's consumer protection laws that Gilead engaged in "false, misleading, and/or deceptive practices" or otherwise made misrepresentations or engaged in fraudulent conduct.[11] Even Plaintiffs' Opposition emphasizes the alleged misrepresentations on which their claims are premised. Opp. at 3 ("Gilead trained its sales team to misrepresent Viread as a 'miracle drug' with 'no toxicities.'"); *id*. at 4 (alleging Gilead "misrepresent[ed] the drugs as safe" and "discourage[d] doctors from monitoring patients using more sensitive markers of kidney function."); *id*. at 4 ("Gilead's misleading statements to doctors undermined the inadequate warnings"); *id*. at 18-19 (acknowledging fraud and consumer protection "claims are based, in part, on Gilead's … misrepresentations"). Accordingly, even if Plaintiffs also allege "unfair" conduct and omissions, "'the pleading of [their] claim[s] *as a whole* must satisfy the particularity requirement of Rule 9(b).'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (emphasis in original)); *see also, e.g., Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017) (applying Rule 9(b) to plaintiff's unlawful prong UCL claim, because "[t]he Court looks to the 'gravamen' of Plaintiff's causes of action to determine if the causes of action are grounded in fraud"). Because Plaintiffs fail to satisfy Rule 9(b), their claims should be dismissed.

Plaintiffs additionally argue that they are not required to plead facts identifying any representations made to any of their physicians, because *reliance* is not an element of some of their claims. Opp. at 21-22. But the lack of a reliance requirement does not excuse Plaintiffs from identifying what purported misrepresentations they or their doctors were *exposed* to, without which there is no actionable misrepresentation or causation. *See* Mem. at 22; *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1050 (N.D. Cal. 2014) ("a complaint subject to Rule 9(b)'s requirements should plead with particularity, *and separately*, when and how each named plaintiff was exposed to the advertising campaign. It is not sufficient to plead as a group, nor is it sufficient simply to allege

---

[11] *See* Compl. ¶¶ 546, 549, 552, 555, 557, 562, 566-67, 569-70, 573, 576, 579, 584, 587, 590, 594, 598, 603, 607-08, 612-14, 617-18, 622-24, 628-29, 632-34, 642.

general exposure without more detail.") (emphasis in original); *In re NJOY Consumer Class Action Litig.*, 14-cv-428, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014) ("plaintiffs must, under Rule 9(b), plead separately and with particularity their individual exposure to the purportedly deceptive advertising campaign so as to put defendant on notice 'what' the alleged misrepresentations were").

Indeed, regardless of whether reliance is an element of certain Plaintiffs' claims, Plaintiffs' group-pleading—which does not identify what representations they or any of their physicians were exposed to, when any such exposure occurred, or how any such exposure caused Plaintiffs' physicians to change their conduct—does not even meet Rule 8 pleading requirements, let alone Rule 9(b)'s more stringent particularity requirement. *See, e.g., Harpaz v. Belkin Int'l, Inc.*, No. 09-cv-5897, 2010 WL 11519319, at *3 (C.D. Cal. Mar. 19, 2010) (plaintiff's UCL and other claims do "not meet the basic pleading requirements of Rule 8(a)(2)," where, among other things, "it is not clear . . . whether Plaintiff actually viewed the statements on [defendant's] website" and "what specific statements [plaintiff] relied on to her detriment"); *c.f. Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (affirming dismissal and holding that an allegation that "'lumps all of the defendants together'" is improper under both Rule 9(b) and Rule 8(a)).

Finally, in the alternative to dismissal, the Court should order Plaintiffs to submit a more definitive statement pursuant to Federal Rule of Civil Procedure 12(e). Mem. at 23 n.15. In addition to the details described above that are absent from Plaintiffs' Complaints, Plaintiffs do not allege when they each suffered their injuries, why they were each taking TDF medications, and when they stopped using the medications at issue. Among other potential plaintiff-specific defenses that are impossible to assess based on the lack of detail provided in Plaintiffs' Complaints, Gilead cannot determine which Plaintiffs' claims are barred by the applicable statutes of limitations. The potential applicability of this defense is not merely hypothetical; in *Pierot v. Gilead Sciences, Inc.*, the Western District of Louisiana recently dismissed virtually identical claims as those asserted here because they were time-barred. No. 18-0975, 2019 WL 1123148, at *5 (W.D. La. Mar. 11, 2019) (claims were time-barred where plaintiff "alleges he took Truvada from 2008 through 2009 and then underwent a double hip replacement in 2012," but did not file suit until 2018). Plaintiffs should not

1   be permitted to evade defenses by omitting necessary and potentially case dispositive facts.[12]

2   Accordingly, in the alternative to dismissal, the Court should require a more definitive statement.

3                                       **CONCLUSION**

4            For the foregoing reasons, and those set forth in Gilead's Memorandum, Gilead's Motion to

5   Dismiss should be granted in its entirety, and Plaintiffs' Complaints should be dismissed.

6

7   Dated: April 19, 2019                          SIDLEY AUSTIN LLP

8                                      By:    */s/ Joshua Anderson*_____

9                                             Debra E. Pole (Bar No. 97816)
                                              dpole@sidley.com
10                                            Joshua Anderson (Bar No. 211320)
                                              janderson@sidley.com
11                                            Alycia A. Degen (Bar No. 211350)
                                              adegen@sidley.com
12                                            SIDLEY AUSTIN LLP
                                              555 West Fifth Street
13                                            Los Angeles, CA 90013
                                              Telephone: (213) 896-6000
14                                            Facsimile: (213) 896-6600
15

16                                            Daniel A. Spira (*admitted pro hac vice*)
                                              dspira@sidley.com
17                                            SIDLEY AUSTIN LLP
                                              One South Dearborn
18                                            Chicago, IL 60603
                                              Telephone: 312.853.7000
19

20                                            Inn-Young Park (Bar No. 324129)
                                              ipark@sidley.com
21                                            SIDLEY AUSTIN LLP
                                              555 California St., Suite 2000
22                                            San Francisco, CA 94104
                                              Telephone: 415.772.1200
23
                                              *Attorneys for Defendant Gilead Sciences, Inc.*
24

25   _____

26   [12] Unlike *Osorio v. Tran*, No. 08-cv-4007, 2008 WL 4963064 (N.D. Cal. Nov. 19, 2008) (Opp. at 25), Plaintiffs' Complaints here are not *only* lacking dates of their injuries that could give rise to statute of limitation defenses; as described above and in Gilead's Memorandum, they also omit, *e.g.*, information regarding the reasons they were taking the TDF medications, what, if any, alleged misrepresentations they and their physicians were exposed to or relied upon, when such exposure occurred, and how (if at all) any misrepresentations altered their physicians' conduct.

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2019, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.


/s/ Joshua Anderson
Counsel for Defendant Gilead Sciences, Inc.