# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, *et al.*, | Case Number: 3:18-cv-06972-JST |
| | [Consolidated with 3:19-cv-00481-JST] |
| Plaintiff(s), | Assigned to: Hon. Jon S. Tigar |
| vs. | **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |
| GILEAD SCIENCES INC., | |
| Defendant(s). | |
| This document relates to: | |
| ALL ACTIONS | |

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

1
**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

## 3. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention. Any attorney representing a party in the case, including the e-discovery liaison, may participate in meet-and-confer conferences, and it is not required that the e-discovery liaison be present for the parties to meet and confer about matters involving ESI.

Plaintiffs Identify:

> Lauren Akers
> Hilliard Martinez Gonzales LLP
> 719 S. Shoreline Blvd.
> Corpus Christi, Texas 78401
> Lakers@hmglawfirm.com
> 361-882-1612

Defendant Identifies:

> Scott A. Carlson
> Seyfarth Shaw LLP
> 233 S. Wacker Drive, Suite 8000
> Chicago, Illinois 60606
> scarlson@seyfarth.com
> 312-460-5946

## 4. PRESERVATION

The parties are conferring on their preservation obligations, including specific custodians and non-custodial sources for preservation purposes, and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) The parties will exchange a list of the types of ESI (custodial and non-custodial) they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head,"

1  "scientist," and "marketing manager." The parties shall add or remove custodians as
2  reasonably necessary;
3  c) The parties will agree on the number of custodians per party for whom ESI will be
4     preserved after they exchange information about the parties' custodial and non-
5     custodial sources of relevant ESI;
6  d) These data sources are not reasonably accessible because of undue burden or cost
7     pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved
8     but not searched, reviewed, or produced:  To be determined;
9  e) Among the sources of data the parties agree are not reasonably accessible, the parties
10    agree not to preserve the following:
11       1. Deleted, shadowed, fragmented, residual, or cached data, temporary files,
12          random access memory ("RAM"), or ESI that would only be accessible by
13          taking a forensic (bit stream) image of a device.
14       2. Data in metadata fields that are frequently updated automatically, such as last-
15          opened dates.
16       3. Voicemails or instant messages.
17       4. Server, system, or network logs.
18       5. Information stored on cellular telephones, including but not limited to text
19          messages, voicemails, and telephone call history.
20       6. Corrupted data or data containing viruses.
21       7. Back up tapes or other storage media used for disaster recovery purposes.
22       8. Personal social media content of Gilead employees.
23       9. Social media content that by its nature is automatically deleted by the
24          application, settings, operating system or other system related activity.

Additional data sources that are not reasonably accessible may be identified as a result of investigation. The parties will meet and confer regarding any disagreement about the accessibility of such additional data sources.

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

f) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: To be determined.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Nothing herein shall limit a party's right to use search terms, date ranges and/or technology assisted review tools to tailor its review and production.

**6. PRODUCTION FORMATS**

The parties agree to produce documents in the formats described below. The parties agree not to degrade the searchability of documents as part of the document production process.

    **a. Images**. The parties will produce images in Group IV Single Page TIFF format, scanned at 300 DPI, with Bates numbers applied on the bottom right. Confidentiality designations will be applied on the bottom left. Both stamps to be situated so as to not block or obliterate underlying text. Files shall be named by BegBates. All hidden text (*e.g.*, track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.

    **b. Native Files**. The parties will produce spreadsheets (*e.g.*, Excel, CSV, and other delimited text files) and multimedia files in native format where reasonably available, with the exception of native files that correspond to produced documents that have been redacted. Where documents are produced in native format, the Parties shall rename the file to the BegBates Number and include any confidentiality designation therein as well. The Parties shall provide placeholder images with Bates and confidentiality branding for each natively produced document.

