Debra E. Pole (SBN 97816)
dpole@sidley.com
Alycia Degen (SBN 211350)
adegen@sidley.com
Joshua Anderson (SBN 211320)
janderson@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone:  213.896.6000

Daniel A. Spira (admitted *pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  312.853.7000

Inn-Young Park (SBN 324129)
ipark@sidley.com
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200

*Attorneys for Defendant Gilead Sciences, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, et al.,<br><br>*Plaintiffs,*<br><br>vs.<br><br>GILEAD SCIENCES, INC.,<br><br>*Defendant.* | Case No. 3:18-cv-06972-JST<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. P. 8(a), 9(b), AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Assigned to: Hon. Jon S. Tigar<br>Hearing Date:  August 22, 2019<br>Hearing Time:  2:00 p.m.<br>Location:  Courtroom 9 |

# NOTICE OF MOTION AND MOTION TO DISMISS
# FIRST AMENDED CONSOLIDATED COMPLAINT

PLEASE TAKE NOTICE that on August 22, 2019, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Gilead Sciences, Inc. ("Gilead") will and hereby does move to dismiss, in part, Plaintiffs' First Amended Consolidated Complaint.

This Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) on the following grounds:  (1) like the failure to warn claims dismissed from Plaintiffs' original Complaint, Plaintiffs' amended failure to warn claims remain preempted, in part, because Plaintiffs do not sufficiently allege any "newly acquired information" that would have allowed Gilead to strengthen warnings contained in its TDF medication labeling after 2008, without prior FDA approval; and (2) as in their original Complaint, Plaintiffs have not sufficiently pled their misrepresentation-based fraud and consumer protection law claims in accordance with Federal Rules 8(a) and 9(b).

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice; the pleadings and filings in this action; and such further evidence or argument properly before the Court.

Dated: July 10, 2019

SIDLEY AUSTIN LLP

By: */s/ Joshua E. Anderson*
Debra E. Pole (Bar No. 97816)
dpole@sidley.com
Joshua E. Anderson (Bar No. 211320)
janderson@sidley.com
Alycia A. Degen (Bar No. 211350)
adegen@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Gilead Sciences, Inc.*

-1-

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

BACKGROUND ................................................................................................................................. 2

      A.     Gilead's TDF Medications.................................................................................... 2

      B.     Partial Dismissal of Plaintiffs' Original Complaint............................................. 4

      C.     Plaintiffs' Amended Allegations and Causes of Action ..................................... 5

LEGAL STANDARD......................................................................................................................... 5

ARGUMENT....................................................................................................................................... 6

I.      PLAINTIFFS' CLAIM THAT GILEAD FAILED TO AMEND TDF MEDICATION LABELING AFTER 2008 AND AFTER INITIAL FDA APPROVAL SHOULD BE DISMISSED WITH PREJUDICE AS PREEMPTED BY FEDERAL LAW. .................................................................................................... 6

II.     PLAINTIFFS CONTINUE TO FAIL TO PLEAD THEIR MISREPRESENTATION-BASED FRAUD AND CONSUMER PROTECTION LAW CLAIMS WITH THE REQUISITE LEVEL OF PARTICULARITY. ....................... 11

CONCLUSION................................................................................................................................. 13

-i-

GILEAD SCIENCES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES, NO. 3:18-CV-06972-JST

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
  No. 08-cv-2376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x
  651 (9th Cir. 2011) ............................................................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 6

*Beavers-Gabriel v. Medtronic, Inc.*,
  15 F. Supp. 3d 1021 (D. Haw. 2014) ..................................................................................... 13

*In re Celexa & Lexapro Mktg & Sales Practices Litig.*,
  779 F.3d 34 (1st Cir. 2015) ................................................................................................. 9, 10

*Dolin v. GlaxoSmithKline LLC*,
  901 F.3d 803 (7th Cir. 2018) .................................................................................................. 10

*Gibbons v. Bristol-Myers Squibb Co.*,
  919 F.3d 699 (2d Cir. 2019) ............................................................................................ 4, 8, 9

*In re Hydroxycut Mktg. & sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) .................................................................................... 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................................................... 6, 11, 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. 14-cv-428, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ............................................. 12

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................................................... 12

*Patterson v. Bayer Healthcare Pharms., Inc.*,
  No. 1:14-cv-1087, 2015 WL 778997 (E.D. Cal. Feb. 24, 2015) ............................................ 13

*Patton v. Forest Labs., Inc.*,
  No. 17-cv-922, 2018 U.S. Dist. LEXIS 160368 (C.D. Cal. Sept. 19, 2018) .......................... 13

*Utts v. Bristol-Myers Squibb Co.*,
  226 F. Supp. 3d 166 (S.D.N.Y. 2016) ...................................................................................... 9

