UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC.,<br><br>Defendant. | Case No. 18-cv-06972-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF Nos. 91, 92 |

Before the Court are Defendant Gilead Sciences, Inc.'s motions to dismiss the first amended complaint ("FAC"). Gilead moves to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 91. It also seeks dismissal of Plaintiffs' post-approval, post-2008 failure-to-warn claims, and of Plaintiffs' fraud and consumer protection claims to the extent they rely on affirmative misrepresentations, under Federal Rules of Civil Procedure 12(b)(6) and 9(b). ECF No. 92. The Court will grant the motions in part and deny them in part.

## I.   BACKGROUND

This case concerns allegations by individuals who have taken one of more of Gilead's drugs containing tenofovir disoproxil fumarate ("TDF") – Viread, Truvada, Atripla, Complera, and Stribild – and contend that they have suffered unnecessary kidney and bone damage resulting from Gilead's failure to provide adequate warnings and its decision to develop drugs containing TDF rather than tenofovir alafenamide fumarate ("TAF"). *See* ECF Nos. 1, 84. Gilead filed a motion to dismiss Plaintiffs' original complaint. ECF No. 45. Granting Gilead's motion in part, the Court dismissed with leave to amend "Plaintiffs' failure-to-warn claims based on post-approval, post-2008 labeling changes" and "Plaintiffs' fraud and consumer protection claims to

the extent those claims are based on misrepresentations and not omissions." ECF No. 75 at 30.[1]

Plaintiffs filed a timely first amended complaint. ECF No. 84. In addition to attempting to cure the deficiencies identified in the Court's order, the FAC also consolidated claims from two later-filed lawsuits: *Dowdy v. Gilead Sciences, Inc.*, Case No. 19-cv-0481, and *Lyons v. Gilead Sciences, Inc.*, Case No. 19-cv-2538. The Court had previously granted the parties' stipulations to consolidate these cases "for all pretrial purposes" and "without prejudice to or waiver of Gilead's opposition to consolidated trials in any of these cases." ECF No. 67 at 6; ECF No. 80 at 6. Gilead now moves to dismiss the consolidated FAC in its entirety for lack of subject matter jurisdiction. ECF No. 91. Gilead also argues that Plaintiffs have failed to cure the deficiencies the Court identified and seeks dismissal of the previously dismissed claims with prejudice. ECF No. 92.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1). The party asserting subject matter jurisdiction bears the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.   Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[1] The Court described Plaintiffs' factual allegations in detail when ruling on Gilead's first motion to dismiss and does not repeat that discussion here.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### C. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake" but allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citation omitted). However, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim," and such a claim "will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007); *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) ("[A] plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.").

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Plaintiffs assert that the Court has jurisdiction over this case under the Class Action Fairness Act of 2005 ("CAFA"), which "provides federal district courts with original jurisdiction

3

over 'mass actions' if the actions meet all of the statutory requirements" under 28 U.S.C. § 1332(d). *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1222 (9th Cir. 2014) (en banc); ECF No. 84 ¶ 19. They also contend that the Court has diversity jurisdiction "under 28 U.S.C. § 1332(a) for those Plaintiffs who are citizens of states other than California." *Id.* ¶ 20.

Gilead does not dispute diversity jurisdiction as to the non-California Plaintiffs but argues that the Court lacks CAFA jurisdiction. Although the Court previously concluded that it had such jurisdiction when it ruled on Gilead's first motion to dismiss, ECF No. 75 at 4-5, the Court is also under a continuing obligation to evaluate its own subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Thus, the Court's prior ruling is not dispositive, and the Court does not construe Gilead's motion as a procedurally improper motion for reconsideration.

A mass action qualifies for federal jurisdiction under § 1332(d) if it is a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). Gilead contends that the Court lacks jurisdiction because Plaintiffs have not proposed that their claims be tried jointly. Gilead does not "dispute that, based on Plaintiffs' allegations, Plaintiffs are sufficiently numerous, that the parties are minimally diverse, or that the individual and aggregate amount in controversy requirements are satisfied." ECF No. 91 at 10.

