1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, et al., | Case No. 18-cv-06972-JST  (JSC) |
| Plaintiffs, | |
| v. | **ORDER RE: DISCOVERY DISPUTES** |
| GILEAD SCIENCES, INC., | Re: Dkt. Nos. 194, 221, 224, 232 |
| Defendant. | |

Plaintiffs in this pharmaceutical mass action "have taken one or more of Gilead's drugs containing tenofovir disoproxil fumarate (TDF)" and "have suffered unnecessary kidney and bone damage resulting from Gilead's failure to provide adequate warnings and its decision to develop drugs containing TDF rather than the safer compound tenofovir alafenamide fumarate (TAF)." (Dkt. No. 75.)  The district court has assigned discovery disputes to the undersigned magistrate judge.  Now pending before the Court are four joint letters regarding various discovery disputes. (Dkt. Nos. 194, 221, 224, 232.)  The Court held oral argument on April 23, 2020.

**I.      Gilead Fact Sheets (Dkt. No. 221)**

Plaintiffs and Gilead have agreed to produce "fact sheets."  The parties presently dispute what information Gilead should be required to provide in their fact sheets concerning Gilead's contacts/communications with each plaintiff's physicians. Gilead agrees to provide the requested information to the extent it is available in its G360 database as follows:

> 1) Call Notes—Contemporaneous information inputted by sales representatives and medical scientists concerning their in-person contacts with healthcare providers (HCPs).

> 2) Email Records—Records of emails sent from sales representatives to HCPs using G360.

3) Medical Information Requests ("MIRs")—Requests made by HCPs for scientific information relating for a TDF and/or TAF medication and Gilead's responses thereto.

4) Dear Doctor Letters ("DDLs")—Letters sent by Gilead to HCPs regarding safety updates about TDF and/or TAF medications, and responses thereto.

5) Consulting Relationships—Identification of relationships with HCPs, the dates consulted, and the nature of the relationship.

6) Speaker Presentations—Name and date of event where an HCP spoke for Gilead.

7) Clinical Trial Information—Identification of each clinical trial in which an HCP was a Principal Clinical Investigator.

The database is not complete: it begins in January 2013 and thus does not cover much of the relevant time period in this lawsuit.  For responsive information prior to that date, however, Gilead would have to review unstructured data to compile the information Plaintiffs seek as to each plaintiff's prescribing and treating physicians.  At present there are over 900 plaintiffs in these consolidated actions, each with several physicians. The Court understands that Gilead is not withholding discovery prior to 2013: it has produced promotional material, letter and email templates, and speaker presentation PowerPoints—all of which are evidence of what Gilead was communicating to physicians.  It has not, however, for example searched for particular emails that may have been sent to specific physicians prior to 2013 as it contends there is no centralized way to do so.

The Court declines to order Gilead to do more at this time.  Plaintiffs fail to show that the discovery they seek is proportional to the needs of the case as its relevance, at least at this stage, is minimal.  They contend that requiring Gilead to search non-centralized records for thousands of physicians "aids assessment of any individual claim, especially when Plaintiffs' physicians are likely to be witnesses in this case and all these issues speak to potential bias." (Dkt. No. 221-3 at 2.)  The Court agrees that if a treating/prescribing physician actually gives testimony in this case, Plaintiffs are entitled to know that physician's relationship with Gilead.  But there is no indication at this stage in the litigation that all of the thousands of physicians potentially at issue will give testimony.  The more burdensome searches can wait until the pool of potential witnesses (and bellwether plaintiffs) is narrowed.

