UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, et al.,<br><br>    *Plaintiffs*,<br><br>vs.<br><br>GILEAD SCIENCES, INC.,<br><br>    *Defendant*. | Case No. 4:18-cv-06972-JST (and consolidated cases) |

DECLARATION OF JULIAN ACKERT

**Background and Professional Qualifications**

1. I am a Managing Director at iDiscovery Solutions, Inc. ("iDS"), an expert services and consulting firm that provides independent computer forensics, electronic discovery expert testimony and analysis, original authoritative studies, and strategic consulting services to the business and legal community.

2. I have over 20 years of experience in consulting and litigation technologies that focus on electronic discovery and computer forensics. I have a Bachelor of Science degree in Computer Science from the University of Virginia. My curriculum vitae is attached here to as Exhibit A, which details my professional experience and all articles and testimony I have completed over the last ten years.

3. Specifically, I have extensive experience creating and implementing preservation, collection, and production strategies and performing computer forensics and metadata analysis on electronically stored information ("ESI"). I have performed preservation, collection, analysis, and production of ESI in dozens of matters and have reviewed, consulted around, and implemented hundreds of ESI orders.

4. This declaration is based on my knowledge, years of experience, training, education, and the information provided to date. The opinions provided herein are given to a reasonable degree of professional certainty.

5. My forensic analysis and testimony rate is $525/hour and iDS is also being reimbursed for reasonable expenses and the cost of other employees working under my supervision. My opinions are not contingent on fees earned by iDS in this matter.

6. When I state 'I,' 'Myself,' or 'iDS' I mean this work was done by me, or by people working at my direction and supervision within iDS.

7. iDS has been retained by Defendant's counsel in this matter to provide expert fact and opinion testimony regarding various aspects of disputed eDiscovery issues.

**Summary of Opinions**

8. For each set of custodian-centric data sources, there are costs and timeframes associated with the review and production of responsive documents. These costs and timeframes can be attributed to the ESI review and production workflow steps of identification and collection, processing, deduplication and search of documents, first and second-level review tasks, production tasks, and perpetual document hosting fees. This declaration focuses on the costs and timeframes for first and second-level review tasks, which constitute the bulk of the costs and time associated with custodian-centric ESI data source review and production workflows.

9. Using generally accepted ESI metrics, cost and timeframe estimates for the review and production of custodian-centric data sources can be calculated. As defined further below, based on a preliminary set of six Gilead custodians, the costs to review and produce custodian-centric data sources is estimated to be $140,000 per custodian and

will consume approximately 2,000 human-hours per custodian. In light of the current global pandemic issues, the actual costs may be higher and the actual timeframes may be longer as both corporations such as Gilead and eDiscovery vendors are adjusting their workflows and implementing new technology to account for many of the uncertainties related to COVID-19, such as employee work from home requirements.

10. While some adjustments can be made to increase review and production capacity and meet discovery deadlines, such as addition of resources to the document review team, these adjustments need to be applied at the right time. The appropriate way to make these adjustments would be to plan at the onset of the ESI review and production workflow by considering the totality of steps involved, based on the number of custodians in scope, at the beginning of the workflow. While these workflows are generally dynamic enough to handle the addition of a few custodians midway with minimal effect on discovery deadlines, adding larger groups of custodians midway through the workflow needs to consider issues including, but not limited to, the amount of data that can be concurrently collected from custodial data sources, such as from Enterprise Vault system, access to and recall from hard copy document archives, the throughput of processing system software, and the time needed to complete redactions and privilege logging. Because of these issues, adding larger groups of custodians midway through the ESI review and production workflow can cause workflow disruptions and may potentially require discovery deadline extensions as the newly added group of custodians need to follow their own ESI review and production workflow.

**ESI Review and Production Workflow**

11. The ESI review and production workflow is designed to act as a funnel, with collection of data sources at the wider, top-end of the funnel and production of responsive documents at the narrower, bottom-end of the funnel. Each step in the ESI review and production workflow is designed to reduce the volume of documents encountered from the prior step.

12. One of the first steps in the ESI review and production workflow is the identification and collection of custodian-centric ESI data sources. Corporate custodian-centric potentially relevant data sources often include, but are not limited to, personal computers such as desktops and laptops, corporate email accounts, hard copy documents, and personal network storage locations.

13. Post collection of ESI, both text and metadata are extracted and, often times, a deduplication protocol is applied to the ESI (collectively and commonly referred to as "Processing"). In matters of this magnitude, Processing is performed prior to document review and is critical to ensure that documents can be effectively searched and/or filtered for review and that the productions of documents are compliant with ESI protocols in litigation. As an example, email, which is often collected in Microsoft Outlook PST file format, is Processed post-collection into separated emails and attachments, with extracted text and metadata, for review and production.

14. Once Processed, often times a technology search methodology is implemented to identify documents related to the claims and defenses of the case. Assuming global deduplication is applied across all custodian-centric data sets and that the technology search methodology is designed appropriately, a 70% to 90% volume reduction is a

generally accepted ESI metric for the bottom-end of the processing funnel. It is my understanding that, for the first six custodians, post Processing and application of search terms, there are approximately 800,000 documents in scope for review and potential production, or approximately 133,000 documents per custodian. Using generally accepted ESI metrics of 5,000 documents per GB and 50,000 pages per GB, this translates to approximately 1.3 million pages per custodian.

