March 30, 2021

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E—15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Holley, et. al. v. Gilead Sciences, Inc.*, No. 4:18-cv-06972-JST
      Joint Letter Brief re: Attorney-Client Privilege Redactions
      **[Redacted Version of Document Sought To Be Sealed]**

Dear Judge Corley:

Pursuant to this Court's civil standing order, Plaintiffs and Defendant Gilead Sciences, Inc. ("Gilead") respectfully submit this letter brief regarding Gilead's redactions based on the attorney-client privilege. Should the Court require a telephonic conference to discuss the matter, the parties will gladly work with the Court to schedule one. Plaintiffs' position begins on page 1: Gilead's position begins on page 8; and Plaintiffs' reply begins on page 18.

Pursuant to the parties' stipulation (ECF Nos. 592, 593), Gilead will separately submit the documents with the disputed redactions for an *in camera* review. Gilead will submit those documents in a single PDF which, for ease of navigation, will have bookmarks that will quickly take you to the disputed redactions.

Respectfully Submitted,

**HAGENS BERMAN SOBOL**
  **SHAPIRO LLP**

 */s/ Steve W. Berman*
Steve W. Berman

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
Anne F. Johnson (admitted *pro hac vice*)
annej@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292

Christopher R. Pitoun

**SHOOK, HARDY & BACON LLP**

 */s/ Christopher V. Cotton*
Christopher V. Cotton

Christopher V. Cotton (admitted *pro hac vice*)
ccotton@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Tel: (816) 474-6550

Patrick L. Oot (admitted *pro hac vice*)
oot@shb.com

christopherp@hbsslaw.com
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7148

Robert C. Hilliard (admitted *pro hac vice*)
bobh@hmglawfirm.com
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Boulevard
Corpus Christi, TX 78401
Tel: (361) 882-1612

*Attorneys for Plaintiffs*

SHOOK, HARDY & BACON L.L.P.
1800 K Street NW, Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5645

Debra E. Pole (Bar No. 97816)
dpole@sidley.com
Joshua Anderson (Bar No. 211320)
janderson@sidley.com
Sean A. Commons (Bar No. 217603)
scommons@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6000

*Attorneys for Defendant Gilead Sciences, Inc.*

## PLAINTIFFS' POSITION

Plaintiffs allege that Gilead delayed development of safer TAF (a/k/a GS-7340) to avoid a devastating loss of revenue upon generic TDF entry. *See* ECF No. 84 at ¶¶ 10, 18, 332, 424-32, 606. Gilead has improperly redacted non-privileged financial and development documents which were created primarily for business purposes, including deciding when it suited Gilead's financial interests to develop TAF. Gilead argues that the redactions cover legal advice regarding "patent considerations." This vague and overbroad position is contrary to overwhelming authority which holds that discussion of patents in relation to their business or competitive impact is not privileged. Plaintiffs respectfully move for an order requiring Gilead to produce the disputed documents in unredacted form and remove additional redactions that are inconsistent with the Court's rulings.

### A.   Background

On December 23, 2020, Gilead clawed back seven documents, asserting that they contain material protected by the attorney-client privilege. *See* Ex. 1. On December 29, 2020, pursuant to Paragraph 11 of the Stipulated Protective Order (ECF No. 68), Plaintiffs objected. On January 5, 2021, Plaintiffs identified additional documents that contain improper privilege redactions. *See* Ex. 2. On January 22, 2021, Gilead agreed to remove redactions in four documents but refused to remove redactions in the remainder of the challenged and clawback documents. *See* Ex. 3. On January 25, 2021, the parties met and conferred by telephone but did not agree. On February 2, 2021, Gilead clawed back five additional documents. *See* Ex. 4. On February 5, 2021, Plaintiffs objected to Gilead's clawback and stated that since the parties had already discussed the issues implicated by the February clawback in their prior communications, the parties should raise all of their existing privilege disputes in the same dispute letter. *See* Ex. 5.  Plaintiffs have listed the documents in dispute, including the pages where the redactions occur, in the attached Exhibit 6.

### B.   Legal standard

Under Federal Rule of Evidence 501, the privilege law applicable in diversity cases will depend on the substantive law that applies to the claims and defenses. Fed. R. Evid. 501. In this consolidated action, Plaintiffs assert state law claims and Gilead asserts federal defenses. *See* ECF No. 84 ¶¶ 592-850; ECF No. 142, Affirmative Defenses ¶¶ 5-10. In similar cases, federal courts have analyzed the applicability of the attorney-client privilege using federal law (*see In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 795 (E.D. La. 2007)), or held that the privilege law favoring admission shall govern in the event of a conflict (*see In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 1375011, at *8 (S.D. Ill. Apr. 12, 2011)). *See also* Fed. R. Evid. 501, Advisory Committee Notes S.R. No. 93-1277 (if the rule results in conflicting privilege law, "the rule favoring reception of the evidence should be applied").

 "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). As the party opposing production, Gilead must show that each of essential elements of the attorney-client privilege is satisfied. *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). At a minimum, Gilead must provide basic information about the privileged documents such as the attorney involved, the nature of the document, all persons or entities who received, sent, or helped prepare the document, and the date it was generated. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). A vague

declaration that states only that the document reflects attorney advice is insufficient. *See Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) (quotation marks and citation omitted).

## C.     The attorney-client privilege does not protect business advice.

The attorney-client privilege "does not protect business communications and advice." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at *2 (N.D. Cal. Oct. 10, 2013). For "dual purpose" documents, which serve both legal and business purposes, the privilege applies where the "primary or predominant purpose" of the communication is to seek legal advice. *Id.*; *see also Costco Wholesale Corp. v. Superior Court*, 219 P.3d 736, 743 (2009) ("the privilege is not applicable when the attorney . . . is providing business advice; in that case, the relationship between the parties to the communication is not one of attorney-client") (internal citation omitted). "Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel." *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).

Courts frequently rule that patent-related documents are not privileged because they concern predominantly business advice. *See, e.g.*, *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2016 WL 6921123, at *2-4 (C.D. Cal. Mar. 23, 2016) (attorneys' patent assessment was not privileged because the analysis was undertaken to make decisions about the company's patent portfolio); *LightGuard Sys. v. Spot Devices, Inc.*, 281 F.R.D. 593, 604-05 (D. Nev. 2012) (statements about patents contained in documents presented to company's board of directors were not privileged because they were not communications seeking legal advice); *MediaTek*, 2013 WL 5594474, at *4 (report requested by counsel was not privileged because it was prepared to assist company decide whether to purchase patents); *3M Innovative Props. Co. v. Tredegar Corp.*, 2011 WL 13135771, at *6 (D. Minn. Nov. 7, 2011) (memorandum prepared by in-house counsel was not privileged because it concerned patent-related business decisions).

Pharmaceutical companies in particular often discuss intellectual property in terms of its business or competitive impact; such discussion is not privileged. *See, e.g.*, *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2995677, at *1-4 (D. Del. June 14, 2018) (presentation titled "Humira IP [Intellectual Property] Discussion" was not privileged to the extent it discussed business strategy for enhancing the value of and competitive advantages conferred by patents); *Idenix Pharms., Inc. v. Gilead Sciences, Inc.*, 195 F. Supp. 3d 639, 644-45 (D. Del. 2016) (document "regarding marketing and business development and patent issues regarding nucleosides for the treatment of HCV" was not privileged); *FTC v. AbbVie, Inc.*, 2015 WL 8623076, at *11, *13 (E.D. Pa. Dec. 14, 2015) (documents reflecting counsel's input regarding likely market entry dates for competitors and periods of patent exclusivity were not privileged because the analyses constituted business, not legal, advice). *Cf. In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2018 WL 5281604, at *1-2 (D. Kan. Oct. 24, 2018) (pharmaceutical company's "predominantly business/marketing materials" were not privileged because they "either do not seek or do not include legal advice, or they include legal advice that is merely incidental to business planning").

