UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC., et al.,<br><br>Defendants. | Case No. 18-cv-06972-JST   (JSC)<br><br>**ORDER RE: ATTORNEY-CLIENT PRIVILEGE DISPUTE**<br><br>Re: Dkt. Nos. 626, 627 |

The parties' current discovery dispute presents the question of whether a corporation's in-house attorney's legal advice is protected from disclosure by the attorney-client privilege when it appears in business documents shared with non-lawyers. (Dkt. Nos. 626, 627.) After carefully considering the parties' written submission, and having reviewed the redacted information *in camera*, including Gilead's resubmission after it withdrew several of the attorney-client designations, the Court concludes that under California law the attorney's legal advice remains protected by the privilege. The Court also concludes, however, that Gilead has not established that much of the still-redacted information is not publicly known.

**DISCUSSION**

Plaintiffs have filed thousands of lawsuits against Gilead alleging that Gilead delayed development of safer TAF drugs for treating HIV to avoid the losses that would occur when its patent for TDF drugs expired and generic TDF drugs entered the market. In other words, that Gilead timed its development of TAF drugs—which were safer than TDF—to maximize its domination of the HIV drug market.

The redactions at issue are in Development Committee or Project Team documents that were not authored by an attorney. Gilead contends that the redacted information is legal advice

that is protected by the attorney-client privilege. In particular, it insists that information in the financial and business documents regarding patent expiration dates and periods of patent exclusivity reflects in-house counsel's legal advice and therefore need not be disclosed. Plaintiffs contend that the advice was primarily business-oriented and therefore not protected.

### A. Choice of Law

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Although Plaintiffs bring their claims exclusively under state law, they argue that federal law should govern this privilege dispute because the communications at issue are relevant to Gilead's federal affirmative defenses. In particular, they contend that they are relevant to Gilead's fifth through tenth affirmative defenses and therefore federal law—rather than state law—should govern. Indeed, Rule 501's Advisory Committee Notes explain: "in diversity cases where the litigation in question turns on a substantive question of State law, and is brought in the Federal courts because the parties reside in different States, the committee believes it is clear that State rules of privilege should apply unless the proof is directed at a claim or defense for which Federal law supplies the rule of decision (*a situation which would not commonly arise*.)" Fed. R. Evid. 501 Advisory Committee Notes (1974) (emphasis added).

This case is not one of the uncommon situations where Federal law governs the application of the attorney-client privilege in a diversity case. Plaintiffs baldly assert that the purportedly privileged information is relevant to Gilead's federal affirmative defenses, but they do not explain how the evidence sought is directed to those defenses. For example, how is the information regarding Gilead's calculation of patent term expiration or period of exclusivity directed to Gilead's preemption defense? How is it directed to Gilead's First Amendment defense to Plaintiffs' marketing claims? How is it relevant to Gilead's defense that it complied with the Hatch Waxman Act? That the Hatch Waxman Act provides patent holders with periods of exclusivity in certain situations does not make the information sought relevant to this defense: what Gilead did to comply with the Hatch Waxman Act might be relevant, not how it calculated periods of exclusivity under Hatch Waxman. Such evidence is, however, as Plaintiffs argue and

Gilead concedes—relevant to proving Plaintiff's state law claims. State law governs the privilege question here.

The next question, then, is which state's law to apply? Federal courts must apply state choice-of-law rules to resolve which state's privilege law controls when Rule 501 requires the application of state privilege law and there are factual connections to multiple states. *See* 2 Paul R. Rice & John B. Corr, Attorney–Client Privilege in the U.S. § 12:18 (2020) (noting that Rule 501's directive to apply state privilege law "intersects with the *Erie* doctrine" and requires the application of state choice of law rules in determining which state's privilege law controls). A "federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167–68 (N.D. Cal. May 5, 2016). "This applies to actions brought under the Class Action Fairness Act as well, since CAFA is based upon diversity jurisdiction." *In re NVIDIA GPU Litig.*, No. C 08–04312, 2009 WL 4020104, at *5 (N.D. Cal. Nov. 19, 2009).

