UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN HOLLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC., et al.,<br><br>Defendants. | Case No. 18-cv-06972-JST   (JSC)<br><br>**ORDER RE: TANGO DATA DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 855 |

Pending before the Court is a discovery dispute joint letter regarding Plaintiff's request that Gilead produce information contained in its mothballed Tango database. (Dkt. No. 855.) After considering the parties' written submission, and having had the benefit of oral argument on December 17, 2021, Plaintiffs' motion to compel is GRANTED.

## DISCUSSION

The Court may order discovery of information that is (1) relevant to a claim or defense and (2) "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

**A.   Relevance**

The information in the Tango database is relevant to Plaintiffs' failure to warn claim and, specifically, to their claim that Gilead failed to sufficiently warn about the risks of their TDF drugs. First, it is undisputed that the database contemporaneously or nearly contemporaneously recorded which salespersons visited which health care providers on what dates. As Plaintiffs argue, the number of visits and during what time period is relevant to their claim that the alleged omissions as to TDF risks caused each Plaintiff's alleged injuries. Gilead's insistence that the salesperson and health care provider depositions can provide that information highlights its relevance. Under Gilead's proposal, a salesperson's vague memory as to how many visits the

salesperson made to a health care provider in, for example, 2005, must be accepted by Plaintiff (and the trier of fact) without being tested by the actual records that document those visits.

Second, it is undisputed that the information in the database is likely to show which marketing materials, if any, were given to which healthcare providers on which visits, which goes to whether the representations and alleged omissions caused each Plaintiff's injuries. Again, Gilead's contention that salespersons can testify by memory as to what was shared with the physicians simply shows the information's relevance.

Gilead's insistence that the information in the Tango database is irrelevant because the healthcare providers testified that the material Gilead distributed did not affect their prescribing decisions also shows the information's relevance. Plaintiffs may be able to dispute such testimony by reference to the timing, volume, and nature of the materials shared during salespersons' visits to Plaintiffs' healthcare providers.

### B.      Proportional to the Needs of the Case

Ordering Gilead to bring the Tango database "back to life" is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). As explained above, the information is central to the failure to warn claim and, importantly, to testing Gilead's deposition evidence about the visits to healthcare providers. The $70,000 to $140,000 cost, up to $50,000 of which will be shared by Plaintiffs under their proposal, is a drop in the bucket compared to Gilead's resources. And given its relevance, any burden of production is not outweighed by its likely benefit.

### CONCLUSION

Plaintiffs' motion to compel is GRANTED. The parties shall meet and confer immediately to ensure that the information from Tango is produced in sufficient time to be used in upcoming salesperson depositions. This Order disposes of Docket No. 855.

**IT IS SO ORDERED.**

Dated: December 17, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge