1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADRIAN HOLLEY, et al.,

        Plaintiffs,

    v.

GILEAD SCIENCES, INC.,

        Defendant.

Case No. 18-cv-06972-JST

**ORDER GRANTING MOTIONS TO EXCLUDE TESTIMONY OF DEFENDANT'S NEPHROLOGIST AND INFECTIOUS DISEASE EXPERTS**

Re: ECF Nos. 1002, 1008

Before the Court are Plaintiffs' motions to exclude the testimony of Defendant Gilead Sciences, Inc.'s nephrologist experts – Dr. Mark Perazella, Dr. Marcello Tonelli, Dr. Deirdre Sawinski, and Dr. Jai Radhakrishnan – and its infectious disease experts – Dr. Daniel Kuritzkes, Dr. Thomas Campbell, Dr. David Pitrak, and Dr. Babafemi Taiwo. ECF Nos. 1002, 1008. Plaintiffs seek exclusion of both sets of experts under Rules 26 and 37 of the Federal Rules of Civil Procedure, as well as under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court will grant both motions under Rules 26 and 37 and therefore does not reach Plaintiffs' *Daubert* arguments.

I.     **LEGAL STANDARD**

Under Rule 26(a)(2)(B), disclosure of an expert witnesses "must be accompanied by a written report – prepared and signed by the witness." Failure to comply with this requirement results in exclusion of an expert's testimony "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[T]he burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Counsel may "assist experts in preparing reports, but 'the report, which is intended to set

1   forth the substance of the direct examination, should be written in a manner that reflects the

2   testimony to be given by the witness and it must be signed by the witness.'" *Optronic Techs., Inc.*

3   *v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 477 (9th Cir. 2021) (quoting advisory committee notes to

4   Rule 26(a)(2)(B)).  As one court explained:

> [Counsel's] help generally is limited to ensuring that Rule 26's
> formal requirements are satisfied.  The Rule does not permit a party
> to prepare the report for the witness.
>
> Determining whether counsel crosses the line separating permissible
> assistance from improper participation in the expert's report writing
> calls for a fact-specific inquiry.  The key question is whether
> counsel's participation so exceeds the bounds of legitimate
> assistance as to negate the possibility that the expert actually
> prepared his own report.  Assistance in the fine-tuning of an expert
> report in order to ensure compliance with Rule 26(a)(2)(B) is
> permissible, while preparing the expert's opinion from whole cloth
> and then asking the expert to sign it if he or she wishes to adopt it is
> not.

13  *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942-43 (E.D. Mich. 2014) (internal quotation

14  marks, alteration marks, and citations omitted).

15         Thus, for example, the Ninth Circuit has held that an expert report is "properly admitted"

16  where "the parts written by counsel consisted of background information qualified by statements

17  such as 'I am informed that . . . .,'" and where the expert "testified that he signed his report after

18  reviewing and editing it and determining that it accurately reflected his analysis and opinion with

19  regard to the case." *Optronic Techs.*, 20 F.4th at 477.  In that case, the expert conceded that

20  counsel wrote approximately 60 percent of the report, but the district court concluded that the

21  portions written by counsel "concern the data he used, not his methodology" or conclusions.

22  *Optronic Techs., Inc. v. Ningbo Sunny Elect. Co.*, No. 5:16-cv-06370-EJD, 2019 WL 4780183, at

23  *2 (N.D. Cal. Sept. 30, 2019), *aff'd*, 20 F.4th 466 (9th Cir. 2021).  Similarly, this Court did not

24  preclude an expert who "provided the information, analyses, and opinions expressed in his report"

25  and "insisted that 'the ideas and the illustrations came from me,'" even though the expert

26  "acknowledged that he 'didn't write the law portions of this in the vernacular'" and "that 'counsel

27  typed the report up.'" *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d

28  928, 950 (N.D. Cal. 2015).