    **c. Color Documents.** If an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or

content of the document, then the receiving party may, in good faith, request that the document or ESI item be produced in its original colors, and such a request will not be unreasonably denied by the producing party.

  d. **Parent-Child Relationships**. Parent-child relationships (*e.g.*, the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata as specified in **Exhibit A**.

  e. **Bates Numbering**. All documents produced in image format will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal, or interfere with any information in the document. No other legend or stamp will be placed on the images other than a confidentiality legend (where applicable), redactions (consistent with any other protective orders or applicable law), and if desired by a party, a document control number separate from the Bates Number. With respect to the identification of files produced in their native format, the parties shall identify each file produced using the BegBates Number as the name, and link in the applicable load file.

  f. **File Naming Conventions**. Each TIFF Image shall be named with the unique Bates Number of the page of document. Each corresponding text file shall also be named with the BegBates Number of the document. In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

  g. **Load Files.** The parties shall produce a Concordance load file with each production. Each load file shall include the metadata fields provided in **Exhibit A** to the extent that they are available as a part of standard processing. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

h. **Extracted Text/OCRed Text**. The parties shall produce extracted text in ASCII format where text can be extracted, or OCR files obtained from each produced document or image to the extent possible and subject to the inherent limitation of the quality of the image and OCR capabilities. The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software.

i. **De-duplication.** ESI collected for preservation may be de-duplicated on a global, rather than per-custodian level using MD5 hash, SHA-1 hash, or any other hash value. For emails, de-duplication can utilize a combination of hashed metadata fields. Further, the "most inclusive thread" may be produced in lieu of each and every email thread element as long as the most inclusive thread does not omit any branches of a particular email exchange or thread. Documents and ESI with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents identified by such technology are 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

j. **Structured Data.** To the extent a response to a discovery request requires production of discoverable ESI contained in a database, information typically will be produced via a standard report using the source's built in reporting capability or as an export of the structured data in a format compatible with Microsoft Excel or Microsoft Access. The production of data via report or export is without prejudice to the requesting party requesting the information be produced in a different format, and the parties shall meet and confer regarding the relevant fields, the data sought to be produced, and the requested form of the production.

k. **Privilege Log**. Any document falling within the scope of any request for production or subpoena as negotiated by the parties that is withheld on the basis of a claim of attorney-client privilege, work-product, or any other claim of privilege or immunity from discovery shall be identified by the producing party in a privilege log, which contains the

6
**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

information required by Federal Rule of Civil Procedure 26(b)(5). The privilege log shall be in an electronic format that allows text searching and organization of data. An e-mail thread contained within a single document need only be recorded once on the producing party's privilege log, even if a privilege is asserted over multiple portions of the thread, provided that all recipients, including copyees, are listed. Privilege log identification is not required for communications exchanged between the producing party and their litigation counsel or among counsel for the producing party after May 8, 2018, the date of filing of the first of the related actions. Communications may be identified on a privilege log by category, rather than individually, subject to the parties' meet and confer about the contents of any categorical privilege log and a party's right to request a document-by-document log for specific categories of documents upon articulating a good faith basis for the request. Notwithstanding a claim of privilege, any purportedly privileged document containing non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself, indicating the reason for the redaction. A privilege log shall be provided by the producing party to the receiving party within 45 days following the delivery of any applicable production, unless there is good cause for delay. Redacted documents need not be logged as long as (a) for e-mails, the bibliographic information is not redacted (b) for non-e-mail documents, the redaction and reason for such redaction is noted on the face of the document, and (c) for all documents, a metadata field consistent with the requirements of § 6(l) indicates that the document contains redactions.

l. **Redactions.** Redacted files should be produced as PDFs or TIFFs in redacted form, with applicable text files, or PDF text layers, containing extracted or OCRed text acquired after redaction. A metadata field accompanying the document production shall indicate that the document contains redactions and the reason for the redactions. The redacting party shall use consistent terminology to reflect the reason(s) for the redactions. A party may employ native redaction techniques so long as the method of redaction employed

7

does not significantly impair the usability or searchability of the non-redacted portions of the redacted item and the fact of alteration is disclosed.

### 7. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production shall be consistent with the Court's April 23, 2019 Scheduling Order, ECF No. 63. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

### 8. DOCUMENTS PROTECTED FROM DISCOVERY

As provided in the Protective Order in this litigation, and pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding, arbitration, patent proceeding, or other administrative proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding, arbitration, patent proceedings, or other administrative proceedings. Nor shall the fact of production by any producing party in this action be used as a basis for arguing that a claim of privilege or work-product has been waived in any other proceeding. This non-waiver order shall be interpreted to provide the maximum protection allowed by law.