*Utts v. Bristol-Myers Squibb Co.*,
  251 F. Supp. 3d 644 (S.D.N.Y. 2017) ................................................................................ 8, 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................................................. 6

**Other Authorities**

21 C.F.R. § 314.3 ................................................................................................................ 1, 4, 8, 9

Fed. R. Civ. P. 8(a) ...................................................................................................................2, 6

Fed. R. Civ. P. 9(b) ............................................................................................................. *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' post-2008 and post-approval failure to warn claims and misrepresentation-based fraud and consumer protection law claims fail for the same reasons that those claims were dismissed from Plaintiffs' original Complaint.  *See* Order Granting in Part and Denying in Part Motion to Dismiss [D.E. 75] ("Order").  Specifically, (i) Plaintiffs still fail to identify any "newly acquired information" that would have allowed Gilead to strengthen the warnings on its TDF medication labeling without FDA approval after 2008; and (ii) Plaintiffs still fail to allege their misrepresentation-based fraud and consumer protection law claims with the specificity required by Federal Rule of Civil Procedure 9(b).  Thus, these claims should now be dismissed with prejudice.

*First*, Plaintiffs continue to assert that, after 2008, Gilead failed to change its FDA-approved labeling to sufficiently warn of risks to patients' kidneys and bones associated with Viread®, Truvada®, Atripla®, Complera®, and Stribild® (collectively, "TDF medications").  But, as was the case in Plaintiffs' original Complaint, Plaintiffs have not "plausibly alleged the existence of 'newly acquired information' – i.e., 'data, analyses, or other information *not previously submitted to the [FDA]*' – such that [Gilead] could have made post-2008 labeling changes under the [changes being effected] regulation."  Order at 24 (quoting 21 C.F.R. § 341.3(b); emphasis in Order).  Instead, Plaintiffs attempt to bolster their inadequate allegations by asserting that, after 2008, medical literature supported recommendations that doctors monitor all patients taking TDF medications for markers of *tubular* kidney function in addition to those for *glomerular* kidney function.  *See, e.g.,* First Amended Consolidated Complaint [D.E. 84] ("FAC") ¶ 560 ("new studies demonstrated a heightened risk to all patients, leading study authors to conclude that all patients must be frequently monitored for markers of tubular function—e.g., serum phosphorous, in addition to creatinine clearance," a marker for "glomerular function").  While Plaintiffs cite certain articles published after 2008 that purportedly reach this conclusion, nothing in their FAC or these articles supports the baseless assertion that any of this information was "*newly acquired*" within the meaning of 21 C.F.R. § 314.3.  To the contrary, by 2008, the FDA-approved labels for Gilead's TDF medications, of which this Court may take judicial notice in resolving this Motion, *already* recommended that

-1-

patients be monitored for serum phosphorous levels—the marker, according to Plaintiffs, for tubular function. And while Plaintiffs maintain that this warning should have applied to *all* patients, not only those "at risk" of renal impairment, they also allege that Gilead knew "*since at least 2002*" that "TDF was injuring patients with no preexisting risk factors for kidney impairment." FAC ¶ 559 (emphasis added). Indeed, by 2008, the TDF medication labeling *already* warned of "*new onset* or worsening renal impairment." *See* Request for Judicial Notice ("RJN"), Exs. A-E (emphasis added). And aside from their citation to these same articles, Plaintiffs do not even attempt to plead new allegations supporting a conclusion that Gilead obtained "newly acquired information," after August 22, 2008, with regard to purported *bone* injuries or risks associated with the TDF medications. Thus, Plaintiffs' own FAC and Gilead's labeling belies any suggestion of "*newly acquired* information" after 2008, as required to support a label change, and Plaintiffs' claims that Gilead failed to warn of risks from the TDF medications after 2008 now should be dismissed with prejudice as preempted.

*Second*, Plaintiffs continue to base their Fraud by Omission and State Consumer Protection Law claims (Counts X and XII), at least in part, on allegations that Gilead made affirmative misrepresentations to Plaintiffs or their doctors. *See, e.g.,* FAC ¶ 714 (alleging various "misrepresent[ations]"); *see also, e.g., id.* ¶¶ 750, 760, 767, 774, 778, 785, 789, 796, 817, 821, 822, 826, 827, 831, 832, 842, 843, 844 (alleging false or misleading affirmative "represent[ations]"). These claims continue to fail for the same reason those claims failed in Plaintiffs' original Complaint: Plaintiffs still have not alleged, *inter alia*, facts supporting when they or their doctors were exposed to any alleged misrepresentations, what alleged misrepresentations they or their doctors were exposed to, or if or how their or their doctors' conduct changed based on any such misrepresentations, as required by Federal Rules of Civil Procedure 8(a) and 9(b). As the Court has already held, "Plaintiffs may not rely on the lower level of specificity allowed for claims based on alleged *omissions* to avoid dismissal of their *misrepresentation* claims." Order at 29 (emphasis added). Thus, Plaintiffs' misrepresentation-based claims now should be dismissed with prejudice.