Plaintiffs need not "expressly request a 'joint trial'" to propose one. *Corber*, 771 F.3d at 1223. However, a "proposal" for a joint trial "is a voluntary and affirmative act, and an intentional act. It is not a mere suggestion, and it is not a mere prediction." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1048 (9th Cir. 2015) (internal quotation marks and citations omitted). "[A]n implicit proposal may be found when all of the circumstances of the action, including the language of the complaint and the structure of the action, lead to the assumption that the claims will be tried jointly." *Ramirez v. Vintage Pharm.*, *LLC*, 852 F.3d 324, 329 (3d Cir. 2017). When "assess[ing] whether there has been a proposal for joint trial, [courts] hold plaintiffs responsible for what they have said and done." *Corber*, 771 F.3d at 1223.

That Plaintiffs filed a single amended complaint is some evidence of a proposal to try

4

claims jointly. The Ninth Circuit has found CAFA jurisdiction where plaintiffs, who alleged "a 'common plan and scheme,'" "filed a single state-court complaint that named well over 100 plaintiffs and provide[d] that 'Plaintiffs, and each of them, demand a jury trial. . . .'" *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868 (9th Cir. 2013); *see also Ramirez*, 852 F.3d at 329 ("Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial."). Similarly, the FAC in this case names 292 plaintiffs, includes hundreds of paragraphs alleging common facts, and demands "*a* trial by jury." ECF No. 84 ¶¶ 25-591; *id.* at 250 (emphasis added). Plaintiffs are the "masters of their complaint," and "can structure actions in cases involving more than 100 potential claimants so as to avoid federal jurisdiction under CAFA." *Corber*, 771 F.3d at 1223. A reasonable corollary is that Plaintiffs may therefore also structure their actions so as to invoke federal jurisdiction, and neither party has cited, and the Court is not aware of, any case where a court has rejected CAFA jurisdiction over a single complaint filed by more than 100 plaintiffs alleging a common plan or scheme.

Nonetheless, looking at all of the circumstances in this case, the Court concludes that the FAC does not propose a joint trial, as required for CAFA jurisdiction. Prior to filing the FAC, Plaintiffs and Gilead jointly stipulated to consolidation of *Holley*, *Dowdy*, and *Lyons* "for all pretrial purposes." ECF No. 67 at 2; ECF No. 80 at 2. But a request for consolidation "solely for pretrial proceedings" is insufficient to constitute a proposal for a "joint trial." *Dunson v. Cordis Corp.*, 854 F.3d 551, 555 (9th Cir. 2017) (citing *In re Abbott Laboratories, Inc.*, 698 F.3d 568, 573 (7th Cir. 2012)); *see also* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV) (excluding from the definition of "mass action" any civil action in which "the claims have been consolidated or coordinated solely for pretrial proceedings"). Indeed, where plaintiffs "qualif[y] their coordination request by saying that it was intended to be solely for pre-trial purposes, . . . it would be difficult to suggest that [they] had proposed a joint trial." *Corber*, 771 F.3d at 1224-25.

More significantly, Plaintiffs filed the FAC after the Court held a case management conference in which trial planning was discussed. At that conference, Plaintiffs stated that "we're

5

not going to be trying . . . 165 cases at one time." ECF No. 76 at 24.[2] They also expressed a clear intent to use bellwether trials. *Id.* at 29. Plaintiffs argue that whether their "claims ultimately proceed to a joint trial is irrelevant" because "[i]t is well settled that post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing." *Visendi*, 733 F.3d at 868 (internal quotation marks and citation omitted). But they ignore the fact that their proposal for bellwether trials came *before* they filed the FAC, and the Court must therefore consider that proposal.