1    Plaintiffs' insistence that such information as to each and every treating and prescribing

2    physician is needed now to even begin to select bellwether cases is not persuasive given the nature

3    of the claims at issue in this particular case.  There is no allegation that Gilead paid or otherwise

4    improperly induced physicians to use TDF drugs rather than TAF drugs—the allegation is that

5    Gilead delayed development of the TAF drugs.  And, as described by the district court, the failure

6    to warn claims are premised on Gilead providing only the weakest, inadequate warnings to doctors

7    and patients about "the need for frequent monitoring of all patients for TDF-associated kidney and

8    bone damage –preventing doctors from detecting early signs of TDF toxicity." (Dkt. No. 75 at 2-

9    3.)  In their joint letter brief Plaintiffs contend that they allege that there were alternative drugs

10   available and thus they need to know whether Gilead incentivized physicians to prescribe Gilead's

11   TDF drugs over other drugs. But they make this contention without citation to their pleadings, and

12   it does not appear in the district court's description of their claims.  In any event, as a start

13   Plaintiffs will get the information available from January 2013 forward.

14   Given the minimal showing as to relevance, the Court declines to order Gilead to

15   "recommission" its Tango database which it used for call records prior to 2013.  Gilead represents

16   it would cost over $100,000 to restore the database and make it searchable.  At oral argument the

17   Court asked Plaintiffs if they would be willing to bear that cost, and they demurred.

18   The Court agrees with Plaintiffs, however, that Gilead should search for Plaintiffs

19   prescribing physicians and a certain number of treating physicians.  Plaintiffs say up to four

20   additional treating physicians and Gilead says none.  Since the search is limited to the central

21   database, Gilead has not explained how searching for additional names is overly burdensome.  If

22   Gilead had relationships/communications with these physicians, and that information is in the

23   central database, then the information should be disclosed.

24   However, the Court declines to order Gilead to disclose the prescribing practices of

25   each and every plaintiff's prescribing physician. Plaintiffs contend that monitoring "the

26   prescribing practices of Plaintiffs' physicians as it relates to antiretroviral medications" is

27   needed for Plaintiffs "to understand whether their own physicians were targeted based on

28

United States District Court
Northern District of California

1    this analysis." But Plaintiffs do not explain how such evidence would tend to prove their

2    design defect or failure to warn claims.

3         As for renumeration to Plaintiff's treating physicians, it is unclear if Gilead is

4    refusing to produce information that it has in a structured database or only that which is not

5    centralized. Even if from 2013 forward such information is available on a government

6    website, Gilead should produce the information it has in its own possession, custody and

7    control. Given that it provides the information to the government, the Court assumes that it

8    can access it back to a certain date from a structured data source.

9         There are other issues that appear in one party's part of the statement, but not the other

10   party's. For example, Gilead's portion of the joint letter brief addresses TDF/TAF Medications

11   (Dkt. No. 221-4 at 9-10), but the Court cannot discern where that issue is addressed in Plaintiffs'

12   portion. This presentation is not helpful. Going forward the parties shall structure their statements

13   so that they address the same issues in a coherent format. The moving party should provide their

14   portion of the statement to the resisting party, the resisting party then responds, then the moving

15   party can add a reply (within the page limits) to come after the resisting party's response in the

16   letter.

17        The parties' joint motion to file portions of the letter brief and exhibits thereto under seal

18   because they reference and/or describe Gilead's highly confidential and proprietary brand plans

19   and information data systems is GRANTED. (Dkt. Nos. 221, 228.) However, to the extent that

20   the parties file future administrative motions to seal, they must comply with Civil Local Rule 79-

21   5(d)(1)(D)'s requirement that "[t]he unredacted version must indicate, by highlighting or other

22   clear method, the portions of the document that have been omitted from the redacted version" and

23   they shall ensure that there is no redacted text in the unredacted version of the submission.

24        **II.    ESI Protocol (Dkt. No. 232)**

25             The parties have agreed to use the ESI Protocol adopted for the California state

26   court cases, except that Plaintiffs in these federal cases want an adjustment in the type of

27   metadata they (but not Gilead) have to produce. Plaintiffs' ESI is potentially relevant to

28   statute of limitations and damages. The Court is unable to understand the parties' arguments

United States District Court
Northern District of California

4

in the letter brief without concrete examples.  Accordingly, Gilead is ordered to identify one plaintiff for whom Plaintiffs shall produce the required ESI in Plaintiffs' preferred format.  The parties shall then meet and confer as to why what is produced is or is not sufficient.  While the meet and confer cannot occur in person, it must at least take place by video (as must all meet and confers before an issue is brought to the Court's attention).  It may be for some particular plaintiffs what Plaintiffs propose to produce is sufficient; for others it may not be.  A rational approach might be for the parties to agree that for those initial productions in which, upon review, Gilead believes it needs more fulsome metadata, Plaintiffs would retain a vendor to retrieve that data for that particular plaintiff upon a particular showing. This approach avoids unnecessary costs for those plaintiffs who do not have many responsive documents or whose produced metadata already tells Gilead everything it reasonably needs to know. It is essentially the same approach that Gilead has advocated with respect to some of its own productions.