15. The first step in the evaluation of custodian-centric data sets for responsiveness and potential production is a first-level review on the search term responsive documents. To perform cost effective first-level review, contract review attorneys are often leveraged to control the hourly rates associated with first-level review. Leveraging contract review attorneys, a generally accepted ESI metric to calculate the per document first-level review cost is $1.00 per document and a generally accepted ESI review rate is 50 to 60 documents per hour.

16. To maximize first-level review efficiency, culling technologies can be applied to the document set including, but not limited to, email thread suppression and textual near duplicate identification. In my experience, these culling technologies can reduce the document set for review by approximately 20% to 40%, resulting in approximately 80,000 to 106,000 documents per custodian. Additional technology assisted review workflow processes can also be applied to categorize and organize document sets for review based on a textual comparison of the words in each document. However, the application of these processes is not uniformly applied to all documents in scope for review and potential production. As an example, product liability litigations such as this one often involve highly technical documents and/or documents with little amounts of

underlying text, such as hard copy documents and spreadsheets that have more numbers than words.  As such, my per custodian first-level review cost and timeframe estimates are calculated conservatively – 80,000 documents per custodian at 60 documents per hour, translating to approximately $80,000 in first-level review costs and approximately 1,333 human-hours in first-level review time.  Working 8 hour days, five days a week, it would take a relatively large team of 20 document reviewers approximately 1.5 weeks to complete the first-level review for each custodian.

17. In my experience, the number of documents in consideration for production from a custodian-centric data set that is evaluated for the claims and defenses in a case of this magnitude can range somewhere between 10% to 25% of the data set.  Assuming that the number of documents in consideration for production is 25% of the first-level review document population, or 20,000 documents per custodian, a second-level review, which would include tasks such as confirmation of responsiveness, review for privilege, redaction of privileged material, redaction of protected health information, and privilege logging, would then be implemented on these documents.  In my experience, efforts associated with responsiveness confirmation, privilege review, redaction, and logging can range from $3.00 per document to $4.00 per document at a generally accepted ESI second-level review rate of 20 to 30 documents per hour per reviewer.

18. To maximize second-level review efficiency, workflows can be applied to second-level review document sets, including but not limited to responsiveness confirmation sampling.  However, second-level review efficiency can be affected by the complexity of the document set, potentially requiring specialized second-level reviewer skills, as well as the number of redactions that need to be applied.  As such, my per custodian estimates

for second-level review are calculated conservatively – 20,000 documents per custodian, at a cost of $3.00 per document and a rate of 30 documents per hour, translating to approximately $60,000 in second-level review costs and approximately 667 human-hours in second-level review time. As I described above, second-level reviewers have more specialized skills. As such, the size of the second-level review teams are often smaller than the size of the first-level review teams. Working 8 hour days, five days a week, it would take a relatively large second-level review team of 10 document reviewers approximately 1.5 weeks to complete second-level review for each custodian.

19. When applying appropriate review efficiencies, such as responsiveness confirmation sampling, and document culling technologies, such as email thread suppression and textual near duplicate identification, first-level review and second-level review efforts are estimated to cost approximately $140,000 and consume approximately 2,000 human-hours per custodian. Working 8 hour days, five days a week, it would take a team of 20 first-level document reviewers and 10 second-level document reviewers approximately 3 weeks to complete the review for each custodian.

20. If review efficiencies and document culling technologies are not applied, first-level review and second-level review efforts are estimated to cost approximately $250,000 and consume approximately 3,750 human-hours per custodian. Working 8 hour days, five days a week, it would take a team of 20 first-level document reviewers and 10 second-level document reviewers approximately 6 weeks to complete the review for each custodian.

21. I understand that Gilead has proposed a presumptive cap of 35 custodians, and that plaintiffs may request an additional 10 custodians subject to Gilead's ability to show a

lack of good cause with respect to any particular custodian. Applying review efficiencies and document culling technologies, first-level review and second-level review efforts for 35 custodians are estimated to cost approximately $5 million and approximately 70,000 human-hours to complete. Applying review efficiencies and document culling technologies, first-level review and second-level review efforts for 45 custodians are estimated to cost approximately $6.3 million and approximately 90,000 human-hours to complete.

**Conclusions**

22. Based on both generally accepted ESI metrics and the volume of documents for certain custodians in this case, the cost and effort associated with the review and production of custodian-centric ESI data sources is approximately $140,000 per custodian and will take approximately 2,000 human hours per custodian to complete. The actual costs and timeframes may be higher due to some of the uncertainties related to the global COVID-19 pandemic.

23. ESI review and production workflows are typically dynamic enough to handle small changes, such as the addition of a few custodians and fluctuations in document volumes across custodians. Adding a large group of new custodians midway through an existing workflow is equivalent to starting a new ESI review and production workflow for the new custodians at the time the custodians are added.

24. I reserve the right to supplement or amend the opinions expressed herein based on additional information that is provided to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of May 2020.

_____
Julian Ackert