**D.      The attorney-client privilege does not apply.**

**1.      The redactions appear in Gilead's core development documents.**

Gilead's Development Committee or Development Project Review ("DPR") Committee (depending on the time period) was responsible for product development decisions. *See* Ex. 7, 12/17/19 Hitchcock Tr. at 35:22-25; *id*. at 133:19-24. Those committees included representatives from the manufacturing, commercial, toxicology, regulatory, and pharmacokinetics areas of the company. *See id*. at 134:1-20. Gilead used Project Teams, composed of businesspeople specializing in chemistry, biology, pharmacokinetics, toxicology, clinical, regulatory, and commercial, to propose how Gilead should develop a compound and get it into the commercial market. *See id*. at 44:7-25. Documents associated with the Development Committee, DPR Committee, Project Teams, Development Plans, and Requests for Development are among the "principal types of documents typically generated" in connection with "research and development and preclinical and clinical studies with respect to the TDF and TAF medications." *See* Ex. 8, 12/17/19 Hitchcock Ex. 2. The disputed redactions appear in Development Plans, DPR memos, Project Team minutes, and other development or commercial documents presented to corporate decision-makers to help Gilead make business decisions about product development. Gilead's discussion of patent protection or the impact of patent exclusivity on its business or competitors in these core development documents reflects non-privileged facts or business strategy.

**2.      Patent expiration dates and periods of exclusivity used in financial analyses for making development decisions are not privileged.**

Plaintiffs allege that Gilead delayed development of safer TAF to extend the lifecycle of its HIV franchise. *See* ECF No. 84 at ¶¶ 10, 18, 332, 424-32, 606. By delaying development, Gilead could first reap billions in sales from TDF and then convince doctors to switch their patients to TAF, which would have years of patent protection and regulatory exclusivity beyond TDF. *Id*. at ¶¶ 10, 330, 424, 428. But Gilead knew "timing was key"; it had to get TAF "on the market sufficiently in advance of TDF patent expiration" if it was going to switch enough prescriptions to "save a substantial percentage of sales from going generic." *Id*. at ¶ 425. Thus, when Gilead's exclusivity for TDF and TAF would expire were critical aspects of Gilead's business strategy.

Yet under the guise of legal privilege, Gilead seeks to prevent the jury from seeing the dates it associated with generic TDF competition and TAF market exclusivity—the very dates that formed the basis of Gilead's financial analyses and drove its TAF development decision-making. But the mere fact that a business employee may have consulted with in-house counsel to obtain those dates does not make them privileged. *AbbVie* rejected a pharmaceutical company's similar privilege claims over documents concerning the "likely market entry date for generic competitors and the expected duration of patent exclusivity" because, like here, the analysis was done for business purposes. *AbbVie*, 2015 WL 8623076, at *11. "***Even though in-house counsel may have been consulted to help determine the market entry date for those competitors, this does not mean that any document using that date must be privileged***." *Id*. (emphasis added). The court explained that "strategies to extend a product's lifecycle … are commercial, not legal, in nature." *Id*. at *13. Thus, even if counsel provides input regarding exclusivity periods, "the length of a patent's exclusivity or plans for launching a product are not privileged simply because they are determined by referencing a statute or regulation." *Id*. (citing *In re Avandia Mktg., Sales Practices & Prods.*

*Liab.*, 2009 WL 4807253, at *6 (E.D. Pa. Oct. 2, 2009)). Where patent expiration dates and periods of exclusivity are "discussed only to the extent that they have business implications" they are not privileged. *AbbVie*, 2015 WL 8623076, at *11.

### 3.     Gilead has failed to meet its burden regarding the challenged redactions.

#### a.     Virsik's financial analysis regarding delaying TAF development

In April 2003, Gilead's head of research and development, Norbert Bischofberger, tasked Gilead's Corporate Development department with calculating the value of using TAF as a "patent extension" strategy. *See* Ex. 9, GILTDF106400200094 at 95; Ex. 10, GILTDF111001201107. That financial analysis, conducted by non-attorney Peter Virsik, resulted in the September 2003 memo "Financial Analysis of GS7340 as a Tenofovir Exclusivity Extension,"[1] as well as April 2003 emails containing earlier versions of Virsik's analysis.[2] Virsik based his financial analysis on a number of "key assumptions," including the duration of market exclusivity for TDF and TAF, and that Gilead would delay the launch of TAF until 2015—so Gilead could switch patients from TDF to TAF before the launch of generic TDF upon TDF patent expiry. *See* GILTDF106600206581 at 582-83; *see also* GILTDF111601879276 at 278 ("General Assumptions" of "NPV Analysis of GS-7340 as a Patent Extension to Viread" included patent expiration dates for TDF and TAF). Virsik calculated that the value of delaying safer TAF could be ▮▮▮▮▮▮▮▮▮▮. *See* GILTDF106600206581 at 588. This financial analysis was prepared for and sent to Gilead's Development Committee, to inform Gilead's decision regarding whether and when to develop TAF. *See id.* at 581; Ex. 9 at 95 ("if the patent extension proves worthwhile, development of GS-7340 might resume").

Gilead has redacted the dates associated with TDF and TAF patent expiration, but this information is not privileged. Virsik conducted his financial analysis at the request of a senior business executive and presented his analysis to the Development Committee so Gilead executives could make business decisions about TAF development. Thus, even if the exclusivity information was provided by in-house counsel, it constitutes non-privileged business, not legal, advice. *See supra* at 2-3 (discussing, *inter alia*, *AbbVie*, 2015 WL 8623076, at *11-13); *see also In re Avandia*, 2009 WL 4807253, at *3 (where the party alleges that an internal document was drafted by non-attorneys and incorporates attorney comments, "[t]his is an insufficient basis to deem the document protected by the attorney-client privilege"). Gilead's in-house counsel was not "acting as a lawyer" because he was not "giving advice with respect to the legal implications of a proposed course of conduct." *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d at 798 (quoting *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977)). To the contrary, the attorney was providing information with respect to the financial implications of delaying TAF development.

---

[1] *See* Ex. 6, line 1. Gilead clawed back these documents on December 23, 2020.

[2] *See* Ex. 6, lines 2-3. Gilead clawed back these documents on February 2, 2021. Gilead also clawed back a March 11, 2004 email from Virsik that contains and attaches patent expiration information. *See* Ex. 6, line 4. That document, which circulated patent expiration information for use by Gilead's Corporate Development department, is not privileged for the reasons discussed herein.

Finally, even if this information was privileged, the privilege is waived. In August 2020, Gilead produced unredacted copies of the September 2003 Virsik memo. On September 25, 2020, Plaintiffs cited that memo and attached it as an exhibit to their Opposition to Gilead's Motion to Admonish Hilliard Martinez and Gonzales LLP, quoting exclusivity information Gilead now claims is privileged. *See* Ex. 11, at 5 ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Regrettably, Plaintiffs initially did not file its brief or the Virsik memo under seal, a mistake that prompted Gilead to file a second motion for sanctions. *See* ECF Nos. 412, 446. Despite arguing that the filing error warranted sanctions, Gilead never argued that Plaintiffs had disclosed Gilead's privileged information. *See id.* Gilead did not clawback the Virsik memo until December 23, 2020—nearly three months after Plaintiffs cited and filed the unredacted memo. Ex. 1. Because Gilead did not promptly take reasonable steps to assert its privilege after Plaintiffs cited and relied on the purportedly privileged material, the privilege is waived. *See AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019) (collecting cases).