This case has factual connections to multiple states and this Court is sitting in California; thus, California choice-of-law rules govern which state's attorney-client privilege law controls this dispute California courts resolve choice-of-law disputes through the governmental interest analysis. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1202 (2011). Under the governmental interest analysis, California law presumptively applies unless there is a "true conflict of governmental interests" and a different state's interests "would be more severely impaired by the application of California law." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020). Moreover, under California law, the Court need not perform a governmental interest analysis where a party "failed to introduce sufficient evidence addressed to any issues under the governmental interest analysis to establish that a true conflict of laws exists with respect to the facts of the instant case." *Sommer v. Gabor*, 40 Cal. App. 4th 1455, 1468–69 (1995). Plaintiffs have not introduced any evidence or made any argument that a conflict of laws exists among the various states. Therefore, the Court will apply California law to the resolution of this privilege dispute.

3

### B. California Attorney-Client Privilege Law

California's attorney-client privilege allows a client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." Cal. Evid. Code § 954. "A corporation is a person whose confidential communications with its attorney are protected by the attorney-client privilege. *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1496 (2007) (internal citation and quotation marks omitted). "The attorney-client privilege covers all forms of communication, including transactional advice and advice in contemplation of threatened litigation . . . ." *Id.* at 1495 (internal citations and quotation marks omitted). "[T]he fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. *Mitchell v. Superior Ct.*, 37 Cal. 3d 591, 599 (1984) (internal citation omitted). When there is a confidential communication between an attorney and a client, the entire communication is privileged. *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 736 (2009). "[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case." *Id.* at 732 (internal citation and quotation marks omitted).

Under California Evidence Code section 952 protected attorney-client "confidential communications include information transmitted to persons 'to whom disclosure is reasonably necessary for the transmission of the information,' and those to whom disclosure is reasonably necessary for 'the accomplishment of the purpose for which the lawyer is consulted.'" *Zurich Am. Ins. Co.*, 155 Cal. App. 4th at 1495. While involvement of an unnecessary third person in attorney-client communications destroys confidentiality, involvement of third persons to whom disclosure is reasonably necessary to further the purpose of the legal consultation preserves confidentiality of communication. *Id.* at 1496. Thus, "[t]he first relevant inquiry is whether the document contains a discussion of legal advice or strategy of counsel" because California Evidence Code § 952 "provides that a 'confidential communication' 'includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Zurich Am. Ins. Co.*, 155 Cal. App. 4th at 1503. If the communication involves business rather than legal advice—

4

even if given by an attorney—it is not protected from disclosure by the attorney-client privilege. *Costco Wholesale Corp*, 47 Cal. 4th at 735.

Plaintiffs' contention that the redacted information is not privileged because it was shared to assist with Gilead making a business decision rather than for legal purposes is unpersuasive. First, Plaintiffs rely on federal law and as explained above California—not federal law—governs the present privilege dispute. Second, even the federal cases upon which Plaintiffs rely are distinguishable from the circumstances here. *Mediateck Inc. v. Freestyle Semiconductor, Inc.*, 2013 WL 5594474 (N.D. Cal. Oct. 10, 2013), addressed whether a *non-lawyer's* advice was protected by the attorney-client privilege because it was shared with an attorney. In that context the court held (applying federal law) that the privilege did not apply to the documents created by the non-lawyer because they were created primarily for a business purpose. *Id.* at *3-5. Here, in contrast, the issue is the corporation's utilization of an attorney's legal advice for a business purpose. Other cases cited by Plaintiffs involve in-house counsel giving business advice rather than communicating legal judgments. *See TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2016 WL 6921123, at *2-4 (C.D. Cal. Mar. 23, 2016) (in-house counsel's evaluation of patent's monetary value was business, not legal, advice especially since party asserting the privilege did not offer evidence that in-house counsel's evaluation reflected any judgment about the patent's technical merit). *Fed. Trade Comm'n v. Abbvie, Inc*., No. CV 14-5151, 2015 WL 8623076, at *4 (E.D. Pa. Dec. 14, 2015), which is the most close factually to the situation here, applied federal law. Also, the court decided that the defendant had not explained legal counsel's role. *Id.* at *11. For some of the redactions here, in contrast, Gilead has adequately explained counsel's role.

## *IN CAMERA* REVIEW

As the party resisting discovery, Gilead bears the burden of proving that the attorney-client privilege applies. It must support its privilege claim with "sufficient factual information for other parties to evaluate the merits of that claim. . . ." *Ritchie v. Sempra Energy*, No. 10CV1513-CAB(KSC), 2015 WL 12912030, at *4 (S.D. Cal. June 11, 2015) (discussing California attorney-client privilege law) (internal citations and quotation marks omitted). "The information . . . must

be sufficiently specific to allow a determination of whether each withheld document is or is not in fact privileged." *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 130 (1997) (internal citation omitted).