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.      DISCUSSION

Plaintiffs submitted detailed charts comparing the reports of the two sets of experts at issue in these motions.  ECF Nos. 1002-2, 1009-1.  Gilead does not dispute the accuracy of these charts, and the Court's own comparison of the expert reports establishes that, while the reports are not identical, they are substantially similar – including the same structure and tables of contents, many of the same citations, and many verbatim or nearly verbatim passages.  Such "undeniable substantial similarities" between reports "prepared with assistance from the same counsel . . . demonstrate that counsel's participation so exceeded the bounds of legitimate 'assistance' as to negate the possibility that [the experts] actually prepared [their] own report within the meaning of Rule 26(a)(2)." *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, No. 96-MD-1122, 2000 WL 33654070, at *1 (W.D. Mich. Feb. 8, 2000).  The experts have testified that they stand by the opinions contained in the reports, "[b]ut Rule 26 requires more." *Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*, ___ F. Supp. 3d ___, 2022 WL 2122655, at *4 (M.D. Fla. 2022).

With its opposition papers, Gilead submitted declarations from all of the experts providing additional information about their qualifications, summarizing their opinions, and stating some variation of, "I provided the information, analyses, and opinions in my common-issue expert report and my rebuttal report, and did not rely on information from counsel in forming my opinions." *E.g.*, ECF No. 1032-13 ¶ 7.  However, these declarations came after Gilead's counsel, invoking a discovery order agreed to by the parties, ECF No. 732, instructed the experts not to answer questions during their depositions about the drafting and preparation of the reports.  For example, one expert testified that "prepared" means "selecting the primary studies, writing . . . out the important points that I need to cover, . . . reviewing the literature, [and] drafting the report," but counsel instructed the expert not to answer questions about whether the expert selected the primary studies or wrote out "the important points that you needed to cover in your report."  ECF No. 1002-8 at 37-42.  Gilead cannot now supplement by declaration information that it instructed its witnesses not to provide during their depositions.[1]

---

[1] Additionally, the parties agreed to allow discovery on "information, communications, or documents which . . . the expert relies upon as a basis for forming their opinions."  ECF No. 732 at

3

1        Gilead has not presented evidence that the challenged experts drafted their own reports, or

2   that the reports were drafted after substantial conversations between counsel and the experts.  One

3   nephrologist did submit an invoice for time spent on the "[f]irst draft of [the common-issue]

4   report," ECF No. 1002-18 at 2, and it may well be that one or more experts were responsible for

5   drafting at least portions of an initial draft.  But Gilead does not attempt to make that argument,

6   instead insisting that each expert prepared their report independently of the other experts and

7   without improper reliance on counsel.  The experts themselves also testified that they did not

8   review the other experts' work while preparing their reports.  Given the undisputed similarities

9   between the reports, the Court does not find Gilead's position to be credible.

10        The Court cannot conclude that the reports represent the experts' opinions rather than

11   counsel's.  As one example, it is not reasonable to conclude that all four nephrologists

12   independently "last visited" the National Kidney Foundation website on the same day, May 3,

13   2022.  ECF No. 1002-3 ¶ 18 n.1; ECF No. 1002-4 ¶ 17 n.1; ECF No. 1002-5 ¶ 18 n.1; ECF No.

14   1002-6 ¶ 17 n.1.  This is particularly true when only one of the experts has claimed billable time

15   for preparing their reports before that date.  ECF No. 1002-18 at 2 (listing April 30, 2022, as first

16   day for drafting report); *see* ECF No. 1002-17 at 2 (listing May 7, 2022, as first date for preparing

17   report); ECF No. 1002-16 at 4 (listing June 10, 2022, as only date for preparing report).[2]

18   Similarly, while Gilead asserts that there is nothing remarkable about four nephrologists

19   describing key terms in alphabetical order, the terms are not, in fact, presented in alphabetical

20   order.  ECF No. 1002-2 at 3-10.  Nor is it credible that four infectious disease experts working

21   independently would come up with such similar language to describe the history of the AIDS

22   epidemic or early HIV treatments.  *E.g.*, ECF No. 1009-1 at 2-16.