### 9. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: May 3, 2019        */s/ Robert C.*
                          Counsel for Plaintiff

Dated: May 3, 2019        */s/ Alycia A.*
                          Counsel for Defendant

Dated: May 7, 2019

**IT IS SO ORDERED**

Judge Jon S. Tigar

8

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: _____

UNITED STATES DISTRICT JUDGE

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing document. Pursuant to Local Rule 5-1(i), I hereby attest that the concurrence in the filing of this document has been obtained from each of the other signatories.

DATED: May 3, 2019　　　　　　　　　*/s/ Alycia A. Degen*
　　　　　　　　　　　　　　　　　　Alycia A. Degen

# EXHIBIT A

## Metadata Fields for Production

Note: Metadata Field names may vary depending on the application which generates them. For example, Microsoft Outlook creates different Metadata Field names than does Lotus Notes. Accordingly, the chart below describes the Metadata Fields to be produced in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing. All metadata fields applicable to produced ESI should be filled with the appropriate information, if available.

| Field Name | Description | Email | Loose Files/ Att. |
|---|---|---|---|
| StartBates | The Bates number for the first page of the document. | ☒ | ☒ |
| EndBates | The Bates number for the last page of the document. | ☒ | ☒ |
| Start Attachment | The first Bates number of the first attachment to an email. | ☒ | ☐ |
| End Attachment | The ending Bates number of the last page of the last attachment to an Email. | ☒ | ☐ |
| ParentBates | First bates number of the parent document for each attachment record. | ☐ | ☒ |
| From | The reported sender of an Email message. | ☒ | ☐ |
| To | The reported recipient(s) of an Email message contained in the "To" field. | ☒ | ☐ |
| CC | The reported recipient(s) of an Email message contained in the "CC" field. | ☒ | ☐ |

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

| **Field Name** | **Description** | **Email** | **Loose Files/ Att.** |
|---|---|---|---|
| BCC | The reported recipient(s) of an Email message contained in the "BCC" field. | ☒ | ☐ |
| SentDate | The date on which an Email was sent by the user's Email software (if available) in Pacific time. | ☒ | ☐ |
| SentTime | The time at which an Email was sent by the user's Email software (if not included in SentDate) in Pacific time. | ☒ | ☐ |
| EmailSubject | The Subject Line of an Email. | ☒ | ☐ |
| Attachment Count | The number of attachments to an Email | ☒ | ☐ |
| FileName | The file name. | ☒ | ☒ |
| KIND | Descriptor for the kind of document. Sample values include: :Calendar Entry; Contact; Database; Document; Drawing; Email; Image; Multimedia; No Data; Other Document; Presentation; Spreadsheet; System File; Unrecognised. | ☒ | ☒ |
| FileExt | The file extension. | ☒ | ☒ |
| Author | The author of the file as extracted from the file metadata. | ☐ | ☒ |
| CreatedDate | The date the file was created as extracted from the file metadata. | ☐ | ☒ |
| CreatedTime | The time the file was created as extracted from the file metadata. | ☐ | ☒ |
| LastModDate | The date on which the file was last modified as extracted from the file metadata. | ☐ | ☒ |

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

| **Field Name** | **Description** | **Email** | **Loose Files/ Att.** |
|---|---|---|---|
| LastModTime | The time at which the file was last modified as extracted from the file metadata. | ☐ | ☒ |
| MD5Hash | The MD-5 hash value of the file. | ☒ | ☒ |
| Custodian | All custodian(s) or source(s) associated with the record. | ☒ | ☒ |
| TEXTPATH | The path to the extracted text for the file (if needed). | ☒ | ☒ |
| NATIVE PATH | The path to the native document on the production media (where native file is produced). | ☒ | ☒ |
| REDACTED | "Redacted" (or other, similar indication) for redacted documents and indication of the reason for the redaction (e.g., "AC," "WP," "PII" or similar); otherwise, blank. | ☒ | ☒ |