## BACKGROUND

### A. Gilead's TDF Medications

The TDF medications—Viread®, Truvada®, Atripla®, Complera®, and Stribild®—are each

-2-

prescription medications developed and marketed by Gilead "for the treatment of Human Immunodeficiency Virus-1 ('HIV') infection." FAC ¶ 1. Each of these medications is a fixed dose pill containing a novel compound that revolutionized the treatment of HIV, tenofovir disoproxil fumarate ("TDF"). *Id*. ¶ 4; *see also id*. ¶ 3 n.2. The TDF medications work to treat and prevent HIV "by blocking an enzyme HIV needs to replicate." *Id*. ¶ 2.

On October 26, 2001, FDA approved Viread®, the brand name for TDF, for the treatment of HIV-1 infection in combination with other antiretroviral agents. *Id*. ¶ 342. On August 2, 2004, FDA approved Truvada®, a combination of TDF and emtricitabine, for the same use. *Id*. ¶ 343. On July 12, 2006, FDA approved Atripla®, a combination of TDF, emtricitabine, and efavirenz, for the treatment of HIV-1 infection, either on its own or in combination with other antiretroviral agents. *Id*. ¶ 344. On August 10, 2011, FDA approved Complera®, a combination of TDF, emtricitabine, and rilpivirine hydrocholoride, for treatment of HIV-1 infection. *Id*. ¶ 345. On August 27, 2012, FDA approved Stribild®, a combination of TDF, emtricitabine, elvitegravir, and cobicistat, for treatment of HIV-1 infection in treatment-naive adults. *Id*. ¶ 346. FDA has also approved Viread® for treatment of Hepatitis B and Truvada® as part of an HIV prevention regimen, known as pre-exposure prophylaxis ("PrEP"). *Id*. ¶ 1 n.1.

To this day, HHS continues to include TDF, at the strongest recommendation level, in "Recommended Initial Regimens for Most People with HIV." *Guidelines for the Use of Antiretroviral Agents in Adults and Adolescents Living with HIV*, DEP'T OF HEALTH AND HUM. SERV., at F-5 (Oct. 25, 2018), http://www.aidsinfo.nih.gov/ContentFiles/AdultandAdolescentGL.pdf. Likewise, the World Health Organization includes TDF on its list of the medicines "deemed essential for addressing the most important public health needs globally." *WHO Model List of Essential Medicines*, WORLD HEALTH ORG., at 19-21 (Mar. 2017, *amended* Aug. 2017), http://www.who.int/selection_medicines/list/en/.

Each of the 292 Plaintiffs named in the FAC allegedly took one or more of Gilead's TDF medications for treatment of HIV, treatment of Hepatitis B, or HIV prevention (*i.e.*, PrEP). FAC ¶¶ 1, 22, 25-316, 522. None of these Plaintiffs allege that the TDF medications were ineffective for the treatment or prevention of HIV, or for treatment of Hepatitis B. Instead, Plaintiffs allege that, as a

-3-

result of taking these medications, they suffered kidney and/or bone injuries.  *Id*. ¶¶ 25-316.

### B.       Partial Dismissal of Plaintiffs' Original Complaint

On May 10, 2019, this Court issued an Order granting in part and denying in part Gilead's motion to dismiss Plaintiffs' original Complaint.  As relevant here, the Court dismissed as preempted Plaintiffs' claims that after FDA approval of the TDF medications, and after issuance of the federal Changes Being Effected ("CBE") regulation in 2008, Gilead failed to warn of the kidney and bone risks associated with the TDF medications.  Order at 22-24.  The Court explained that "'to properly plead and then prove a state law failure-to-warn claim based on post-drug-release information . . . that is not preempted by the [Federal Food, Drug, and Cosmetic Act ("FDCA")], a plaintiff must plead "a labeling deficiency that [Defendants] could have corrected using the CBE regulation."'"  *Id*. at 20 (quoting *Gibbons v. Bristol-Myers Squibb Co*., 919 F.3d 699, 708 (2d Cir. 2019)).  The CBE regulation, in turn, only permits a manufacturer to alter its drug labeling without prior FDA approval based upon "newly acquired information," defined as "'data, analyses, or other information not previously submitted to the [FDA].'"  *Id*. (quoting 21 C.F.R. § 314.3(b)).  Although Plaintiffs' Complaint alleged "that Gilead acquired additional information after FDA approval" of the TDF medications, "it is not possible to discern from the complaint whether – and if so, when – any such information was provided to the FDA.  Plaintiffs allege that the risks of TDF drugs were known before Gilead submitted its first TDF drug for approval." *Id.* at 22-23.  Thus, "the Court cannot conclude that Plaintiffs have plausibly alleged the existence of 'newly acquired information' – i.e., 'data, analyses or other information *not previously submitted to the [FDA]*,' – such that [Gilead] could have made post-2008 labeling changes under the CBE regulation. . . .  As pleaded, those claims are therefore preempted."  Order at 24 (quoting 21 C.F.R. § 341.3(b); emphasis in Order).