As the Ninth Circuit has explained, proposing the use of bellwether trials might or might not constitute a proposal to try claims jointly. *Dunson*, 854 F.3d at 555. "If 100 or more plaintiffs propose holding a bellwether trial . . . in which the results of the trial will be binding on the plaintiffs in the other cases, they have proposed a joint trial of their claims for purposes of § 1332(d)(11)(B)(i)." *Id.* But proposing the "more common" type of bellwether trial, where "the claims of a representative plaintiff or plaintiffs are tried, but the outcome of the trial is binding only as to the parties involved in the trial itself" or perhaps "binding on the *defendant* under ordinary principles of issue preclusion," does not constitute a proposal for claims to be tried jointly. *Id.* (emphasis in original). "To constitute a trial in which the plaintiffs' claims are 'tried jointly' for purposes of § 1332(d)(11)(B)(i), the results of the bellwether trial must have preclusive effect on the plaintiffs in the other cases as well." *Id.*; *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("A trial of 10 exemplary plaintiffs, *followed by application of issue or claim preclusion to 134 more plaintiffs without another trial*, is one in which the claims of 100 or more persons are being tried jointly, and § 1332(d) thus brings the suit

---

[2] "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). Gilead's motion does not fall squarely into either rubric because, although Gilead relies on evidence outside the FAC to challenge jurisdiction, *see* ECF No. 91 at 11 (quoting transcript of April 23, 2019 case management conference), resolution of the motion does not depend on the truth of Plaintiffs' allegations. Nonetheless, it is clear that courts consider material outside the complaint when determining whether CAFA jurisdiction exists, and the Court does so here. *See, e.g.*, *Corber*, 771 F.3d at 1222-25 (considering plaintiffs' petitions for coordination in state court).

within federal jurisdiction." (emphasis added)).  Significantly for this case, when plaintiffs propose a bellwether trial without specifying which type, courts "presume that they mean a bellwether trial in which the results will not be binding on the plaintiffs in the other cases but will instead be used for informational purposes only."  *Dunson*, 854 F.3d at 555 (citing *Briggs*, 796 F.3d at 1051 (holding that "a bellwether trial is not, without more, a joint trial within the meaning of CAFA")).  As in *Dunson*, "nothing [Plaintiffs] said indicated that they were referring to a bellwether trial whose results would have preclusive effect on the plaintiffs in the other cases," and the Court therefore concludes that Plaintiffs have not proposed that their claims be tried jointly.  *Id.* at 557.  The Court therefore lacks jurisdiction under CAFA.

The parties agree that the proper remedy is to sever and dismiss the claims of the California Plaintiffs, which would allow the Court to exercise diversity jurisdiction over the remainder of the case.  The Court agrees that this is the correct result.  Federal Rule of Civil Procedure 21 allows a court to "perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19."  *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) (internal quotation marks and citation omitted).  Neither party suggests, and the Court does not find, that any of the individual plaintiffs are parties whose joinder is required under Rule 19.  The Court will therefore sever and dismiss the 16 Plaintiffs who are California citizens to perfect its diversity jurisdiction.

### B. Fraud and Consumer Protection Claims

Gilead moves to dismiss Plaintiffs' fraud and consumer protection claims to the extent they rely on affirmative misrepresentations and not simply omissions.  Plaintiffs respond that they "did not intend their FAC to include claims based on affirmative misrepresentations" and "do not oppose dismissal of any fraud or consumer protection claims based on misrepresentations and not omissions."[3]  ECF No. 102 at 20-21.  The Court will therefore grant Gilead's motion to dismiss

---

[3] Plaintiffs also assert that they "do not believe the FAC states" any claims based on affirmative misrepresentations and state that their "inclusion of . . . one sentence referencing misrepresentations [in paragraph 714 of the FAC] was in error." ECF No. 102 at 20.  However, the FAC contains repeated references to misrepresentations beyond this single sentence.  *E.g.*, ECF No. 84 ¶ 411 ("Despite having discovered the benefits of TAF before 2001, Gilead repeatedly misrepresented TAF as 'new.'"); *id.* ¶ 482 ("Gilead . . . trained its sales representatives

7

such claims.