Nonetheless, if the parties cannot reach an agreement, then any further dispute on the ESI Protocol shall be submitted to the Court for resolution by May 29, 2020.  Any such submission shall include as exhibits examples of the format as actually produced for a particular plaintiff and examples of what Gilead contends it needs.

### III.    Requests for Production (Dkt. No. 224)

Gilead shall produce responsive documents for the three additional Gilead scientists for the period October 2004 through January 1, 2009.  It has already agreed to produce documents from these custodians pre-October 2006 and has not persuasively articulated why including the search through 2009 would be unduly burdensome. To the extent Plaintiffs' proposed search terms result in too many unresponsive documents, then Gilead shall meet and confer with Plaintiffs to hone the search terms for these custodians to target potentially responsive documents.

Gilead shall search for responsive documents regarding its TAF decision-making through January 2016, when Gilead sought approval to market Vemlidy.  Gilead's position that there will not be any relevant documents can again be tested through honing the search terms during that period.  The parties are expected to work collaboratively to mitigate the gathering of

United States District Court
Northern District of California

1   unresponsive documents.  If the initial searches uncover troves of non-responsive documents, then

2   Plaintiffs must work with Gilead to narrow the terms.

3   Gilead shall search Apollo for the relevant documents through October 2019 (rather than

4   its proposed 2015 cut-off), but only in relation to those drugs that were approved after 2015. For

5   example, as Genvoya was approved in 2015, there is no good reason to require Gilead to search

6   for documents related to the development of Genvoya after that date.  But since Descovy was not

7   approved until December 2019, Gilead should search Apollo for documents related to the

8   development of Descovy up to that date.  Accordingly, the search terms will be narrowed for the

9   period after 2015.

10   **IV.    Board of Director Documents (Dkt. No. 194)**

11   Gilead agrees to produce responsive Board of Directors documents through December 31,

12   2016 provided that it may redact irrelevant information given the commercially sensitive nature of

13   matters discussed at Board meetings.  The Court agrees.  Plaintiffs' concern that Gilead will redact

14   prejudicial relevant information is not well-taken; if counsel was going to violate their ethical

15   obligations they would just withhold the document all together rather than produce it in redacted

16   form.  On other hand, the default in discovery is disclosure without redaction.  The Court expects

17   that if information is not commercially or scientifically sensitive it should not be

18   redacted.  Finally, to the extent Plaintiffs cannot understand a document because of redactions,

19   they should confer with Gilead.  That is a matter that the parties should easily and informally

20   resolve.

21   Although it is not clear from the letter if there is a dispute as to what Gilead is

22   producing through December 31, 2016, the Court is not ordering production of documents

23   relevant to drugs not at issue in this litigation or discovery on the active ingredients

24   contained in TAF or TDF drugs unrelated to the drugs at issue.  Viread is a drug at issue in

25   this litigation, even if it is being discussed in connection with Hepatitis B.

26   As for the post-December 31, 2016 documents, Gilead shall produce Board of

27   Directors documents, if any, related to the development of a TAF PrEP drug through

28   October 2019—the date the FDA approved Descovy for PrEP.  Gilead has not articulated

6

any burden with respect to searching Board documents on this limited topic.  The Court is

not persuaded, however, that Board of Directors documents are the proper place to search for

documents reflecting Gilead's efforts to convince physicians of the safety benefits of TAF

drugs over TDF documents.  The relevant discovery is what Gilead told physicians;

discovery that is being produced.

Plaintiffs' request for Gilead to search compensation committee minutes is denied.

This Order resolves Docket Nos. 194, 221, 224, 232, 238.

**IT IS SO ORDERED.**

Dated: May 1, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California