### b.   Other development and business documents

#### (1) April 2004 GS-7340 Project Team Meeting Minutes, GS-7340-02 Development Plan Presentations, and September 16, 2004 GS-7340 Development Plan Update Documents[3]

Project Team and Development Plan documents are among the key types of documents Gilead uses in its development decision-making process. *See supra* at 3. For example, this Development Plan Update was created by the GS-7340 Project Team for the September 23, 2004 Development Committee meeting, during which Gilead's business executives discussed whether to stop or continue developing TAF. *See* GILTDF106400200424; Ex. 12, GILTDF106600206626 at 27. Gilead has redacted text under the heading "Intellectual Property," asserting that it contains legal advice from in-house counsel regarding intellectual property "considerations." Ex. 3 at 6. However, any patent considerations discussed in these documents concern Gilead's pursuit of patent protection for business purposes and the impact of Gilead's patent position on its competitors. And, of course, information about the competitive impact of its patents was included so Gilead could make a business decision. That this information appears under the heading "Intellectual Property" does not transform business into legal strategy. *See AbbVie*, 2018 WL 2995677, at *1-4 ("Humira IP" presentation contained non-privileged business advice); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 2011 WL 3268091, at *4 (N.D. Cal. Jul. 28, 2011) (labeling a document privileged is "insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services").[4]

---

[3] *See* Ex. 6, lines 5-8.

[4] This analysis also applies to the documents listed on Ex. 6, lines 9-13, which are documents prepared by non-lawyers for the DPR Committee to help Gilead make development decisions, including whether to move TAF into phase 3 clinical trials.

### *(2) May 5, 2010 GS-7340 Commercial Assessment[5]*

The objective of this document was to "[a]ssess commercial potential for GS-7340" and "[p]rovide commercial rationale for go/no-go decision" on submitting an Investigational New Drug (IND) application to the FDA to enable the further development of TAF. *See* GILTDF105400103085 at 086. Despite the clear business purpose of this document, Gilead has redacted one entire slide on the basis of the attorney-client privilege. *See id.* at 090. Gilead argues that the redacted slide communicates legal advice from Gilead's in-house and outside counsel regarding "patent considerations" for TAF, yet Gilead has failed to identify the specific lawyers who purportedly offered advice contained in the slide. *See* Ex. 3 at 5-6. This lack of specificity dooms Gilead's privilege claim. *See Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 2011 WL 1158781, at *3 (N.D. Cal. Mar. 29, 2011) (requiring withholding party to produce unredacted documents for failing to identify the attorney involved in the communication). Moreover, the email transmitting the presentation to non-lawyers indicates that the slide deck was drafted by non-lawyer Jeff Ho, Associate Director of Gilead's Commercial Strategy department. *See* Ex. 13, GILTDF105400103071. This is a business document drafted by business employees for business employees. Any legal advice included is merely incidental to Gilead's business strategy.

### *(3) GS-7340 Development Plan Considerations Memo[6]*

Members of the GS-7340 Project Team (non-lawyers) prepared this document for the Development Project Review Committee, who were charged with making development decisions regarding TAF. Gilead maintains that the redacted text concerns legal advice from in-house counsel. However, another version of this document indicates that it was non-attorney Christopher Lee who drafted the redacted section. *See* Ex. 14, GILTDF111001497351-2 (Mr. Lee attaching the document he refers to as "my first draft of the GS-7340 mini dev plan"). That Mr. Lee needed to "follow up with IP" regarding the redacted part of the memo undermines Gilead's argument that the content originated with counsel, as opposed to the author, Mr. Lee. And even if the redacted text did include advice from in-house counsel, it was predominantly business, not legal, advice.

### *(4) Development Plan Project: GS-7340[7] & 2010 Portfolio Review[8]*

In many of these Development Plan documents, the commercial nature of Gilead's intellectual property discussion is made explicit, as the redacted text appears under Gilead's "Commercial Assessment" of TAF. *See* GILTDF105300083378 at 383; GILTDF105400102876 at 881; GILTDF105400103099 at 104; GILTDF105400103137 at 142. Gilead also redacted patent expiration information, even though it was a critical factor supporting Gilead's assessment of the commercial opportunity presented by TAF. *See* GILTDF105400103012 at 016, 018 (redacting patent expiration information that was among the "key assumptions for the forecast" under commercial section of the plan); GILTDF105400103920 at 926, 929 (same). Gilead similarly redacted patent expiration information in a slide deck that was prepared for a September 2010

---

[5] *See* Ex. 6, line 14.

[6] *See* Ex. 6, line 15.

[7] *See* Ex. 6 lines 16-19.

[8] *See* Ex. 6, line 20.

Portfolio Review. *See* GILTDF105400115045 at 055, 060 (redacting patent expiration from "key" forecast assumptions). Gilead conducted "portfolio reviews" to assess development and determine corporate resources over a 10-year horizon. *See* Ex. 15, Steele Dep. Tr. at 93:5-94:5. Given this quintessential business function, "[e]ven though in-house counsel may have been consulted to help determine" the patent expiration dates, "this does not mean that any document using that date must be privileged." *AbbVie*, 2015 WL 8623076, at *11. Moreover, Gilead has failed to identify the "in-house IP counsel" who purportedly provided the advice contained in the document. *See* Ex. 3 at 7.

### (5) *TAF Single Agent Development Plan*[9]

The redactions appear in a memo from the TAF Project Team to the Development Project Review Committee regarding a potential Development Plan with respect to a standalone TAF product for the treatment of HIV. Gilead never sought FDA approval to sell standalone TAF to treat HIV, choosing instead to market TAF only in combination with other compounds. *See* ECF No. 84 at ¶ 352; ECF No. 224 at 6. Gilead originally redacted the first two paragraphs under "Executive Summary," but Gilead agreed to reproduce the documents without redacting the second paragraph. That paragraph merely recounts facts about Gilead's filing of a Citizen Petition with FDA which addressed whether FDA would give 5 years of market exclusivity to a combination product that contained a new chemical entity in addition to previously approved compounds.[10] Because this is a development document transmitted to the DPR for decision about the development of TAF, Plaintiffs believe the remaining redactions pertain to the impact of FDA's decision on Gilead's development decision-making—i.e., Gilead would only seek FDA approval of a standalone TAF if necessary to obtain 5-year exclusivity. The TAF Project Team's discussion of regulations pertaining to marketing exclusivity, even if it contains the input of counsel, does not shield this business discussion from disclosure. *See AbbVie*, 2015 WL 8623076, at *13.

### (6) *Development Committee Executive Reports*[11]

The redacted text in these Development Committee reports appears under the heading "Key Development Committee Discussions and Decisions." Gilead argues that these redactions cover legal advice from in-house counsel regarding clinical trials and agreements with third parties. *See* Ex. 3. However, decisions made by the Development Committee are not privileged even if based on attorney advice. *See Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988). To the extent the redactions concern Development Committee "discussions," the redactions were drafted by business employees for business employees regarding Gilead's development decisions and thus any legal advice is merely incidental to business concerns. Moreover, despite Gilead's assertion that the documents cover legal advice from Gregg Alton (*see* Ex. 3 at 8), Mr. Alton was absent from the November 16, 2006 Development Committee meeting. *See* GILTDF106400202811.

---

[9] *See* Ex. 6, line 21.

[10] *See* https://www.regulations.gov/document/FDA-2013-P-0058-0001.

[11] *See* Ex. 6, lines 22-24.

## GILEAD'S POSITION

Gilead has asserted privilege sparingly in these consolidated actions, and only in those circumstances where it is warranted and can be substantiated. Gilead has produced more than 1 million documents (over 11.9 million pages) responsive to Plaintiffs' requests. As of March 23, 2021, just over 8,400 documents (0.89%) have been produced with privilege redactions.[12]

Plaintiffs challenge Gilead's privilege redactions in forty-three (43) documents.[13] These documents generally fall into two categories: (1) legal advice provided to Gilead project teams, and (2) legal advice incorporated into other documents. The redactions at issue primarily cover legal advice from Gilead's in-house intellectual property ("IP") counsel regarding the expiration of patent terms and related periods of exclusivity to determine loss of exclusivity ("LOE"). Plaintiffs argue this legal advice loses its privilege protection once included in a business document. Plaintiffs are mistaken. Indeed, in the parallel California state court JCCP litigation, the Discovery Referee rejected that argument, and so too should this Court. *See* Exh. 16 (hereinafter "JCCP Recommended Order No. 7").