Gilead's Development Project Review Committee (previously known as Development Committee) was responsible for Gilead's product development decisions. The Committees were composed of Gilead representatives from various departments, including manufacturing, commercial, toxicology, regulatory and pharmacokintecs. The Committees' decisions about new drug development are informed by recommendations from a particular drug's Project Teams. The Project Teams consisted of Gilead businesspeople with expertise in various areas, including an in-house counsel. A given Project Team's in-house lawyer provides the Team with legal advice on intellectual property issues as they arise, including on patent term expiration dates and periods of exclusivity. "This legal advice may include a general freedom to operate statement, the status of patent portfolios (e.g., pending U.S. patent applications, granted U.S. patents, a corresponding patent applications/patents worldwide), and the general scope of patent applications and patent claims." (Dkt. No. 626-11 ¶ 7.)

At the hearing on May 18, 2021, the Court raised the issue of whether patent expiration dates or periods of exclusivity that since the document was created became publicly known (for example, when generic TDF entered the market), are still protected by the privilege. In response, Gilead revised it redactions to disclose some dates in the documents. Other dates, however, remain redacted—even if the date is passed or imminent. As will be discussed below, there is nothing in the record to support a finding that such information is not now public and no argument in Gilead's submission that it is still protected by the privilege even if it is publicly known.

### 1. Exhibits A (and Duplicates B-D; E (and Duplicate F))

The revised redacted information is in-house counsel's advice regarding the likely success of patent applications, patent term expiration dates and exclusivity periods. As it involves legal judgment—whether a patent application will be successful, when a patent is likely to expire, and how to obtain additional exclusivity and for how long—it is protected by the privilege.

//

### 2. Ex. G (and Duplicates H, I, J, K, L)

Gilead has not established that the first paragraph—redacted in its entirety—is privileged. The declaration offered in support discusses in-house counsel legal advice regarding general freedom to operate statement, that status of patent portfolios, granted US patents, and patent applications. (*See* Dkt. No. 626-11 ¶¶ 7-8.)  None of these issues are discussed in this very general paragraph.

The first sentence of the first bullet point and the first sentence of the third bullet point do not reflect any legal advice as opposed to generally reciting a broad business strategy; there is nothing in the record to support a finding that Gilead has met its burden of proving those sentences are protected by the attorney-client privilege.

Gilead has not shown that any of the second bullet point or the last (fourth) bullet point reflects an attorney's legal advice as opposed to business strategy.  These bullet points do not reflect any judgment as to periods of exclusivity or patent terms or the like.

### 3. Ex. M (and Duplicate N)

These exhibits contain the same four bullet points as Ex. G and thus the Court's ruling above applies.

### 4. Exhibit O (and Duplicate P)

All but the first sentence reflects in-house counsel's legal advice regarding patent terms and periods of exclusivity.  The first sentence reflects a business strategy rather than legal advice and there is nothing in the record that supports a finding that it involves legal advice.  Gilead's boilerplate statement that "[a]s standard practice, anything attributed to "Gilead IP," "IP," "Intellectual Property" or the "Patent Group" would have come from in-house IP counsel (Dkt. No. 626-11 ¶ 3) is inadequate. A business strategy is not protected from disclosure by the attorney-client privilege merely because it involves intellectual property.  Accordingly, the first sentence is not protected by the attorney-client privilege.

### 5. Exhibit Q

The redacted information reflects legal advice.

### 6. Exhibit R (and Duplicates S, T)

Gilead has not met its burden of showing that the redacted portions of Exhibit R involve legal advice.

### 7. Exhibit U (and Duplicates V, W, X)

All of the redacted information (as revised) involves legal advice/judgments as to the status of various patents, periods of exclusivity, freedom to operate and the like.

### 8. Exhibit Y

All of the redacted information (as revised) involves legal advice/judgments regarding patent expiration dates and the like.

### 9. Exhibit Z (and Duplicate AA)

The redacted information constitutes legal advice regarding potential patent exclusivity.

### 10. Exhibit BB

Gilead has not met its burden of showing that the first two sentences of the redacted portion reflecting the date a patent was granted and its expiration date contain legal advice not publicly known. The remainder is protected by the attorney-client privilege.

### 11. Exhibit CC

The redactions in the Intellectual Property Update reflect legal advice, and the remaining redactions were properly withdrawn.

### 12. Exhibit DD

The Court understands from the revised submission that the redactions were removed.