23        Gilead also argues that the similarities between the reports go only to background

24   information and therefore do not implicate compliance with Rule 26.  The Court disagrees for

---

4. The experts' declarations say only that they did not rely on "facts" or "information" provided by counsel.  ECF No. 1031-12 ¶ 6; ECF No. 1031-13 ¶ 4; ECF No. 1031-14 ¶ 10; ECF No. 1031-15 ¶ 6; ECF No. 1032-12 ¶ 13; ECF No. 1032-13 ¶ 7; ECF No. 1032-14 ¶ 5; ECF No. 1032-15 ¶ 9.  They are silent as to "communications" or "documents."

[2] The fourth nephrologist has not yet submitted invoices.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    several reasons.  First, unlike in *Optronic Technologies*, the substantially similar portions of the

2    expert reports are not "qualifie[d]" with language such as "I am informed that" or "I understand

3    that."  *Optronic Techs.*, 2019 WL 4780183, at \*2.  Second, although Gilead characterizes some of

4    the overlap as "background," this is not the sort of background contemplated by the *Optronic*

5    *Technologies* courts.  Rather than identifying "the data used" as in *Optronic Technologies*, *id.*, the

6    so-called "background" information at issue in these reports is background medical information –

7    i.e., the very reason expert testimony is required.  For instance, the descriptions of kidney

8    functions reflect the expertise of the nephrologists, not information that counsel would be expected

9    to provide the experts as data to be used in forming their opinions.  And, as noted above, the

10   experts purport not to have relied on any facts or information provided by counsel in any event.

11   Finally, as Plaintiffs correctly observe, some of the overlapping portions of the reports go directly

12   to the opinions at the heart of this case.  *E.g.*, ECF No. 1002-2 at 6 (noting all four nephrologists'

13   conclusion that "TDF nephrotoxicity is a well-known but rare side effect associated with TDF

14   medication use"); *id.* at 31-33 (comparing nephrologist opinions regarding adequacy of TDF

15   labeling); ECF No. 1009-1 at 26 (noting substantially similar language in infectious disease expert

16   opinions on the risks and benefits of TDF); *id.* at 27-28 (comparing infectious disease expert

17   opinions on labeling adequacy).  Thus, even if it were permissible for "background" medical

18   information to be ghostwritten by counsel, the reports at issue in these motions extend beyond

19   that.  Indeed, if Gilead were correct that none of the overlapping paragraphs were considered

20   expert opinion testimony, there would be little point to its attempting to introduce these doctors as

21   expert witnesses.

22          Based on the evidence before it, the Court concludes that neither the four nephrologist

23   experts nor the four infectious disease experts "prepared" their reports consistent with Rule

24   26(a)(2)(B).

25          Exclusion of the experts' testimony is therefore required unless Gilead can demonstrate

26   that this "failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Gilead has

27   failed to make either showing.  First, Gilead relies on the stipulation and order that, with limited

28   exceptions, expert discovery may not include draft reports, notes, or "any oral or written

communication between and among an expert witness and . . . attorneys for the party or parties."

ECF No. 732 at 3-4.  But Gilead improperly construes that discovery order as an agreement by

Plaintiffs to waive the requirements of Rule 26(a)(2)(B).  Nothing in the stipulation and order

provides that an expert may testify without preparing a report consistent with Rule 26, including

the requirement that counsel's involvement be limited.  And the stipulation and order explicitly

carves out from the discovery exclusions "any information, communications, or documents which

. . . the expert relies upon as a basis for forming their opinions." *Id.* at 4.  Second, that Plaintiffs

have already deposed the experts in question is not dispositive.  Gilead prevented Plaintiffs from

asking questions that would reveal which opinions in the reports were formed by the experts

themselves rather than counsel, and the experts did not "frankly explain[] what portions of the

report were [theirs]." *In re Jackson Nat'l Life Ins. Co.*, 2000 WL 33654070, at *2.  The failure of

an expert report to "contain a statement of [the expert's] opinions in his own words" is "more than

a mere technical violation" of the rule and is not harmless.  *Id.* (internal quotation marks omitted).

**CONCLUSION**

For the above reasons, the Court grants Plaintiffs' motion to exclude the testimony of

Gilead's nephrologist experts, ECF No. 1002, and its infectious disease experts, ECF No. 1008.

**IT IS SO ORDERED.**

Dated:  March 9, 2023



_____
JON S. TIGAR
United States District Judge