Additionally, the Court dismissed Plaintiffs' Fraud and Consumer Protection Law Claims, to the extent they were based on alleged affirmative misrepresentations, as opposed to omissions. Order at 27-30.  The Court held that Federal Rule 9(b) "govern[s] Plaintiffs' fraud claims and their consumer protection claims to the extent that the latter allege a course of fraudulent conduct. . . . [A]s currently pleaded, Plaintiffs' claims are not only about omissions, and Plaintiffs may not rely on the lower level of specificity allowed for claims based on alleged omissions to avoid dismissal of

their misrepresentation claims." *Id*. at 28-29.  Because Plaintiffs' misrepresentation-based claims undisputedly did not satisfy Rule 9(b), they were dismissed with leave to amend.  *Id*. at 29.

### C. Plaintiffs' Amended Allegations and Causes of Action

Plaintiffs filed the FAC on May 31, 2019, asserting the same claims as those contained in their original Complaint:  Strict Liability – Design Defect (Count I), Strict Liability – Failure to Warn (Count II), alleged violations of state Products Liability Acts (Counts III-VIII), Negligence and Gross Negligence (Count IX), Fraud by Omission (Count X), Breach of Implied Warranty of Merchantability (Count XI), and alleged violations of State Consumer Protection Laws (Count XII).

In an attempt to support their assertion that "Gilead could have unilaterally strengthened its warnings after FDA approval," including "[o]n or after August 22, 2008," FAC at p. 205, Plaintiffs now allege that subsequent medical literature revealed a relationship between TDF and impairment of the kidney's tubular function, such that article authors have recommended that patients taking TDF should be monitored for serum phosphorous, a marker for tubular function:

> Medical literature recognized that even if TDF may not frequently impair kidneys' glomerular function—as measured by serum creatinine or creatinine clearance—in the absence of established risk factors, TDF-induced damage to kidneys' tubular function is much more common and cannot be adequately predicted by traditional risk factors for kidney impairment or detected by monitoring for glomerular function.  These new studies demonstrated a heightened risk to all patients, leading study authors to conclude that all patients must be frequently monitored for markers of tubular function—e.g., serum phosphorous, in addition to creatinine clearance.

*Id*. ¶ 560; *see also id*. ¶¶ 561-70 (citing six articles that allegedly support this assertion).  Aside from citing these same articles, the FAC does not contain any new allegations regarding post-August 22, 2008 information pertaining to *bone* injuries purportedly associated with the TDF medications.

Plaintiffs also continue to assert, in support of their fraud and consumer protection law claims, that Gilead made affirmative "misrepresent[ations]" about TDF and TAF.  *See id*. ¶ 714; *see also, e.g., id*. ¶¶ 750, 760, 767, 774, 778, 785, 789, 796, 817, 821, 822, 826, 827, 831, 832, 842, 843, 844 (alleging false or misleading affirmative "represent[ations]").  However, like the Complaint, the FAC still fails to allege any of the necessary details regarding those alleged misrepresentations.

## LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is

-5-

entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted). The plausibility standard requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Additionally, Federal Rule 9(b) "requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud . . . .'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (internal quotations omitted). Even if fraud is not an element of a plaintiff's claims, "[w]hen an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003); *see also Kearns*, 567 F.3d at 1125-26, 1128 (affirming dismissal of complaint that was "grounded in fraud" under Rule 9(b)).

## ARGUMENT

### I. PLAINTIFFS' CLAIM THAT GILEAD FAILED TO AMEND TDF MEDICATION LABELING AFTER 2008 AND AFTER INITIAL FDA APPROVAL SHOULD BE DISMISSED WITH PREJUDICE AS PREEMPTED BY FEDERAL LAW.

Plaintiffs' claim that Gilead failed to amend its FDA-approved TDF medication labeling after 2008 and after FDA initially approved that labeling should be rejected for the same reason that this claim was dismissed from Plaintiffs' original Complaint. In particular, Plaintiffs do not sufficiently allege the existence of "newly acquired information," obtained after 2008 and after initial approval, that would have allowed Gilead to unilaterally strengthen the warnings contained in the FDA-approved labeling for its TDF medications. *See* Order at 24 ("the Court cannot conclude that Plaintiffs have plausibly alleged the existence of 'newly acquired information' – i.e., 'data, analyses, or other information not previously submitted to the FDA' – such that it could have made post-2008

labeling changes under the CBE regulation") (quoting 21 C.F.R. § 341.3(b); emphasis omitted). Rather, Plaintiffs continue to assert that "*[b]efore* Gilead began selling its first TDF Drug, Viread, in 2001, Gilead knew that TDF posed a safety risk to patients' kidneys and bones."  FAC ¶ 5; *see also id.* ("preclinical data for TDF showed that it could cause significant kidney and bone damage"), ¶ 364 ("Since scientists first synthesized TDF, studies have consistently shown that it could cause significant kidney and bone damage"), ¶ 365 ("Gilead's preclinical studies of TDF showed that it could be toxic to kidneys and bones."), ¶ 612 ("Gilead was aware of the risks TDF posed to patients' kidneys [and] bones, and the risks TDF posed to patients' kidneys and bones were knowable, at the time Gilead manufactured, sold, or distributed the TDF Drugs."); *see also* Order at 22 (recognizing "that Plaintiffs allege that the company knew that TDF posed risks to patients' kidneys and bones before the first TDF drug was approved by the FDA").

As an initial matter, Plaintiffs' FAC does not contain *any* new allegations at all to support a conclusion that Gilead obtained "newly acquired information," after 2008, pertaining to purported *bone* risks associated with the TDF mediations.  Therefore, their claims that Gilead failed to update TDF medication labeling after 2008 with stronger warnings about *bone* risks now should be dismissed with prejudice.

Plaintiffs' new allegations about supposed post-2008 information regarding *kidney* risks from the TDF medications fair no better.  Specifically, in an effort to maintain their post-approval, post-2008 failure to warn claims about kidney risk, Plaintiffs now allege that (i) medical literature after 2008 revealed a relationship between TDF and impairment of the kidney's "tubular function," requiring monitoring of serum phosphorous, a marker for tubular function, and (ii) authors of studies published after 2008 recommended such monitoring in all patients, not only those "at risk" for renal injuries.  *See* FAC ¶ 560 ("new studies demonstrated a heightened risk to all patients, leading study authors to conclude that all patients must be frequently monitored for markets of tubular function—e.g., serum phosphorous, in addition to creatinine clearance").

But neither these allegations, nor the articles that Plaintiffs cite for these conclusions, *see id.* ¶¶ 561-70, support the baseless assertion that Gilead obtained any "newly acquired information," within the meaning of C.F.R. § 314.3(b), to support a label change after 2008.  Indeed, the FDA-

approved labels in effect for each of the TDF medications on the market in 2008 *already recommended that doctors monitor patients for serum phosphorous*—the marker, according to Plaintiffs, for tubular function. *See* RJN, Ex. A at 5 (Viread® labeling approved August 11, 2008: "Routine monitoring of calculated creatinine clearance **and serum phosphorous** should be performed in patients at risk for renal impairment.") (emphasis added); *id.* Ex. B at 5 (similar warning on 2008 Truvada® labeling); *id.* Ex. C at 7 (similar warning on 2008 Atripla® labeling); *see also id.* Ex. D at 1, 5 (similar warning on the original labeling for Complera® in 2011); *id.* Ex. E at 1, 6 (similar warning on the original labeling for Stribild® in 2012). Accordingly, articles after 2008 that point to the need to monitor patients for serum phosphorous or tubular function do not constitute "newly acquired information" sufficient to support a labeling change without prior FDA approval, and cannot support Plaintiffs' failure to warn claim. *See, e.g., Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 665 (S.D.N.Y. 2017) (report did not contain "newly acquired information" where the challenged product "label specifically warns about the" risk identified in the report), *aff'd by Gibbons*, 919 F.3d 699; *see also id.* at 667 (study did not constitute "newly acquired information" where its findings were "consistent with the data [already] reported in the [product] labeling").

Additionally, while Plaintiffs assert that such monitoring for serum phosphorous should have been recommended for "all patients," not just those "at risk" for kidney injuries, FAC ¶¶ 559-60, Plaintiffs also allege that "Gilead had known *since at least 2002* that TDF was injuring patients with *no preexisting risk factors* for kidney impairment." *Id.* ¶ 559 (emphasis added). Moreover, the Viread®, Truvada®, and Atripla® labeling by 2008, and the original labeling for Complera® (2011) and Stribild® (2012), already warned of "*new onset* or worsening renal impairment," including Fanconi Syndrome, a condition affecting tubular function. *See* Ex. A to RJN at 1, 5; *id.* Ex. B at 1, 5; *id.* Ex. C at 1, 6-7, 43; *id.* Ex. D at 1, 5; *id.* Ex. E at 1, 6. In other words, Plaintiffs cannot maintain that any recommendation from study authors *after 2008* to monitor "all patients" for kidney injuries constituted "newly acquired information" different than that already in Gilead's possession.[1]

---

[1] Indeed, Plaintiffs' allegation that Gilead warned physicians in the EU since 2002 "to frequently monitor patients for both glomerular (creatinine clearance) and tubular (serum phosphorous) injury" (FAC ¶ 575) undermines their claim that any information Gilead obtained after 2008 regarding the purported need for such monitoring was "newly acquired" within the meaning of 21 C.F.R. § 314.3

-8-

And as was the case in Plaintiff's original Complaint, "it is not possible to discern from the complaint whether – and if so, when – any such information was provided to the FDA. . . . It would be an unreasonable inference to conclude that Gilead did not present any information concerning the risks of TDF drugs to the FDA . . . ."  Order at 23; *see also, e.g., Gibbons*, 919 F.3d at 708 (affirming dismissal for lack of "newly acquired information" where plaintiffs "provide[d] no basis upon which the court could conclude that the bleeding events covered by the alleged 'reports' and 'studies' presented a different type of risk than those the company had discussed with the FDA, or were more severe or more frequent that the bleeding events that the government already knew about").[2]

Even if Plaintiffs had alleged that recommendations to monitor "all patients" for markers of kidney injuries were first made after 2008—which they have not—"authors['] recommend[ations] that all TDF patients be monitored," FAC ¶ 562, do not equate to the type of underlying data or analysis—*i.e.*, "data derived from new clinical studies, reports of adverse events, or new analyses of previously submitted data . . . [,] if the studies, events, or analyses reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA"—that constitutes "newly acquired information."  21 C.F.R. § 314.3(b).  *See also, e.g., In re Celexa & Lexapro Mktg. & Sales Practices Litig.,* 779 F.3d 34, 42 (1st Cir. 2015) (an "opinion piece" does not constitute "newly acquired information"); *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 185 (S.D.N.Y. 2016) ("newly acquired information" involves risks "of a 'different type or greater severity or frequency than previously included in submissions to [the] FDA'") (quoting 21 C.F.R. § 314.3(b)).  To hold otherwise would mean that *any* recommendation or medical opinion from *any* doctor would constitute "newly acquired information" that could justify a label change.

Moreover, even if Plaintiffs had shown that Gilead obtained "newly acquired information" to support a post-2008 label change for the TDF medications generally—which they have not—their

---

[2] Moreover, the FDA's "Medical Review" of Stribild, which Plaintiffs quote in their FAC, *see* FAC ¶¶ 376, 445-47, conclusively demonstrates that, by no later than July 2, 2012, FDA had received and considered information regarding the risk of tubular dysfunction and the need to monitor "all patients" for the risks associated with TDF.  *See, e.g.,* RJN Ex. F at 36, 50, 62-64 (discussing risk of tubular dysfunction and the recommendation for "[r]enal monitoring" of "all patients").

post-approval failure to warn claim still should be dismissed as it pertains to Stribild®. Indeed, Plaintiffs allege that Gilead's original 2012 labeling for Stribild® actually contained the exact type of warning that they complain was lacking from the labeling for earlier TDF medications: "Gilead proposed and the FDA approved stronger monitoring warnings for Stribild, *which included recommending the monitoring of all patients for glomerular and tubular injury*." FAC ¶ 574 (emphasis added); *see also id.* ¶ 383 ("By the time it reviewed the Stribild NDA, the FDA stated that the safety profile of TDF was, by that point, 'well-characterized in multiple previous clinical trials and is notable for TDF-associated renal toxicity related to proximal renal tubule dysfunction and bone toxicity related to loss of bone mineral density and evidence of increased bone turnover.'"); RJN Ex. E at 1 (warning of "[n]ew onset or worsening renal impairment," recommending assessment of "creatinine clearance (CLcr), urine glucose and urine protein before initiating treatment with Stribild," and recommending that doctors "[m]onitor CLcr, urine glucose, and urine protein *in all patients*") (emphasis added).[3] In fact, FDA's "Medical Review" of the Stribild New Drug Application specifically discussed medical literature and conclusions that Plaintiffs now cite as constituting supposedly "newly-acquired information." *Compare* FAC ¶ 565-66, *with* RJN Ex. F at 98 (citing same article and others); *see also, e.g.*, RJN Ex. F at 36, 50, 62-64 (discussing risk of tubular dysfunction and the recommendation for "[r]enal monitoring" of "all patients"). Accordingly, Plaintiffs cannot assert that this information had not been "previously submitted to the [FDA]," 21 C.F.R. § 341.3(b), nor that any "newly acquired information" justified any change to the Stribild® warnings after FDA approved Stribild® in August 2012. *See, e.g., In re Celexa,* 779 F.3d at 42 (affirming dismissal of claims based on lack of "newly acquired information," where "[p]laintiffs do not argue . . . that the FDA was unaware of this fact" contained in an article published after FDA approval); *Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 815 (7th Cir. 2018) (plaintiff had not identified newly acquired information, where "FDA was [already] aware of the nature of the data").[4]

---

[3] Indeed, nearly all of the post-2008 articles that Plaintiffs cite as constituting "newly acquired information" were published *before* Stribild® was approved by the FDA in August 2012, and, therefore, could not constitute "newly acquired information" as to Stribild®. *See* FAC ¶¶ 558-66, 570 (citing articles published before FDA approval of Stribild®).

[4] The deficiency of Plaintiffs' Stribild®-based claims is significant because 182 of the 292 Plaintiffs

-10-
GILEAD SCIENCES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES, NO. 3:18-CV-06972-JST

In short, despite their purported description of articles published after 2008, Plaintiffs still have not identified any "newly acquired information" that would have permitted Gilead to unilaterally update its TDF medication labeling without prior FDA approval. Thus, Plaintiffs' post-2008 and post-approval failure to warn claims should now be dismissed with prejudice as preempted. *E.g., Utts*, 251 F. Supp. 3d at 662-72 (dismissing claims as preempted, based on review of cited articles and determination that none of them provided "newly acquired information").

## II. PLAINTIFFS CONTINUE TO FAIL TO PLEAD THEIR MISREPRESENTATION-BASED FRAUD AND CONSUMER PROTECTION LAW CLAIMS WITH THE REQUISITE LEVEL OF PARTICULARITY.

Plaintiffs' claims for Fraud by Omission (Count X) and Violation of State Consumer Protection Laws (Count XII) should be dismissed, in part, because despite continuing to allege affirmative misrepresentations by Gilead, Plaintiffs' claims are still not pled with the level of particularity required by Rule 9(b).

This Court already recognized, in dismissing Plaintiffs' misrepresentation-based claims from their original Complaint, that "Rule 9(b) . . . govern[s] Plaintiffs' fraud claims and their consumer protection claims to the extent the latter allege a course of fraudulent conduct," including allegations that Gilead made affirmative misrepresentations. Order at 28; *see also, e.g., Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to California consumer protection law claims, and recognizing that "we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL"); *In re Hydroxycut Mktg. & sales Practices Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011) (applying Rule 9(b) to several state consumer protection law claims, because they were grounded in fraud). Moreover, where Plaintiffs' Fraud by Omission "claims are not *only* about omissions, . . . Plaintiffs may not rely on the lower level of specificity allowed for claims based on alleged omissions to avoid dismissal of their misrepresentation claims." Order at 29 (emphasis added).

In their FAC, Plaintiffs continue to assert Fraud by Omission (Count X) based, at least in part, on alleged affirmative misrepresentations. FAC ¶ 714 (alleging that Gilead "misrepresent[ed]:

---

allegedly used Stribild® and 47 of those 182 allegedly used *only* Stribild®. FAC ¶¶ 25-316.

(a) that any tenofovir-induced toxicity was rare and unavoidable; (b) why Gilead had purportedly abandoned development of TAF in 2004; and (c) that TAF was 'new' once Gilead finally introduced the safer TAF design over a decade later"). Similarly, Plaintiffs continue to base their State Consumer Protection Law claims (Count XII), at least in part, on alleged misrepresentations. *E.g., id.* ¶ 750 (alleging that "Gilead committed unconscionable, false, misleading, and/or deceptive acts and practices . . . by representing that the TDF Drugs have characteristics, benefits, and qualities that they do not have"), *id.* ¶ 767 (alleging that Gilead "knowingly ma[de] a false representation as to the characteristics or benefits of the TDF Drugs"), *id.* ¶¶ 760, 774, 778, 785, 789, 796, 817, 821, 822, 826, 827, 831, 832, 842, 843, 844 (similar). Accordingly, these claims sound in fraud, and, pursuant to Rule 9(b), must be supported by factual allegations setting forth "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124. Plaintiffs must individually allege, for instance, what specific misrepresentations were made to each of them and their physicians, and when they were exposed to any such misrepresentations. "[C]onclusory allegation that they 'were exposed to and saw defendant's material, deceptive marketing claims and packaging' . . . are not sufficiently particular" to satisfy Rule 9(b). *In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-cv-428, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014).

But, as was the case in Plaintiffs' original Complaint, Plaintiffs' FAC contains only boilerplate and collective assertions that "Plaintiffs and their doctors justifiably relied on Gilead's product labeling and other representations." FAC ¶ 711. ***None*** of the 292 Plaintiffs alleges what particular "labeling and other representations" he or she or his or her doctors were exposed to, when any such exposure occurred, how the alleged representations were false, the manner in which the conduct of any Plaintiff or Plaintiff's doctor was affected by the alleged misrepresentations, or any facts supporting their generalized reliance allegation. Thus, Plaintiffs' misrepresentation-based claims fail for the same reason that they were dismissed from the original Complaint: Plaintiffs have not even attempted to meet their burden to "plead with particularity, *and separately*, when and how each named plaintiff was exposed to" the alleged misrepresentations. *Opperman v. Path, Inc.,* 87 F. Supp. 3d 1018, 1050 (N.D. Cal. 2014) (emphasis in original). "It is not sufficient to plead as a group, nor is it sufficient simply to allege general exposure without more detail." *Id.*

Accordingly, Plaintiffs' misrepresentation-based Fraud by Omission and Consumer Protection Law claims now should be dismissed with prejudice for failure to satisfy Rule 9(b).  *See, e.g., In re Actimmune Mktg. Litig.*, No. 08-cv-2376, 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6, 2009) (plaintiffs failed to meet Rule 9(b) pleading requirements where "neither individual alleges with any degree of specificity that they or their doctors ever were actually the recipient of any of defendants' fraudulent misrepresentations"), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *Patton v. Forest Labs., Inc.*, No. 17-cv-922, 2018 U.S. Dist. LEXIS 160368, *23-28 (C.D. Cal. Sept. 19, 2018) (dismissing UCL claim with prejudice under Rule 9(b) because plaintiffs failed to allege "specific content of [purportedly fraudulent] statements, allege when or how such statements were made, allege specifically who heard or saw the statements, or offer an acceptable reason why the statements were fraudulent"); *Patterson v. Bayer Healthcare Pharms., Inc.*, No. 1:14-cv-1087, 2015 WL 778997, at *13 (E.D. Cal. Feb. 24, 2015) (dismissing fraud based claims despite allegations that defendant's "label fail[s] to warn about" product risks, because "[a]bsent from these otherwise sufficient factual allegations is where or when [plaintiff] was exposed to the Booklet or other materials"); *Beavers-Gabriel v. Medtronic, Inc.*, 15 F. Supp. 3d 1021, 1038 (D. Haw. 2014) ("Missing from the Complaint . . . is the connection between Defendants' alleged misdeeds and Plaintiff and Plaintiff's physicians—*i.e.*, that Plaintiff and Plaintiff's physicians relied on these misrepresentations…. Although the Complaint generally asserts that 'Plaintiff and Plaintiff's physicians . . . [relied] on Medtronic's concealment of information and misrepresentations about the safety risks related to [the device] in deciding to use [the device] . . . , the Complaint fails to identify what particular misrepresentations and/or concealments were made to Plaintiff and Plaintiff's physicians (as opposed to the medical field generally), who made those particular representations and/or omissions, and when those events occurred.").

## CONCLUSION

For the foregoing reasons, Gilead's Motion to Dismiss should be granted.  Because Plaintiffs have failed to remedy the deficiencies this Court identified in their original Complaint, Plaintiffs' post-2008 and post-approval failure to warn claims and misrepresentation-based fraud and consumer protection law claims should now be dismissed with prejudice.

| | | |
|---|---|---|
| Dated: July 10, 2019 | | SIDLEY AUSTIN LLP |
| | By: | */s/ Joshua E. Anderson* <br> Debra E. Pole (Bar No. 97816) <br> dpole@sidley.com <br> Joshua E. Anderson (Bar No. 211320) <br> janderson@sidley.com <br> Alycia A. Degen (Bar No. 211350) <br> adegen@sidley.com <br> SIDLEY AUSTIN LLP <br> 555 West Fifth Street <br> Los Angeles, CA 90013 <br> Telephone: (213) 896-6000 <br> Facsimile: (213) 896-6600 |
| | | Daniel A. Spira (admitted *pro hac vice*) <br> dspira@sidley.com <br> SIDLEY AUSTIN LLP <br> One South Dearborn <br> Chicago, IL 60603 <br> Telephone:  312.853.7000 |
| | | Inn-Young Park (Bar No. 324129) <br> ipark@sidley.com <br> SIDLEY AUSTIN LLP <br> 555 California St., Suite 2000 <br> San Francisco, CA 94104 <br> Telephone: 415.772.1200 |
| | | *Attorneys for Defendant Gilead Sciences, Inc.* |

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2019, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

*/s/ Joshua E. Anderson*
Counsel for Defendant Gilead Sciences, Inc.