### C. Failure-to-Warn Claims

Gilead also moves to dismiss the post-approval, post-2008 failure-to-warn claims that this Court previously dismissed with leave to amend. In its ruling on Gilead's first motion to dismiss, the Court noted that, in their original complaint, "Plaintiffs allege that the company knew that TDF posed risks to patients' kidneys and bones before the first TDF drug was approved by the FDA," but that "the complaint also alleges that Gilead acquired additional information after FDA approval." ECF No. 75 at 22. The Court concluded that:

> The problem with Plaintiffs' allegations is that it is not possible to discern from the complaint whether – and, if so, when – any such information was provided to the FDA. Plaintiffs allege that the risks of TDF drugs were known before Gilead submitted its first TDF drug for approval. It would be an unreasonable inference to conclude that Gilead did not present any information concerning the risks of TDF drugs to the FDA, especially when Plaintiffs allege that Gilead submitted multiple applications for different TDF drugs and that it also "update[d] its Viread labeling at least four times [between 2002 and 2006] to describe the kidney damage patients experienced when taking TDF," *id.* ¶ 217, and again modified its labeling (as to unspecified drugs) in 2007 and twice in 2008, *id.* ¶¶ 224-25. Such changes could not have been made without application to the FDA for approval. *See* [*Wyeth v. Levine*, 555 U.S. 555, 568 (2009)] (noting the general rule that "a manufacturer may only change a drug label after the FDA approves a supplemental application" before explaining that the CBE [("changes being effected")] regulation provides that a manufacturer may make certain changes "upon filing its supplemental application with the FDA"). Without more, the Court cannot conclude that Plaintiffs have plausibly alleged the existence of "newly acquired information" – i.e., "data, analyses, or other information *not previously submitted to the [FDA]*" – such that it could have made post-2008 labeling changes under the CBE regulation. 21 C.F.R. § 341.3(b) (emphasis added). Consequently, Plaintiffs have not plausibly alleged that Gilead could have made, under the CBE regulation or any other federal law allowing changes without prior FDA approval, the post-2008 labeling changes Plaintiffs contend were required to comply with state law. As pleaded, those claims are therefore preempted. The Court will grant leave to amend because it is not clear that amendment could not cure the deficiencies identified in this order.

---

to misrepresent Viread's safety profile."); *id.* ¶ 579 ("Gilead misrepresented the reasons that it shelved TAF in 2004, asserting that TAF could not be differentiated from TDF when it knew that TAF was, in fact, highly differentiated from TDF."); *id.* ¶ 581 ("Gilead misrepresented that it renewed development of TAF because of the needs of an aging HIV population."); *id.* ¶¶ 585, 589-91 (referring to "Gilead's misrepresentations and omissions").

8

*Id.* at 23-24 (emphasis and first, second, and fifth alterations in original).

As discussed below, the FAC has cured the original complaint's deficiencies except as to the period following the FDA's review of the Stribild New Drug Application ("NDA") in July 2012. Plaintiffs allege that "there is no evidence that Gilead submitted to the FDA analyses demonstrating that TDF patients have a high frequency of renal damage or the true extent of the risk nephrotoxicity poses to all TDF patients even if they have normal glomerular function or do not have preexisting risk factors." ECF No. 84 ¶ 572. Likewise, they allege that:

> Gilead did not submit analyses to the FDA establishing the full extent of the frequency or severity of risk that TDF poses to all patients, nor did it tell the FDA that the one marker of kidney function Gilead was warning doctors to monitor in all patients after May 21, 2007 could not adequately detect the type of kidney injury that was frequently occurring in all TDF patients (and, which left unchecked, would cause more severe kidney injury and also harm patients' bones). Gilead could have analyzed the accumulating data demonstrating the higher frequency and severity of the risk to all TDF patients and strengthened its warnings, but did not.

*Id.* ¶ 573. "Although the FDA became aware, after the clinical trials through adverse event reporting, that TDF was injuring patients' kidneys and bones," Plaintiffs allege, "it did not know the true frequency or severity of adverse events, injury or risk associated with TDF." *Id.* ¶ 557; *see also id.* ¶ 571 ("Postmarketing adverse event reports did not put the FDA on notice of the frequency or severity of the risk. Adverse event reports underreport the true incidence of adverse events because they are based on voluntary reporting."). Plaintiffs further allege that "Gilead did not disclose to the FDA that it gave stronger monitoring warnings in the EU for the exact same products nor did it disclose its scientific or medical reasons for doing so." *Id.* ¶ 575. Neither Gilead's moving papers nor its reply engages with any of these allegations. *See* ECF Nos. 92, 109.

Gilead makes much of its pre-2008 labeling, which warned of "New Onset or Worsening Renal Impairment" and recommended "[r]outine monitoring of calculated creatinine clearance and serum phosphorus . . . in patients at risk for renal impairment." *See, e.g.*, ECF No. 93-1 at 6;[4] *see also* ECF No. 84 ¶¶ 379, 495 (alleging label contents). But this does not render Plaintiffs'

---

[4] The Court grants Gilead's unopposed request for judicial notice. ECF No. 93.

allegations implausible. Warning of "new onset" renal impairment does not indicate that the risk extends to individuals without prior risk factors of such impairment, nor does the labeling advise – as Plaintiffs allege should have happened – that all patients' kidney functions should be routinely monitored. It is not disputed that the FDA knew of some kidney- and bone-related risks of Gilead's TDF drugs, but this does not mean that it had the same information as Gilead as to the severity or frequency of those risks.[5] Plaintiffs have plausibly alleged the existence of "newly acquired information" – i.e., information "not previously submitted to the [FDA]" that "reveal[s] risks of a different type or greater severity or frequency than previously included in submissions to the FDA." 21 C.F.R. § 341.3(b). This is sufficient to survive Gilead's motion to dismiss.

However, "Plaintiffs do not dispute Gilead's motion to the extent it seeks dismissal of Plaintiffs' postapproval failure to warn claims for Stribild only." ECF No. 102 at 4 n.2. As discussed below, Plaintiffs have also failed to state a plausible claim as to post-July 2012 claims as to any drug. The FAC alleges that, "[u]ntil the FDA's review of the Stribild NDA in 2012, there is no evidence that the agency reviewed any medical literature regarding TDF or other analyses describing how post-approval renal and bone injury and/or adverse events were occurring at a frequency or severity much greater than that reported in the registrational clinical trials." ECF No. 84 ¶ 574. It elsewhere alleges that, "in connection with its medical review of the Stribild NDA in July 2012," the FDA cited a study that Plaintiffs allege concluded "that 'while traditional risk factors such as hypertension, older age, and diabetes may increase the risk for kidney disease, tenofovir is associated with elevated risk even in patients without preexisting risk factors.'" *Id.* ¶ 565 & n.68. Thus, Plaintiffs have alleged that, as of July 2012, the FDA was aware that the risk for kidney disease extended beyond patients with preexisting risk factors. Indeed, Plaintiffs argue

---

[5] Gilead argues that Plaintiffs have not alleged newly acquired information specifically as to bone-related risks. However, Plaintiffs adequately allege that these risks are related to increased severity or frequency of kidney damage. *E.g.*, ECF No. 84 ¶ 498 ("TDF-induced bone injuries are related to the wasting of minerals through the urine. This is due to dysfunction in the nephron tubule, which prevents reabsorption of minerals from the glomerular filtrate. If physicians knew earlier that their patients' kidneys were dysfunctional, subsequent bone injuries could be avoided."); *id.* ¶ 562 ("[I]f tubular damage persists unnoticed, patients may progress to more severe kidney damage and experience a chronic loss of phosphorus, leading to bone mineral density loss and premature osteoporosis.").

that they "have plausibly alleged that, *at least between August 2008 and July 2012*, the FDA did not know the true extent of the frequency or severity of the risk of TDF," thus implicitly conceding that they have not plausibly alleged such lack of knowledge after July 2012.  ECF No. 102 at 15 (emphasis added).

Although the FAC also cites studies from 2013 and 2014, it does not adequately allege how these studies constitute "newly acquired information" as defined in the regulations.  The 2013 paper is alleged to have found "that nearly 20% of 1200 patients had proteinuria even though they had a normal creatinine-based estimated [glomerular] filtration rate," and that the 2014 paper "found that signs of renal damage were 'highly frequent' even in patients with a normal estimated [glomerular] filtration rate."  ECF No. 84 ¶¶ 567-68.  But the 2012 paper that the FDA allegedly considered when reviewing the Stribild NDA described a "study of 10,841" patients and "found that each year of tenofovir exposure was associated with a 34% increased risk of proteinuria, 11% risk of rapid decline in kidney function, and 33% increased risk of chronic kidney disease."  *Id.* ¶ 565.  The FAC also alleges that the 2012 paper "demonstrated that traditional risk factors did not worsen the effects of tenofovir."  *Id.*  The allegations regarding the 2013 and 2014 studies "provide[] no basis upon which the court could conclude that the . . . events covered by the alleged [papers] presented a different type of risk than those the company had discussed with the FDA, or were more severe or more frequent than . . . events that the government already knew about" as of July 2012.  *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019).  The Court will therefore grant Gilead's motion to dismiss as to post-approval, post-July 2012 claims.

### D. Effect of Dismissal

Plaintiffs do not request leave to amend, and the Court does not grant it.  Plaintiffs do, however, ask that any dismissals "be without prejudice to a motion to amend if warranted by evidence found in discovery."  ECF No. 102 at 21.  Gilead counters that such a ruling would improperly allow Plaintiffs "to forego their pleading obligations in order to skip straight to discovery in search of a viable theory of liability to be pleaded at an unspecified future date."  ECF No. 109 at 8.  The parties' positions both anticipate disputes that are not yet ripe, if they will ever be.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss,"

1  and federal pleading rules "do[] not unlock the doors of discovery for a plaintiff armed with
2  nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.  Thus, Plaintiffs cannot obtain
3  discovery on claims that have been dismissed.  However, Plaintiffs are entitled to discovery on
4  claims that the Court has found to be sufficiently pleaded, and it is not impossible that such
5  discovery might also reveal facts relevant to dismissed claims.  If it does, Plaintiffs may have
6  grounds to seek leave to amend.  *E.g.*, *M.H. v. Cty. of Alameda*, No. 11-2868 CW, 2012 WL
7  5835732, at *3 (N.D. Cal. Nov. 16, 2012) ("Courts routinely allow parties to amend their
8  pleadings after new information comes to light during discovery.").  Whether such a motion would
9  be granted is not before the Court, and the Court does not decide that question in advance.

## CONCLUSION

Gilead's motions to dismiss the first amended complaint are granted in part and denied in part.  The claims of the California Plaintiffs are severed and dismissed.  The Clerk shall terminate the following Plaintiffs from this action: Hector Manuel Bedoya, Herbie Kay Dehorney, Dameco Gates, Duane Lewis, Tony Martin, Bradley McDonald, George Allen Myers, Douglas Leroy Phipps, Wayne Albert Sage, Cynthia Lorraine Spears, Steven J. Spradlin, Scott Wascher, Demetrius Waters, Michael Williams, Treyvon Paul Ryan Willis, and Matthew Yale.  *See* ECF No. 84 ¶¶ 39, 50, 52, 63, 67-68, 82-84, 116, 121, 144, 155, 156, 160, 306 (alleging these Plaintiffs' California citizenship).

The Court also dismisses Plaintiffs' fraud and consumer protection claims to the extent they rely on allegations of affirmative misrepresentations rather than omissions, as well as Plaintiffs' post-approval, post-July 2012 failure-to-warn claims.  Dismissal of these claims is without leave to amend, but without prejudice to any future motion to amend on a showing of good cause.

**IT IS SO ORDERED.**

Dated:  October 16, 2019



_____
JON S. TIGAR
United States District Judge