### A. Choice of Law

Federal law does not control this privilege dispute. Plaintiffs bring their claims pursuant to diversity jurisdiction,[14] and Plaintiffs allege that the redacted information is relevant to claims premised entirely on state law.[15] As a result, "questions of privilege are controlled by state law." *See, e.g.*, *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). Federal Rule of Evidence 501 expressly provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Specifically, California privilege law should control because this is the jurisdiction where the Court sits, it is the place from or around which the alleged communications are centered, California privilege law is being applied in the parallel JCCP TDF litigation, and Plaintiffs have made no showing that the law of another state should apply to this issue. *See, e.g.*, *Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma*, S.A., 972 F.3d 1101, 1110 (9th Cir. 2020) (reaffirming the settled principle that California law "presumptively applies" absent a showing of a "true conflict" and that another state's laws would be "more severely impaired"). Moreover, federal courts presiding over multi-plaintiff diversity actions routinely apply the privilege of the state where defendant's business was "centered." *See, e.g.*, *In re: Bard IVC Filters Prods. Liability Litig.*, MDL No. 15-2641 PHX DGC, 2016 WL 3970338, at *2-*4 (D. Ariz. July 25, 2016); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liability Litig.*, No. 2:18-md-2846, 2019 WL 4508924, at *2 (S.D. Ohio 2019) (holding that privilege law of state where defendant was

---

[12] *See* Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation at § 6(k) (ECF No. 72).

[13] Some of these documents have duplicates or near-duplicates. For the Court's convenience, only one copy of each document with duplicates or near-duplicates will be discussed herein. All documents at issue will be submitted for *in camera* review.

[14] *See* First Am. Consolidated Compl. for Damages at ¶¶ 19-20 (ECF No. 84).

[15] *See generally* First Am. Consolidated Compl. for Damages (ECF No. 84), *supra* Plaintiffs' Position.

headquartered should govern disputes relating to defendant's internal communications).

## B. Attorney-Client Privilege

The attorney-client privilege protects "a legal opinion formed and the advice given by [a] lawyer in the course of [the attorney-client] relationship."[16]  In addition to protecting legal advice directly communicated to a client, the privilege also encompasses internal client communications that "reflect[] legal advice or opinions" from counsel.[17]  In other words, communications "referring to or repeating counsel's advice or recommendations . . . are protected from disclosures because [they] reflect confidential attorney-client communications."[18]

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship."[19]  Then "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply."[20]

In the parallel JCCP TDF litigation, the Discovery Referee rejected challenges to some of the same redactions that are at issue here.  In JCCP Recommended Order No. 7, the Discovery Referee recognized that "California law provides that a privileged communication remains protected even if it is disclosed to a third party who is present 'to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer in consulted. . . .'"  *Id.* at 3 (citing Cal. Evid. Code, §952).  The JCCP Discovery Referee rejected as "unpersuasive" Plaintiffs' argument that patent expiration dates and periods of exclusivity are not legal opinions. The Referee explained: "When a patent expires is not always a simple question, and spends [sic] on various circumstances that may extend or shorten its normal life."  *Id.* at 3-4.  Ultimately, after an *in camera* review of evidence submitted by Gilead (like that submitted herewith), the Referee decided there "is no reasonable doubt" that the redactions at issue were protected legal advice.

## C. Legal Advice Is Protected by the Attorney-Client Privilege

Business advice from an attorney generally is not subject to attorney-client privilege.  But Plaintiffs look to stretch that principle too far and suggest that incorporating legal advice into a business-related document transforms that legal advice into a business advice.  Plaintiffs' position ignores the practical reality of how legal advice is often conveyed to decision-makers in companies like Gilead, and it ignores a long line of cases that recognize that privileged advice remains

---

[16] *See, e.g.,* Cal. Evid. Code §§ 952, 954; *Costco*, 47 Cal. 4th at 733 ("[T]he privilege attaches to any legal advice given in the course of an attorney-client relationship."); *see also MediaTek*, 2013 WL 5594474, at *5 ("The attorney-client privilege . . . protects the substance of confidential communications of legal advice or requests between the client and attorney.").

[17] *See Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1502-03 (2007).

[18] *Arfa v. Zionist Org. of Am.*, No. CV 13-2942 ABC (SS), 2014 WL 815496, at *6 (C.D. Cal. Mar. 3, 2014) (applying California privilege law)

[19] *See Costco*, 47 Cal. 4th at 734; *see also MediaTek*, 2013 WL 5594474, at *2.

[20] *See id.*

9

protected when transmitted to others within an organization.[21]

## D.  Legal Advice Provided to Gilead Project Teams

Decision-makers in companies like Gilead are not each individually turning to the Legal Department for advice on all occasions.  Instead, legal advice and other information is often assembled for decision-makers for their consideration.  That is precisely what the record illustrates here.  For example, as explained in the attached Declaration of Mary J. Edwards, Gilead's Development Committee (now split into multiple Development Review Committees) makes decisions regarding drug development.  The committee's decisions for a particular drug are based on input and recommendations from that drug's Project Team.  Project Teams are made up of employees with various specialties, including an in-house IP attorney.  The in-house IP attorney serves in the role of Project Attorney and provides legal advice on IP issues as they arise, including advice regarding patent term expirations and related periods of exclusivity.  *See* Edwards Declaration at ¶¶ 4-12 (Exh. 17).

As recognized by the JCCP Discovery Referee, advice regarding patent term expirations and related periods of exclusivity inherently requires legal analysis.  Many factors can affect the duration of a patent's term, including priority and benefit claims, the application of terminal disclaimers, and statutory modifiers such as patent term adjustment[22] and patent term extension.[23]  Moreover, an evaluation of a product's overall "exclusivity" is informed by both patent and regulatory considerations.  The Hatch-Waxman Act provides for exclusivity periods which may

---

[21] *See Zurich*, 155 Cal. App. 4th at 1502-03; *see also Arfa*, 2014 WL 815496, at *6 (applying California privilege law) ("referring to or repeating counsel's advice or recommendations . . . are protected from disclosures because [they] reflect confidential attorney-client communications."); *So. Cal. Edison Co. v. Superior Ct.*, No. B227781, 2010 WL 5060645, at *5 (Cal. Ct. App. Dec. 13, 2010) (noting "that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation", so privilege is not waived by disclosing legal advice to "third persons to whom disclosure [is] reasonably necessary to further the purpose of the legal consultation"); *Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2015 WL 12912030, at *11 (S.D. Cal. June 11, 2015) (applying California privilege law and finding "the attorney-client privilege extends to lower level employees who reasonably need to know of a confidential communication in order to act for the organization or implement legal advice, even if they had no direct contact with the attorney"); *see also Stevens v. Corelogic, Inc.*, No. 1:14-cv-1158, 2016 WL 397936, at *7 (S.D. Cal. Feb. 2, 2016) ("[T]he attorney-client privilege continues to protect communications between non-attorney employees. . . disseminat[ing] information from an attorney to corporate employees."); *Moffatt v. Wazana Bros. Intern.*, No. 14-1881, 2014 WL 5410201, at *2 (E.D. Pa. Oct. 24, 2014) ("Courts have consistently held that communications relaying legal advice provided by corporate counsel among nonattorney corporate employees who share responsibility 'for the subject matter underlying the consultation' are privileged.") (quoting *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976)).

[22] *See, e.g.*, 35 U.S.C. § 154(b) (allowing for patent term extensions for delays caused by the United States Patent and Trademark Office).

[23] *See, e.g.*, 35 U.S.C. § 156 (allowing for patent term extensions for delays caused by the process for FDA approval of a patented drug or medical device); *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 670-71 (1990).

limit the rights of others to manufacture similar pharmaceuticals.[24]  In addition, the Hatch-Waxman Act provides a patent dispute resolution mechanism.[25]

The IP Position sections in Gilead Development Plans and related documents reflect the legal impressions and conclusions of Gilead's in-house IP attorneys.  The legal advice contained therein may include a general freedom to operate statement, the status of patent portfolios, and the general scope of patent applications and patent claims.  The IP attorneys' legal impressions and conclusions are sometimes reflected in other related confidential communications, including Development Plan Updates, Recommendations for Phase III Clinical Trials, Meeting Minutes and Summaries, Executive Reports, or materials for HIV Development Project Review Meetings.  *See* Exh. 17.  Even if eventually used for a business purpose, in-house Gilead IP attorneys' advice is still legal advice – as opposed to business advice – and is protected by the attorney-client privilege.[26]  And to be clear: In each of the documents at issue, Gilead has only redacted the limited privileged content appearing in those documents.  This is appropriate and stands in stark contrast to the cases relied upon by Plaintiffs where a producing party withheld entire documents.  *See, e.g.*, *Chase Bank*, 2011 WL 3268091, at *3-*5 (assessing documents withheld in their entirety and suggesting line redactions of privileged content within otherwise non-privileged documents); *In re Vioxx*, 501 F. Supp. 2d at 810 (same); *Cuno*, 121 F.R.D. at 205 (same).[27]

### *(1) Development Plans*[28]

Plaintiffs challenge redactions in drafts of the June 2010 and September 2010 Development Plans for GS-7340.  *See in camera* submission, Exh. A at 6, Exh. E at 7, 10 & 12.  Development Plans are created by the members of the Project Team and are the foundation of the drug development process at Gilead.  The assigned in-house IP attorney provides legal advice regarding IP issues in connection with the preparation of these plans.  *See* Edwards Declaration at ¶¶ 4-6 (Exh. 17).

---

[24] *See, e.g.*, 21 U.S.C. §§ 360aa, *et al.* ("Orphan drug exclusivity"); 21 U.S.C. § 355(c)(3)(E)(ii), (j)(5)(F)(ii) ("New chemical entity exclusivity"); 21 U.S.C. § 355(c)(3)(E)(iii), (j)(5)(F)(iii)-(iv) ("New clinical study exclusivity"); 21 U.S.C. § 355a ("Pediatric exclusivity").

[25] *See, e.g.*, *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1282-86 (Fed. Cir. 2008).

[26] *See, e.g., Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 21 n.15 (D. Mass. 2017) (distinguishing *Abbvie*, 2015 WL 8623076, and finding legal advice regarding patents was privileged and rejecting the opposing argument that the communications were "due diligence communications . . . created for business purposes and not for legal purposes"); *Cal. Institute of Tech.*, 2018 WL 1468371, at *2 ("In general, the question of patentability is a legal inquiry.") (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)).

[27] *See In re Grand Jury*, 974 F.2d at 1069 (discussing allegedly privileged documents withheld *in their entirety*); *In re Yasmin*, 2011 WL 1375011, at *1 (same); *In re EpiPen*, 2018 WL 5281604, at *1-2 (same); *TCL Comm'n*, 2016 WL 6921123, at *1 (same); *MediaTek*, 2013 WL 5594474, at *1 (same); *see also Graf*, 610 F.3d at 1156 (assessing whether trial testimony was privileged); *Ruehle*, 583 F.3d at 607 (assessing the trial courts' exclusion of the defendant's statements to attorneys).

[28] *See* Exh. 18, Lines 1 (redactions in Exh. A are duplicative of redactions in Exhs. B-D), 2 (redactions in Exh. E are duplicative of redactions in Exh. F).

In these Development Plans, Gilead has redacted the "IP Position" statements because they reflect legal advice from the assigned in-house IP attorney, Allan Kutzenco, regarding patent considerations for GS-7340. *See, e.g., in camera* submission, Exh. A at 19 (listing Attorney Kutzenco as the IP member of the Project Team), Exh. E at 26 (same). The September 2010 Development Plan expressly states that the IP Position section is a "privileged and confidential attorney-client communication" that was "provided by the Gilead IP/Legal Department in furtherance of legal advice being sought, in furtherance of investigation of a legal issue, or in furtherance of the determination of a legal issue." *See in camera* submission, Exh. E at 12. Development Plans sometimes incorporate the legal advice from the IP Position statement in other sections – accordingly, those sections were redacted in a targeted manner where appropriate. *Compare in camera* submission, Exh. E at 12 *with id.* at 7, 10. The redacted content clearly reflects legal advice regarding patent issues, such as the likelihood of patentability, patent expiration dates, and related periods of exclusivity, which is privileged.[29]

By way of further background, Attorney Kutzenco also provided the redacted legal advice in a May 19, 2010 e-mail. Gilead will provide that email for *in camera* review as well because it demonstrates that the advice came from counsel and further corroborates the basis for the limited redactions made by Gilead. *See in camera* submission, Exh. RR (05/19/2010 E-mail from Attorney Kutzenco) (providing the legal advice redacted from the Development Plans referenced in Exhs. A & E). In this instance, Project Teams received this legal advice from the assigned IP attorney – here, Attorney Kutzenco. The privilege was not waived when the legal advice was shared in these documents because it was shared only with employees responsible for implementing the legal advice and deciding upon strategy for the development of GS-7340.[30] As such, the limited redactions are proper.

### (2) Development Plan Updates[31]

Plaintiffs challenge redactions in documents that circulated updated information regarding Development Plans. *See in camera* submission, Exh. G at 9, Exh. M at 7, Exh. O at 2. While these take a different form than the Development Plans, they are part of the Project Team's process for updating the Development Plan and similarly often include legal advice from the Project Team's assigned in-house IP counsel.

The redactions in the updates at issue here cover the IP sections, which in these instances reflect legal advice from in-house IP counsel Mark Bosse regarding patent expirations and related periods of exclusivity. He provided the bulk of this legal advice in an April 15, 2004 email, which Gilead will provide for *in camera* review to further demonstrate the basis for the redactions in these documents. *See in camera* submission, Exh. SS (04/15/2004 from Attorney Bosse). The privilege was not waived when the legal advice was shared in these documents because it was shared only with employees responsible for implementing the legal advice and deciding upon

---

[29] *See supra* n.18.

[30] *See supra* n.26.

[31] *See* Exh. 18, Lines 3 (redactions in Exh. G are duplicative of redactions in Exhs. H-L), 4 (redactions in Exh. M are duplicative of redactions in Exh. N), 5 (redactions in Exh. O are duplicative of redactions in Exh. P).

strategy for the development of GS-7340.[32]  As such, the limited redactions are proper.

Regarding Exh. O, the fact that Christopher Lee noted he would "follow up with IP" regarding the redacted content has nothing to do with the applicability of privilege, as Plaintiffs suggest.  *See in camera* submission, Exh. O at 2.  Instead, a review of the redacted information and Attorney Bosse's 2004 email shows that Mr. Lee incorporated Attorney Bosse's 2004 legal advice for a draft update but intended to follow-up with IP, likely to confirm the prior legal advice previously given in light of the time that had passed since its receipt.  While the incorporated legal advice had aged, privilege was not waived by the mere passage of time.  In this instance, the legal advice was shared only with employees responsible for implementing the legal advice and deciding upon strategy for GS-7340's development, *see* Edwards Declaration at ¶¶ 8-9 (Exh. 17); therefore, privilege still applies.

### (3) *Project Team Meeting Summaries*[33]

Plaintiffs challenge a redaction in the draft summary for the April 4, 2012 meeting of the GS-7340 Project Team, which tracks changes in redline from the summary of the April 8, 2008 meeting of the FTC-HBV Project Team.  *See in camera* submission, Exh. Q at 3.  This redaction covers the dissemination of legal advice from Gilead's in-house IP lawyers.  *See id.*; *see also* Edwards Declaration at ¶ 3 (noting attribution to "Intellectual Property" and "IP" means it would have come from Gilead's in-house IP counsel) (Exh. 17).  The privilege for the redacted legal advice was not waived when it was shared in this summary because it was shared only with employees responsible for implementing the legal advice and deciding upon strategy for the development of GS-7340.[34]  As such, the limited redactions properly cover privileged information.

### (4) *Executive Reports for the Development Committee*[35]

Plaintiffs challenge a redaction in the draft Executive Report for the Development Committee's August 25, 2005 meeting, which tracks changes in redline from the Executive Report for the Development Committee's September 23, 2004 meeting.  *See in camera* submission, Exh. R at 4.  The *in camera* submission shows that this redaction covers legal advice (i) regarding international clinical trials and the effects of third-party agreements on those trials (ii) that is directly attributed to Gregg Alton, Vice President and General Counsel at the time.  *See id.*  It does not, as Plaintiffs argue, cover "decisions made by the Development Committee."  Instead, it reflects legal advice requested by the "Alternate HBV" Project Team and provided by Attorney Alton.  As such, the information is privileged and properly redacted.

### (5) *Recommendations for Phase III Clinical Trials*[36]

Plaintiffs challenge redactions in the Recommendations for Phase III Clinical Trials for GS-7340 and F/R/TAF.  *See in camera* submission, Exh. U at 32-38, Exh. Y at 14-17.  Project Teams prepare these when seeking approval from the Development Committee to proceed with

---

[32] *See supra* n.26.
[33] *See* Exh. 18, Line 6.
[34] *See supra* n.26.
[35] *See* Exh. 18, Line 7 (redactions in Exh. R are duplicative of redactions in Exhs. S-T).
[36] *See* Exh. 18, Lines 8 (redactions in Exh. U are duplicative of redactions in Exhs. V-X), 9.

Phase III clinical trials for a drug in development.  *See* Edwards Declaration at ¶ 8 n.1 (Exh. 17).

These redactions cover the IP Position sections, which, as indicated by their introductory paragraphs, reflect legal advice regarding various patent issues from the assigned in-house IP attorney.  *See, e.g., in camera* submission, Exh. U at 32 (noting the redacted information is a "privileged and confidential attorney-client communication" that was "provided by the Gilead IP/Legal Department in furtherance of legal advice being sought, in furtherance of investigation of a legal issue, or in furtherance of the determination of a legal issue"), Exh. Y at 14 (same). Respectively, the assigned in-house attorneys were Dan Collins and Brandon Boss.  *See in camera* submission, Exh. U at 79, Exh. Y at 28.  The *in camera* submission demonstrates that the redactions cover privileged information regarding legal issues, including a freedom to operate statement, the status of patent portfolios, and the general scope of patent applications and patent claims.  The privilege was not waived when the legal advice was shared in these documents because it was shared only with employees responsible for implementing the legal advice and deciding upon strategy for the development of these products.[37]  As such, the limited redactions are proper.

### *(6) Pre-Reads for HIV Development Project Review Meetings*[38]

Plaintiffs challenge redactions in pre-read materials circulated for the HIV Development Project Review Meetings.  *See in camera* submission, Exh. Z at 4, Exh. BB at 52, Exh. CC at 47. At the HIV Development Project Review Meetings, Gilead executives assess the status of Gilead's HIV portfolio and decide upon ongoing strategy.  *See* Edwards Declaration at ¶ 8 n.2 (Exh. 17).

The redactions in these pre-read materials cover legal advice attributed to Gilead's IP counsel.  The content redacted from Exh. Z, a November 22, 2013 memorandum to the Development Project Review Committee, provides legal advice regarding patent expirations and related periods of exclusivity, and directly attributes that advice to Gilead's IP counsel.  *See in camera submission*, Exh. Z at 4; *see also* Edwards Declaration at ¶ 3 (noting attribution to "Gilead IP" means it would have come from Gilead's in-house IP counsel) (Exh. 17).  Specifically, Attorney Boss provided the redacted legal advice.  *See in camera submission*, Exh. Z at 4 (listing Attorney Boss as sending the memorandum with others "on behalf of the TAF Project Team"); *see also* Exh. 19 (listing Attorney Boss as the IP member of the TAF Project Team in September 2013).

Likewise, the content redacted from Exhs. BB and CC, "Intellectual Property Updates" circulated as pre-reads, is also privileged.  To begin with, both redactions are preceded with the heading "Intellectual Property Update – Privileged and Confidential."  *See in camera* submission Exh. BB at 52, Exh. CC at 47.  More specifically, the content redacted from the GS-9883/F/TAF update in Exh. BB came from in-house IP counsel Mary J. ("MJ") Edwards and related to patentability, patent expirations, and related periods of exclusivity.  *See in camera* submission, Exh. BB at 52; *see also* Edwards Declaration at ¶ 13 (noting Attorney Edwards provided the

---

[37] *See supra* n.26.
[38] *See* Exh. 18, Lines 10 (redactions in Exh. Z are duplicative of redactions in Exh. AA), 11, 12.

redacted legal advice) (Exh. 17).  The content redacted from the B/F/TAF[39] update in Exh. CC also came from Attorney Edwards and addressed similar issues.  *See in camera submission*, Exh. CC at 47; *see also* Edwards Declaration at ¶ 13 (noting Attorney Edwards provided the redacted legal advice) (Exh. 17).

The privilege for the redacted legal advice was not waived when it was shared in these pre-read materials because it was shared only with high-level employees responsible for implementing the legal advice and deciding upon strategy for the development of Gilead's HIV products.[40]  As such, the limited redactions properly cover privileged information.

## E.  Corporate Assessments Based on Legal Advice

When Gilead employees prepare a corporate assessment dependent on patent terms and related periods of exclusivity, they rely on Gilead's in-house IP counsel and/or outside counsel for legal advice regarding those expiration dates.  *See* Edwards Declaration at ¶ 12 (Exh. 17) (noting this is the standard practice for Gilead's commercial and/or financial assessments).  As such, the legal advice is privileged.[41]

### *(1) Commercial Assessments*[42]

Plaintiffs challenge the redaction of a slide in an internal draft presentation regarding a Commercial Assessment for GS-7340.  *See in camera* submission, Exh. DD.  The redacted slide communicates legal advice from Gilead's in-house IP counsel as well as outside counsel regarding expiration dates for patents and related periods of exclusivity.  *Id.* at 6; *see also* Edwards Declaration at ¶ 12 (Exh. 17).  Upon review of the *in camera* submission, it is clear the dates represent legal advice from counsel and thus are privileged.[43]  The privilege was not waived when the legal advice was shared in these documents because it was shared only with employees responsible for implementing the legal advice and deciding upon strategy for the development of GS-7340.[44]  As such, the redactions properly cover privileged information.

### *(2) Portfolio Reviews*[45]

Plaintiffs challenge redactions in an agenda for a Portfolio Review, wherein Gilead executives would review Gilead's entire portfolio of drugs and decide upon strategy moving forward.  *See in camera* submission Exh. EE; *see also* Edwards Declaration at ¶ 12 n.3 (Exh. 17). The redacted content reflects legal advice regarding patent expiration dates and related periods of exclusivity.  *See in camera* submission, Exh. EE at 10, 11, 16.  The information is directly attributed to Gilead's legal department.  *Id.* at 10.  Moreover, because this information was for use by high-ranking Gilead employees to assess product development and determine corporate

---

[39] *See* Exh. 20 (Statement on a Nonproprietary Name Adopted by the American Medical Association's United States Adopted Name Council) (noting GS-9883 is a code designation for Bictegravir, which is the "B" in "B/F/TAF").

[40] *See supra* n.26.

[41] *See supra* n.18.

[42] *See* Exh. 18, Line 13.

[43] *See supra* n.18.

[44] *See supra* n.26.

[45] *See* Exh. 18, Line 14.

resources over a 10-year horizon,[46] receiving this legal advice from in-house IP counsel aligned with Gilead's standard practice.  *See* Edwards Declaration at ¶ 12 (Exh. 17).  The privilege was not waived when the legal advice was shared in these documents because it was shared only with employees responsible for implementing the legal advice and deciding upon Gilead's overall strategy for drug development and allocating resources.[47]  Thus, the limited redactions are proper.

### *(3) Financial Analyses*[48]

Plaintiffs challenge redactions in various documents related to the legal advice Peter Virsik, a former Gilead employee in Corporate Development, received in connection with preparing financial analyses.  The first two documents in this category are an e-mail and attachment sent from Mr. Virsik to Jung Choi.  *See in camera submission*, Exhs. FF, GG.  Both incorporate privileged information provided by counsel regarding patent expiration dates.  In the e-mail, Mr. Virsik states he was providing "patent expiration dates for [Gilead's] internal products in the US and EU" and that he "talked to Bill S. about [them] yesterday and ha[d] the latest figures included" in the e-mail and attachment.  *See id*.  "Bill S." refers to William "Bill" Schmonsees, who was an in-house Gilead intellectual property lawyer at the time.  *See* 03/11/2021 Declaration of P. Virsik at ¶ 4 (Exh. 21).  As such, the redacted content reflects advice from counsel and is privileged.

The rest of these documents relate to a project Mr. Virsik received from Ms. Choi in April 2003.  *See* Exh. 10, 04/04/2003 E-mail from J. Choi to P. Virsik (asking Mr. Virsik to complete a financial analysis involving the expiration of patents and related periods of exclusivity).  While working on the project, Mr. Virsik reached out to in-house IP counsel Alex Andrus for legal advice regarding patent expiration dates and related periods of exclusivity, which Attorney Andrus then provided.  *See in camera* submission, Exh. TT (April 2003 E-Mail Chain between P. Virsik and Attorney Andrus).[49]  These dates were then incorporated into the following documents: (1) a financial analysis sent from Mr. Virsik to Ms. Choi, *in camera* submission Exh. HH at 1-2, 5;[50] (2) correspondence regarding that financial analysis, *in camera* submission Exh. II;[51] and (3) Mr. Virsik's final work product, a memorandum submitted to the Development Committee, *in camera* submission Exh. KK at 1-3.[52]  Because these documents all incorporate the legal advice Mr. Virsik received from Attorney Andrus, the legal advice remains privileged and is properly redacted.[53] Plaintiffs in the parallel JCCP litigation – like the Plaintiffs here – challenged Gilead's redactions

---

[46] *See supra* Pls.' Position.

[47] *See supra* n.26.

[48] *See* Exh. 18, Lines 15, 16, 17, 18 (redactions in Exh. II are duplicative of redactions in Exh. JJ), 19 (redactions in Exh. KK are duplicative of redactions in Exhs. LL-QQ).

[49] *See also* Exh. 22 (01/31/2021 Declaration of P. Virsik) at ¶¶ 2-3 (declaring his standard operating procedure to obtain patent terms and related periods of exclusivity from Gilead in-house legal counsel); Exh. 23 (01/28/2021 Dep. Tr. of P. Virsik at 156:18-158:2) (same).

[50] *See also,* Exh. 24 (04/13/2003 E-mail from J. Choi to P. Virsik) (attaching Exh. HH); Exh. 21 (03/11/2021 Declaration of P. Virsik) at ¶ 5 (declaring the redacted advice came from IP counsel).

[51] *See also* Exh. 21 (03/11/2021 Declaration of P. Virsik) at ¶ 6 (declaring the redacted advice came from IP counsel).

[52] *See also* Exh. 22 (01/31/2021 Declaration of P. Virsik) at ¶ 3 (declaring the redacted advice came from IP counsel).

[53] *See supra* n.26.

in Exh. KK.  The JCCP Discovery Referee reviewed Gilead's similar *in camera* submission, along with the testimony and declaration of Mr. Virsik, and concluded "there is no reasonable doubt that whenever Virsik prepared the GS-7340 Memo he incorporated the legal advice he had received from attorney Andrus."  *See* Exh. 16, Recommended Order No. 7.

Plaintiffs claim there has been a waiver of privilege as to Exh. KK because Plaintiffs used a non-redacted copy of Mr. Virsik's memorandum as an exhibit in a September 25, 2020 filing. To support this position, Plaintiffs cite *AdTrader*, but that case is inapposite.  First, *AdTrader* applied federal privilege law, but California privilege law applies here.  Second, regardless of whether federal or California law applies, *AdTrader* assessed whether Google had already waived privilege when it attempted to clawback inadvertently produced, privileged material six-months after it was quoted in a filing by AdTrader.[54]  The *AdTrader* court found waiver, in part, because the parties had briefed and argued similar privilege claims between the time of AdTrader's filing and Google's clawback; therefore, Google "did not inquire promptly" into the privileged nature of the document.[55]  Here, Gilead had not identified the inadvertent production of the privileged content at the time Plaintiffs cited the document in September 2020.  When the inadvertent production was discovered, in December 2020, Gilead promptly issued its clawback.[56]  As such, there has been no waiver.[57]

**CONCLUSION**

Gilead has made tailored redactions of legal advice it can substantiate as protected by the attorney-client privilege.  As the JCCP Referee observed: "It is irrelevant that the legal advice was incorporated into [documents] prepared largely for business purposes."  *See* Exh. 16, at 4. Accordingly, the legal advice remains subject to the attorney-client privilege and Gilead properly redacted that content.

---

[54] *Id.* at 866.

[55] *Id.* at 867 n.4.

[56] Exh. 1 (12/23/2020 Ltr. from C. Cotton to A. Johnson).

[57] *See, e.g.,* Stipulated Protective Order for Standard Litig. at § 11 (ECF No. 68) (providing that its "non-waiver order shall be interpreted to provide the *maximum* protection allowed by law" (emphasis added)); *Ardon v. City of L.A.*, 62 Cal. 4th 1176, 1187 (2016) (rejecting "a 'gotcha' theory of waiver, in which [a] slip-up in a document production becomes the equivalent of actual consent"); *id.* at 1186 (noting California "[c]ase law has construed [waiver] restrictively"); *Newark Unified Sch. Dist. v. Superior Ct.*, 245 Cal. App. 4th 887, 900 (2015) (noting "the long-standing principle that a privilege is not waived in the absence of a manifest intent to waive"); *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 654 (1999) (recognizing "'waiver' does not include accidental, inadvertent disclosure of privileged information by the attorney"); *see also* Fed. R. Evid. 502(b) (noting inadvertent disclosures do not result in waiver if the producing party took "reasonable steps to prevent disclosure" and "rectify the error"); *U.S. v. Ortland*, 109 F.3d 539, 550 (9th Cir. 1997) ("Precisely because the [attorney-client] privilege is so critical, it should be deemed waived only in the most express of circumstances.") (J. Hawkins, concurring).

17

## PLAINTIFFS' REPLY

### A.    To the extent there is a conflict, the law favoring disclosure applies.

Gilead concedes that under California law, a lawyer's business advice is not shielded by the attorney-client privilege. *See supra* at 9. There is no attorney-client relationship when the lawyer provides business advice. *See Costco Wholesale Corp.*, 219 P.3d at 743. Other than the Referee's opinion in the parallel JCCP proceeding, Plaintiffs have not found any cases applying California law that discuss the applicability of the privilege to patent-related documents. And Gilead cites none. This is unsurprising given that federal law provides the rule of decision in patent cases (*see* Fed. R. Evid. 501), where federal courts have exclusive jurisdiction. Under these circumstances, federal decisions that elucidate the line between business and legal advice when discussing patents are persuasive even if California law applies. *See Speedco, Inc. v. Estes*, 853 F.2d 909, 914 (Fed. Cir. 1988) (state courts confronted with federal law issues usually consider the decisions of lower federal courts on issues of federal law persuasive); *Olive v. Gen. Nutrition Centers, Inc.*, 30 Cal. App. 5th 804, 815, 242 Cal. Rptr. 3d 15, 23 (2018) (state courts will look to federal law for guidance in the absence of relevant state precedent).

Moreover, Gilead ignores that it has asserted sweeping federal law defenses that would broadly bar all of Plaintiffs' claims based on, *inter alia*, federal preemption and Gilead's purported compliance with federal statutes and regulations governing prescription drugs. *See* ECF No. 142, Affirmative Defenses ¶¶ 5-9. This federal law includes the Hatch-Waxman Act, referenced by Gilead above, which provides manufacturers with periods of market exclusivity and a mechanism for delaying generic competition from patent challengers. *See supra* at 10-11; Amended Cpt., ECF No. 84, at ¶¶ 330-331. As a result, evidence related to Gilead's exclusivity with respect to TDF and TAF is relevant to both Plaintiffs' claims and Gilead's defenses. Thus, if there is a conflict between California and federal privilege law, the law favoring disclosure should apply. *See supra* at 1. None of the cases Gilead cites (*supra* at 8) addressed which law applies where, as here, the evidence is relevant to both state law claims and federal defenses.

### B.    Gilead's financial and development documents contain business advice.

Gilead's insistence that these financial and development documents contain legal, not business, advice is belied by the nature of the redacted material. These documents do not contain attorney analysis regarding the nature or scope of patent claims or the likelihood that Gilead would obtain a patent extension or period of market exclusivity given the statutory requirements. Nor do they contain attorneys' assessment of the strength of the patents—i.e., questions of validity or possible infringement. Because these redactions do not concern the "strength of the patents"[58] or "question[s] of patentability,"[59] the scant authority Gilead cites in support of its position (*see supra* at n.26) is distinguishable.

Even if the redactions arguably contain some legal advice, at most it is a mix of business and legal advice, the "primary or predominant purpose" of which was clearly business-related. *MediaTek Inc.*, 2013 WL 5594474, at *2. That various factors may affect the duration of a patent

---

[58] *Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 21 n.15 (D. Mass. 2017).

[59] *Cal. Inst. of Tech. v. Broadcom Ltd.*, 2018 WL 1468371, *2 (C.D. Cal. Mar. 19, 2018).

term does not mean that all references to patent expiration dates are privileged. Because the dates were determined for the purpose of planning Gilead's business strategy, "the length of a patent's exclusivity or plans for launching a product are not privileged simply because they are determined by referencing a statute or regulation." *AbbVie*, 2015 WL 8623076, at \*13.

The decision of the Discovery Referee in the parallel JCCP TDF litigation is not controlling nor persuasive.[60] Referee Quinn viewed the patent expiration information included in the Virsik memo as automatically privileged as long as it came from counsel, despite recognizing that the lawyer providing the patent expiration information only did so to support a financial analysis conducted so Gilead could make a business decision. *See* Ex. 25, Jan. 27, 2021 Hearing Tr. at 20 ("I think the document's privileged if Gilead can establish that the statement in the document about the expiration of the patent originated from a conversation with counsel."); Ex. 16 at 4. This contradicts the many cases Plaintiffs have cited here, which hold such information is not privileged if it was prepared to support a company's business strategy. *See supra* at 2-4. Because the patent expiration dates and periods of exclusivity were "discussed only to the extent that they have business implications," they are not privileged. *AbbVie*, 2015 WL 8623076, at \*10.

## C.    Gilead has failed to substantiate its privilege claims.

Both federal and California law requires Gilead to produce "sufficient factual information for other parties to evaluate the merits" of the privilege claim. *See supra* at 1-2; *Ritchie v. Sempra Energy*, 2015 WL 12912030, at \*4 (S.D. Cal. June 11, 2015) (citing California law). At a minimum, Gilead was required to identify the author, date of preparation, and all recipients of the purportedly privileged information. *In re Grand Jury Investigation*, 974 F.2d at 1071; *Ritchie*, 2015 WL 12912030, at \*4. Despite multiple opportunities, Gilead has failed to do so.

Regarding the GS-7340 Commercial Assessment and Portfolio Review Agenda that are listed in Exhibit 18, lines 13-14 (attached for *in camera* review as Exhibits DD and EE), Plaintiffs challenged Gilead's privilege claims because, *inter alia*, Gilead could not identify any attorney who purportedly provided the advice contained in the redacted text. *See supra* at 6, 7. In response, Gilead still fails to provide this crucial information, relying instead on the claim that it was "standard practice" for Gilead employees to rely on counsel to provide the redacted material. *See supra* at 15; Ex. 17, Edwards Decl. at ¶¶ 3, 12. Gilead, however, cites no case holding that a "standard practice" to consult with an attorney satisfies its burden of establishing the facts necessary to invoke the attorney-client privilege. Nor could it. This type of "vague declaration" is insufficient (*see Dolby Labs. Licensing Corp.*, 402 F. Supp. 3d at 866), and the Court should require production of unredacted versions of these documents based on this failure alone (*see Aristocrat Techs. Australia Pty Ltd.*, 2011 WL 1158781, at \*3).

Gilead has also not provided a list of all employees who received the purportedly privileged information, nor has it substantiated that each of those employees were "need to know." *See Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 463–64 (W.D.N.Y. 2006); *Ins. Co. of North Am.*

---

[60] The JCCP Plaintiffs have objected to Referee Quinn's decision. *See Gilead Tenofovir Cases*, JCCP No. 5043, CJC-19-005043, Mar. 8, 2021 Objection, available at https://webapps.sftc.org/ci/CaseInfo.dll?CaseNum=CJC19005043&SessionID=506F478E6D582 301144E6402267090044474B591.

*v. Superior Court*, 108 Cal. App. 3d 758, 765 (1980). Instead, Gilead repeatedly argues, without factual foundation or support, that it did not waive privilege because the "legal advice" was purportedly shared only with employees responsible for implementing that advice. *See supra* at 12-16 (frequently citing only the distinguishable cases *Crane Sec. Techs., Inc.* and *Cal. Inst. of Tech.*). Although the Edwards Declaration provides some generalized information about Gilead's practices with respect to development-related documents, Gilead fails to provide even this level of inadequate information about the recipients of its financial analyses. *See* Ex. 17, ¶ 12 (saying nothing about who received these documents or Gilead's efforts to keep them confidential). A court must be able to determine whether the "employees with whom the advice of legal counsel was shared come within these principles." *Zurich*, 155 Cal. App. 4th at 1503–04. "Without a complete list of who received certain documents, … there is no way to know if the communications were kept confidential, and the Court cannot find that the documents are protected by attorney-client privilege." *Gregorio v. Clorox Co.*, 2019 WL 2716484, at *3 (N.D. Cal. June 28, 2019) (quoting *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 219 (N.D. Ill. 2013)).

**D.   Gilead waived any privilege associated with the Virsik memo.**

In federal court, federal law governs the question of privilege waiver. *See AdTrader*, 405 F. Supp. 3d at 866 (citing Fed. R. Evid. 502(f)). Gilead's attempt to distinguish *AdTrader* fails. Gilead defends its three-month delay by arguing that it had not identified the inadvertent production by September 2020. *See supra* at 17. However, "the critical issue is whether [Gilead] took reasonable steps to assert its privilege claim after [Plaintiffs] relied on the privileged material in its [September 2020] filings." *AdTrader*, 405 F. Supp. 3d at 866. This is because Rule 502 "require[s] the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Id.* Gilead failed in this regard even though Plaintiffs' "quotation from and reliance on this portion of the [Virsik memo] in [September 2020] should have put [Gilead] on notice to at least inquire promptly about whether such a reference, in fact, reflected advice of counsel." *Id.* at 866-67. Gilead did not inquire promptly, despite seeking sanctions regarding Plaintiffs' filing of the memo and Gilead's supposed "standard practice" of obtaining such patent expiration information from counsel. The privilege is waived. *See also Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) (collecting cases involving two-month delay); *Calvert v. State Bar*, 54 Cal. 3d 765, 780 (1991) (under California law, the "privilege is waived when a holder of a privilege fails to claim the privilege in a proceeding in which he or she has the standing and opportunity to do so").

**E.   Conclusion**

Gilead has redacted information that was critical to its development decision-making—including key financial assumptions that drove Gilead's commercial strategy when deciding to delay TAF development. The redactions are improper because they concern predominantly business advice that cannot be kept from the jury. Even if some redactions contain predominantly legal advice, Gilead's failure to substantiate its claims of privilege independently compels the production of the withheld material.