### 13. Exhibit EE

The first redaction: The first two bullet points are protected by the attorney-client privilege; however, Gilead has not established that the third bullet point beginning "Generic DRV" and the three-sub bullets that follow contain any legal advice. The third bullet point is not protected from disclosure.

The second redaction: Gilead has not established that anything other than the single date in the second bullet point involves attorney advice/judgment.

The third redaction: As revised, the third redaction involves protected legal advice.

//

**14. Exhibits FF and GG**

Gilead has established the privilege for the revised redaction in Exhibit FF. As for the attachment (GG), the record does not support a finding that the expiration dates still redacted following Gilead's revision are not publicly known. That a Gilead non-lawyer asked a Gilead lawyer for the expiration date of a patent does not make the answer privileged. (Dkt. No. 626-13 ¶ 4.) For example, many of the dates are long passed. If Gilead contends that the dates reflected on the chart are different from the actual expiration dates there is nothing in the record that supports that finding. If the dates are publicly known (or generally calculable) dates, Gilead has not shown that such publicly-known information is still privileged.

**15. Exhibit HH**

While Gilead revised the redactions, it still maintains that the expiration date for the TDF patent reflects protected attorney-client legal advice. There is nothing in the record, however, to support a finding that the dates reflected in the document are not publicly known.

**16. Exhibit II (and Duplicate JJ)**

This exhibit contains a single redaction of a date that generics are expected to appear. Again, there is nothing in the record that supports a finding that this date is not publicly known, that is, that generics did not appear in the year stated in the email.

**17. Exhibit KK (Duplicate LL, MM, NN, OO, PP, QQ)**

The first redaction in the Summary is protected attorney-client advice. The other two redactions in that paragraph reflect assumptions for the non-lawyer author's financial analysis. While the non-lawyer may have consulted a lawyer to make his assumption, the document itself states that it is just an assumption on which a financial analysis is based and therefore is not protected by the attorney-client privilege.

As for the revised redactions under "Exclusivity", there is nothing in the record that supports a finding that the still-redacted dates are not now publicly known. The same omission exists for the third redaction under "sales and marketing."

**EXHIBIT KK PRIVILEGE WAIVER**

Even apart from the inadequacy of Gilead's showing as to Exhibit KK (September 2003

1 memo), Plaintiffs argue that Gilead waived any privilege as to Exhibit KK because Gilead
2 produced it to Plaintiffs in unredacted form in August 2020. Further, Plaintiffs attached Exhibit
3 KK to their September 25, 2020 opposition to Gilead's motion for sanctions; indeed, their brief
4 quoted directly from a portion of the brief Gilead later claimed is privileged. Gilead, however, did
5 not claw back the September 2003 memo on privilege grounds until December 23, 2020—nearly
6 three months later. This conduct, Plaintiffs claim, constitutes waiver. The Court agrees.

Although California law governs the application of the attorney-client privilege, federal law governs the waiver issue. Fed. R. Evid. 502(f); *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019). Rule 502(b) provides that:

> [T]he disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

On the record before the Court, the third element is not satisfied. Plaintiffs did not just file the exhibit in the public record in September—they quoted directly from the portion that Gilead claims reflects privileged communications. *See* Fed. R. Evid. 502 advisory committee's note, explanatory note revised 11/28/2007, subsection (b) ("the rule require[s] the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently"). Gilead's second motion for sanctions based on Plaintiffs' failure to file its opposition to the first sanctions motion under seal indicates that Gilead was aware that Plaintiffs had released confidential information and Gilead had an obligation to investigate the material once it was released. *See AdTrader*, 405 F. Supp. 3d at 867. Gilead offers no explanation for its three-month delay after this allegedly privileged information was highlighted to Gilead. That Gilead's attorneys and those working with them did not realize the information had come from in-house counsel reflects the weakness of the privilege argument in the first place; it is not a basis for finding that Gilead took prompt steps to rectify its error. Exhibit KK must be produced

in unredacted form.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to compel production of purportedly attorney-client privileged information. (Dkt. No. 627.) The associated administrative motion to seal is GRANTED. (Dkt. No. 626.) As the Court sua sponte raised the issue of whether information is now public knowledge and therefore no longer privileged, Gilead may make a supplemental submission to address just those redactions that the Court found Gilead had not shown did not involve public information. Such supplemental submission, if any, must be filed on or before June 17, 2021. Plaintiffs' response, if any, must be filed by June 24, 2021.

This Order disposes of Docket Nos. 626 and 627.

**IT IS SO ORDERED.**

Dated: June 10, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge